DOMINICA C. ANDERSON (SBN: 2988)
DANIEL B. HEIDTKE (SBN 12975)
**DUANE MORRIS LLP**
100 N. City Parkway, Suite 1560
Las Vegas, NV 89106-4617
Telephone: 702.868.2600
Facsimile:  702.385.6862
E-Mail:  dcanderson@duanemorris.com
        dbheidtke@duanemorris.com

TERRY W. AHEARN (admitted *pro hac vice*)
D. STUART BARTOW (admitted *pro hac vice*)
**DUANE MORRIS LLP**
2475 Hanover Street
Palo Alto, CA 94304-1194
E-Mail:  twahearn@duanemorris.com
        dsbartow@duanemorris.com

Attorneys for Defendant
*Wright National Flood Insurance Services, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IMAGEKEEPER LLC, a Nevada Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>WRIGHT NATIONAL FLOOD INSURANCE SERVICES, LLC, a Delaware Limited Liability Company, and EVOKE TECHNOLOGIES PRIVATE LIMITED, an Ohio foreign corporation,<br><br>Defendants. | Civil Action No.: 2:20-cv-01470-GMN-VCF<br><br>**DEFENDANT WRIGHT NATIONAL FLOOD INSURANCE SERVICES, LLC'S MOTION TO COMPEL ADEQUATE TRADE SECRET DISCLOSURES FROM PLAINTIFF IMAGEKEEPER LLC AND STAY OF DISCOVERY PENDING SAME**<br><br>**[REDACTED VERSION SOUGHT TO BE FILED UNDER SEAL]** |

Defendant Wright National Flood Insurance Services, LLC ("Wright Flood") hereby files its motion to compel adequate trade secret disclosures from Plaintiff ImageKeeper LLC ("ImageKeeper") and stay of discovery pending same.

Dated: January 29, 2021         DUANE MORRIS LLP

                                By: /s/ *Daniel B. Heidtke*
                                    Dominica C. Anderson
                                    Daniel B. Heidtke

                                Attorneys for Defendant *Wright National Flood Insurance Services LLC*

**Contents**

I.  INTRODUCTION ................................................................................................1

II. BACKGROUND ................................................................................................1

    A.  Discovery at Issue and in this Case........................................................... 1

    B.  The Parties' Meet and Confer ................................................................... 2

III. LEGAL STANDARD.........................................................................................3

IV. LEGAL ARGUMENT ........................................................................................4

    A.  ImageKeeper Must Describe its Alleged Trade Secrets with Reasonable Particularity................................................................................................ 4

        1.  Wright Flood Requested ImageKeeper to Disclose its Trade Secrets ........ 4

        2.  Alleged Trade Secret #1 Is Not Described with Sufficient Particularity.... 5

        3.  Alleged Trade Secret #2 Is Not Described with Sufficient Particularity.... 7

        4.  Alleged Trade Secret #3 Is Not Described with Sufficient Particularity.... 7

        5.  Alleged Trade Secret #4 Is Not Described with Sufficient Particularity.... 8

        6.  Alleged Trade Secret #5 Is Not Described with Sufficient Particularity.... 9

        7.  Alleged Trade Secret #6 Is Not Described with Sufficient Particularity.. 10

        8.  Alleged Trade Secret #7 Is Not Described with Sufficient Particularity.. 11

    B.  ImageKeeper is Not Entitled to Discovery From Wright Flood or Evoke Until ImageKeeper Complies with its Obligation to Adequately Disclose its Trade Secrets ................................................................................................... 11

V.  CONCLUSION.................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. Farber & Partners, Inc. v. Garber*
   234 F.R.D. 186 (C.D. Cal. 2006) ................................................................................................3

*Aevoe Corp. v. AE Tech Co.*
   2013 U.S. Dist. LEXIS 124591, 2013 WL 4701192 (D. Nev. Aug. 30, 2013) ..........................3

*Chemeon Surface Tech., LLC v. Metalast Int'l Inc.*
   312 F. Supp. 3d 944 (D. Nev. 2018) ...........................................................................................3

*CrossFit, Inc. v. Nat'l Strength*
   Case No. 14-cv-1191-JLS-KSC, 2018 U.S. Dist. LEXIS 12013 (S.D. Cal. July 18, 2018) .......11

*Del Monte Fresh Produce Co. v. Dole Food Co.*
   148 F. Supp. 2d 1322 (S.D. Fla. 2001) .....................................................................................11

*DeRubeis v. Witten Techs., Inc.*
   244 F.R.D. 676 (N.D. Ga. 2007) .................................................................................................3

*F.T.C. v. AMG Servs., Inc.*
   291 F.R.D. 544 (D. Nev. 2013) ...................................................................................................3

*Ikon Office Sols., Inc. v. Konica Minolta Bus. Sols., U.S.A., Inc.*
   No. 3:08-CV-539-RLV-DCK, 2009 WL 4429156 (W.D.N.C. Nov. 25, 2009) ........................11

*Imax Corp. v. Cinema Techs., Inc.*
   152 F.3d 1161 (9th Cir. 1998) ................................................................................................ 3-4

*Jones v. Zimmer*
   No. 2:12-cv-01578-JAD-NJK, 2014 U.S. Dist. LEXIS 167750 (D. Nev. Dec. 2, 2014) ............3

*Krause v. Nev. Mut. Ins. Co.*
   2014 U.S. Dist. LEXIS 14872 (D. Nev. Feb. 6, 2014) ................................................................2

*Litton Sys., Inc. v. Sundstrand Corp.*
   750 F.2d 952 (Fed. Cir. 1984) .....................................................................................................3

*Miller v. Doctor's General Hospital*
   76 F.R.D. 136 (W.D. Okla. 1997) ...............................................................................................2

*StoneEagle Servs., Inc. v. Valentine*
   No. 3:12-cv-1687-P, 2013 WL 9554563 (N.D. Tex. June 5, 2013) ............................................3

*Switch Commc'ns Grp. v. Ballard*
   No 2:11-cv-00285-KGD-GWF, 2012 WL 2342929 (D. Nev. Jun. 19, 2012) ................ 1, 3-4, 11

*Walt Disney Co. v. DeFabiis*
    168 F.R.D. 281 (C.D. Cal. 1996)..........................................................................................2

*Zanowic v. Reno*
    2000 U.S. Dist. LEXIS 13845 (S.D.N.Y. 2000)...................................................................2

**Other Authorities**

FRCP 26(b) ........................................................................................................................................2

FRCP 26(b)(1) ...................................................................................................................................2

FRCP 26(e) ......................................................................................................................................11

FRCP 33............................................................................................................................................2

Local Rule 26-6(b).............................................................................................................................4

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **INTRODUCTION**

This case concerns a former business relationship between ImageKeeper and Wright Flood, which resulted in the joint development and creation of a mobile application for insurance claims adjusters, which ImageKeeper labels the "ImageKeeper App". ImageKeeper contends that in an effort to cease its business relationship with ImageKeeper, Wright Flood created a competing mobile application, labeled the "Wright App". ImageKeeper contends that the Wright App was created using ImageKeeper's alleged trade secrets and has sued Wright Flood and Evoke, as a result. Wright Flood denies ImageKeeper's contentions.

ImageKeeper must plead and prove that it possesses trade secrets subject to protection under applicable law. While pleading requirements might vary across different jurisdictions, "a party alleging a claim for misappropriation of trade secrets is required to identify its alleged trade secrets with reasonable particularity *before* it will be allowed to compel discovery of its adversary's trade secrets." *See Switch Commc'ns Grp. v. Ballard*, No 2:11-cv-00285-KGD-GWF, 2012 WL 2342929, at *4 (D. Nev. Jun. 19, 2012) (emphasis added). Wright Flood served interrogatories requesting ImageKeeper identify its alleged trade secrets at issue here. This case has been pending for nearly six (6) months, ImageKeeper has had plenty of time to prepare and prosecute its case, and ImageKeeper's responses are still deficient. Case law and simple fairness require ImageKeeper to identify its trade secrets *before* Defendants Wright Flood and Evoke disclose confidential, sensitive and proprietary information that ImageKeeper might use to then mold its alleged trade secret disclosures to create a case where one otherwise would not exist.

Accordingly, Wright Flood moves for an order compelling ImageKeeper to adequately disclose its alleged trade secrets and for a further order staying discovery by ImageKeeper until ImageKeeper adequately discloses its alleged trade secrets.

II.  **BACKGROUND**

    A.  **Discovery at Issue and in this Case**

On October 15, 2020, Wright Flood served its first set of interrogatories on ImageKeeper. (Declaration of Daniel B. Heidtke ("Heidtke Decl."), ¶ 2.) At that time, ImageKeeper had not yet

scheduled the parties' Rule 26(f) conference. (*See id.*, ¶ 3.) In fact, Wright Flood was required to contact ImageKeeper about the Rule 26(f) on October 29, 2020, which was nearly a week after ImageKeeper was required to schedule the Rule 26(f) conference. (*Id.*) ImageKeeper did not respond to this request, requiring Wright Flood to follow-up again on November 3, 2020. (*Id.*, ¶ 4.) Finally, on November 9, 2020, ImageKeeper agreed to schedule the Rule 26(f) conference to be held on November 12, 2020. (*Id.*)

By delaying the Rule 26(f) conference, ImageKeeper delayed the start of discovery and delayed the deadline for it to respond to the interrogatories at issue here. Indeed, the interrogatories that are at issue here were served on October 15, 2020. (*Id.*, ¶ 2.) ImageKeeper provided its first set of responses on November 17, 2020, which were boilerplate objections contending that discovery had not yet opened. (*Id.*, ¶ 5; Ex. "B" to Heidtke Decl.) On December 14, 2020, ImageKeeper finally served the responses at issue here. (*Id.*, ¶ 6; Ex. "B" to Heidtke Decl.)

### B.    The Parties' Meet and Confer

Wright Flood began the parties' meet and confer by sending a detailed letter discussing the deficiencies in ImageKeeper's interrogatory responses, addressing each (alleged) trade secret and ImageKeeper's use of generic adjectives (e.g., "unique") lacking any detail. (Heidtke Decl., ¶ 7; Ex. "C" to Heidtke Decl.) After several follow-ups by e-mail and offers to meet via telephone to discuss the issues, yesterday ImageKeeper responded by letter. (Exs. "D" and "E" to Heidtke Decl.) In that letter, ImageKeeper asserted that Wright Flood's meet and confer letter contained a "mish-mash of legal citation" and stated that "ImageKeeper's response is clearly sufficient." (*Id.*)

Undeterred by ImageKeeper's *ad hominem* attacks, Wright Flood offered to further meet and confer to confirm that it was not mistaken in believing that the parties had reached an impasse. (Heidtke Decl., ¶ 9.) The parties then held a thirty minute meet and confer teleconference yesterday during which ImageKeeper insisted upon criticizing Wright Flood's discovery responses as opposed to addressing the deficiencies in ImageKeeper's responses. (*Id.*) During that meet and confer, the parties reiterated their positions set forth in writing, and it was clear that the parties had reached an impasse necessitating this motion and court intervention. (*Id.*) Put simply, ImageKeeper's position is that its alleged trade secrets were adequately described; Wright Flood pointed to the deficiencies

identified previously and below, and the parties were unable to resolve their differences of opinion. (*Id.*) Accordingly, Wright Flood requests that this Court enter an order compelling further trade secret disclosures from ImageKeeper, as stated below.

## III. LEGAL STANDARD

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…" FRCP 26(b)(1). "[T]he purpose of discovery is remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 283 (C.D. Cal. 1996). As a result, Rule 26(b) "is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence." *Id.*; *Krause v. Nev. Mut. Ins. Co.*, 2014 U.S. Dist. LEXIS 14872, *8 (D. Nev. Feb. 6, 2014) ("The scope of discovery under Federal Rule of Civil Procedure 26(b) is broad[.]"). Any objections to such discovery requests must be stated with specificity and answers to requests must be specific, responsive and non-evasive.

In general, interrogatories may relate to any matters which can be inquired into under Rule 26(b). FRCP 33. Responses to interrogatories must be "full, fair and specific," and if a party is unable to provides such detailed responses, it should so state under oath and should set forth in detail the efforts made to obtain the information. *Miller v. Doctor's General Hospital*, 76 F.R.D. 136 (W.D. Okla. 1997); *Zanowic v. Reno*, 2000 U.S. Dist. LEXIS 13845 (S.D.N.Y. 2000)).

In responding, ImageKeeper bears the burden of persuasion on any objections; it cannot meet its burden by relying upon "boilerplate, generalized, conclusory, or speculative arguments." *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013); *Aevoe Corp. v. AE Tech Co.*, 2013 U.S. Dist. LEXIS 124591, 2013 WL 4701192, *2 (D. Nev. Aug. 30, 2013). Indeed, "[b]oilerplate objections are disfavored." *Jones v. Zimmer*, No. 2:12-cv-01578-JAD-NJK, 2014 U.S. Dist. LEXIS 167750, at *11 (D. Nev. Dec. 2, 2014) (citing *EnvTech, Inc. v. Suchard*, 2013 U.S. Dist. LEXIS 129642, 2013 WL 4899085, *4 (D. Nev. Sept. 11, 2013); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006).

## IV.  LEGAL ARGUMENT

### A.  ImageKeeper Must Describe its Alleged Trade Secrets with Reasonable Particularity

In order to bring a viable claim for misappropriation of trade secrets, ImageKeeper must show that it actually possesses "trade secrets." *See, e.g., Chemeon Surface Tech., LLC v. Metalast Int'l Inc.*, 312 F. Supp. 3d 944, 959 (D. Nev. 2018).  Thus, "a party alleging a claim for misappropriation of trade secrets is required to identify its alleged trade secrets **before** it will be allowed to compel discovery of its adversary's trade secrets." *See Switch Communications Grp. v. Ballard*, No. 2:11-cv-0285-KGD-GWF, 2012 U.S. Dist. LEXIS 85148, 2012 WL 2342929, at * 4 (D. Nev. June 19, 2012) (emphasis added).  Consistently, as the Ninth Circuit has explained, a plaintiff must "describe the subject matter of the trade secret with *sufficient particularity* to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (ellipsis in original) (citations omitted).

Here, "sufficient particularity" means that "(1) defendant is put on notice of the nature of plaintiff's claims and (2) defendant can discern the relevancy of any requested discovery on its trade secrets." *Switch*, 2012 WL 2342929, at *4 (discussing *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680-81 (N.D. Ga. 2007)); *see also, Litton Sys., Inc. v. Sundstrand Corp.,* 750 F.2d 952, 956 (Fed. Cir. 1984) (noting that plaintiff's "Achilles Heel . . . is its insistence on postponing identification or description of such a broad universe of thousands of unidentified trade secrets . . ."); *StoneEagle Servs., Inc. v. Valentine,* No. 3:12-cv-1687-P, 2013 WL 9554563, at *4 (N.D. Tex. June 5, 2013) (holding, "lengthy, descriptive, but non-specific, paragraphs; generally listing software, data processing algorithms, and processes that a plaintiff developed, owned, or licensed" is not enough). A simple list of categories, general concepts, or components is not enough.  *Switch*, 2012 WL 2342929, at *4-5; *Imax*, 152 F.3d at 1167.  As explained below, rather than describe its trade secrets with reasonable particularity, ImageKeeper provided a list of broad, catchall categories and labels, claiming that their trade secrets consisted of ▬▬▬▬▬ without any particularity.

### 1.  Wright Flood Requested ImageKeeper to Disclose its Trade Secrets

Local Rule 26-6(b) requires a party moving to compel to provide the full text of the discovery

originally sought and any response to it.  The interrogatory at issue here is as follows:

> **INTERROGATORY NO. 1**: Describe in detail all Trade Secrets that You contend were misappropriated by Defendant, including without limitation a detailed description of each and every element of each identified Trade Secret. For the avoidance of doubt, this interrogatory requires a detailed description of each Trade Secret that is referenced in or provides a basis for the claims in Your Complaint.

Tracking the same broad categories included in its original pleadings, ImageKeeper identified seven alleged "trade secrets" in response.  Each alleged trade secret is discussed, in turn, below.  As explained below, ImageKeeper failed to describe its alleged trade secrets with sufficient particularity.

### 2. Alleged Trade Secret #1 Is Not Described with Sufficient Particularity.

ImageKeeper's response to Interrogatory No. 1, begins with its objections and its first alleged trade secret:

> **FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1**: Plaintiff objects to this interrogatory as vague and ambiguous, overbroad, and unduly burdensome.  Without waiving the foregoing objections and subject thereto, Plaintiff responds as follows:
>
> **Trade Secret No. 1**: 
>
> 

██████████

ImageKeeper identifies its first alleged trade secret as: ██████████ ██████████ ██████████ ImageKeeper apparently contends that ██████████ are also part of this alleged trade secret because it identifies ██████████ ██████████ as separate parts of this first alleged trade secret. But these are vague, generalized concepts that lack any detail about the ██████████ or ██████████ that purportedly encompass this trade secret. For example, the trade secret is defined to include ██████████, but does not identify how ██████████ operate, or what those ██████████ consist of. ImageKeeper's response also fails to provide details that would differentiate this alleged trade secret from any technology or features in any mobile application that

contains functionality allowing for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

### 3. Alleged Trade Secret #2 Is Not Described with Sufficient Particularity.

ImageKeeper identifies its second alleged trade secret as follows:

**Trade Secret No. 2** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ nformation related to the "item." This information could include data, media, or reports.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

The supplemental responses characterize ImageKeeper's second alleged trade as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But, just as with its first alleged trade secret, there is no description or identification of any ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ There is thus no detailed description, as requested and required, of "each and every element" of this alleged trade secret.

### 4. Alleged Trade Secret #3 Is Not Described with Sufficient Particularity.

ImageKeeper identifies its third alleged trade secret as follows:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Demonstrating the general terms of ImageKeeper's responses to these interrogatories, ImageKeeper's response states: ███████████████████████████████████████ There is no description or identification of what these ███ comprise or the tasks they perform. Further, the supplemental responses state that ██████████████████████████████████████████ ████████████████████████ but there is no identification or description of what these ██████████████████████████████████████ include or comprise—according to the description, the ████████████████████ but the trade secret description does not provide any details about how, what or why. ImageKeeper touts ████████████ as part of this alleged trade secret, but does not explain (in any way) how those ████████████ are anything different than a standard mobile application or software design that allows ██████████ to make changes while denying other users the ability to ██████████████████████████████████ of an application or software. There is thus no detailed description, as requested and required, of "each and every element" of this alleged trade secret.

### 5. Alleged Trade Secret #4 Is Not Described with Sufficient Particularity.

ImageKeeper identifies its fourth alleged trade secret as follows:

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████

The supplemental responses assert that the fourth alleged trade secret ████████████████████ ██████████████████████ and lists examples of various types of ██████ But there is no identification or description of how ██████████████████████████████████████ or what the ████████████ ██████████████████████████████. Indeed, some ████████████████████████ are the same as those identified (and required) by the Federal Emergency Management Agency's National Flood Insurance Program. (*See, e.g.*, ECF No. 29, pp. 8-9; ECF Nos. 32-1, 32-2 and 32-3.) There is

thus no detailed description, as requested and required, of "each and every element" of this alleged trade secret.

### 6. Alleged Trade Secret #5 Is Not Described with Sufficient Particularity.

ImageKeeper identifies its fifth alleged trade secret as follows:

**Trade Secret No. 5:** 

███████████████████████████████████████

The supplemental responses state that ███████████████████████████ ███████████████████████████████████████ but ImageKeeper provides no identification or description of what elements of these ████████████████ ████████ actually make up the alleged trade secrets. As with its other alleged trade secrets, ImageKeeper repeats parts ████████████████████████████████ and repeats the same terms and phrases – identifying, "████████████████████████ ████████████████████████████ as purported components of this alleged trade secret. But these labels are just that—they do not contain any identification or description of how these purported components are different, unique or otherwise separate from prior existing, well-known technology. For example, ██████████████████████████████████████████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████ But there is no description of what elements or features of this user interface and its implementation comprise trade secret information.

       **7.**     **Alleged Trade Secret #6 Is Not Described with Sufficient Particularity.**

ImageKeeper identifies its sixth alleged trade secret as follows:

**Trade Secret No. 6**: ███████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

The supplemental responses characterize the sixth alleged trade secret as ███████
████████████████████████████████████████████████

███████████████████████████████████  But the supplemental responses do not disclose what this ██████████████████████ is.  There is thus no detailed description, as requested and required, of "each and every element" of this alleged trade secret.

### 8. Alleged Trade Secret #7 Is Not Described with Sufficient Particularity.

ImageKeeper identifies its seventh alleged trade secret as follows:

**Trade Secret No. 7**: ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

The supplemental responses assert that ████████████████████████
████████████████████████████████████ and further that ██████████████████████████  But the supplemental responses do not identify or describe how these ██████████████████████████████ comprise alleged trade secret information.  There is thus no detailed description, as requested and required, of "each and every element" of this alleged trade secret.

### B. ImageKeeper is Not Entitled to Discovery From Wright Flood or Evoke Until ImageKeeper Complies with its Obligation to Adequately Disclose its Trade Secrets

ImageKeeper filed this lawsuit in August, alleging that its alleged trade secrets were in danger of immediate and irreparable misappropriation.  It is not too much to ask ImageKeeper to identify those trade secrets, nearly six months after it filed this lawsuit and after it has had substantial time to conduct diligence regarding its claims.  And until ImageKeeper complies with its obligation to identify its trade secrets with reasonable particularity, ImageKeeper should not be able to obtain any discovery.  *See Switch*, 2012 WL 2342929, at *4-5, *8 (denying plaintiff's motion to compel document production and citing cases); *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1322, 1326 (S.D. Fla. 2001) ("While [plaintiff] states that there are many trade secrets, it does not provide any guidance as to what they may be. If a 'multitude' of trade secrets really are at issue in

this case, [plaintiff] cannot expect [defendant] to embark upon a fishing expedition to ascertain what those secrets are."); *see also Ikon Office Sols., Inc. v. Konica Minolta Bus. Sols., U.S.A., Inc.*, No. 3:08-CV-539-RLV-DCK, 2009 WL 4429156, *4-5 (W.D.N.C. Nov. 25, 2009) (defendant "need not furnish information about its own trade secrets and confidential proprietary information until after [plaintiff] describes with reasonable particularity the trade secrets it claims [d]efendants have misappropriated"). During the meet and confer on this issue, ImageKeeper repeatedly acknowledged that ImageKeeper has an ongoing duty to supplement its discovery responses (Heidtke Decl., ¶ 11), as though that duty would excuse any deficient disclosure or reduce ImageKeeper's burden to completely disclose its trade secrets before it obtains Wright Flood's confidential information. This reference, as with ImageKeeper's threat to sue Wright Flood for patent infringement, warrants a stay of discovery for ImageKeeper because ImageKeeper clearly intends to supplement its trade disclosures *after it obtains access to Wright Flood's confidential, sensitive and proprietary information*.

Wright Flood agrees that the rules impose an obligation to supplement discovery responses. But, the obligation to supplement discovery responses does not provide a party with a license to "sandbag" or to withhold information that it already possesses. FRCP 26(e); *see, e.g., CrossFit, Inc. v. Nat'l Strength,* Case No. 14-cv-1191-JLS-KSC, 2018 U.S. Dist. LEXIS 12013 (S.D. Cal. July 18, 2018) ("[t]he duty to supplement under Rule 26(e) does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' [original] report."). ImageKeeper's repeated references to its purported ▮▮▮▮▮▮ and ▮▮▮▮▮▮ methods demonstrate that ImageKeeper either *knows* what its alleged trade secrets are—and it simply doesn't want to say—or that it is waiting to hone its responses after seeing Wright Flood's confidential information. Either way, ImageKeeper's plan is unsupported.

ImageKeeper is not entitled to obtain discovery from Wright Flood or Evoke that ImageKeeper could then try to use to "bolster" their alleged trade secrets. But, that is what is trying to do—during the meet and confer, rather than respond to Wright Flood's interrogatories with reasonable particularity, ImageKeeper served **sixty-eight (68) requests for production** of its own, and after Wright Flood raised issues about ImageKeeper's interrogatory responses, ImageKeeper refused

to meet and confer about those responses without also attempting to discuss Wright Flood's responses to the discovery. (Heidtke Decl., ¶ 10.) In fairness (and in view of the authorities cited above), ImageKeeper should not be able to stonewall on written discovery and then tailor its trade secret identification to whatever information it receives in discovery responses or document productions from Wright Flood or Evoke. To allow otherwise would permit a plaintiff to initiate a lawsuit in an effort to obtain confidential information from a competitor and then prosecute a case based upon that defendant-competitor's confidential information.

ImageKeeper also is not entitled to use Wright Flood or Evoke's information to prosecute patents and later sue Wright Flood or Evoke, as ImageKeeper has already threatened. (Ex. B to Heidtke Decl., at Response No. 8.) On this point, the parties are still in the process of negotiating a protective order, which Wright Flood initially offered on December 4, 2020 and ImageKeeper failed to provide any comments on until January 27, 2021.

Accordingly, Wright Flood respectfully requests that this Court stay discovery for ImageKeeper until it identifies its purported trade secrets with reasonable particularity. While Wright Flood would request a more limited stay of discovery for ImageKeeper, each cause of action in ImageKeeper's complaint contains a reference to ImageKeeper's alleged trade secrets (ECF No. 67, ¶¶ 69, 76, 87, 95, 100, 113, 125, 137, 154, 159, 164, 165); thus, Wright Flood's request that this Court stay discovery for ImageKeeper on all matters related to its trade secret misappropriation claims until ImageKeeper identifies its purported trade secrets with reasonable particularity necessarily encompasses any discovery by ImageKeeper.

///
///
///
///
///
///
///

## V.  CONCLUSION

For the foregoing reasons, Wright Flood respectfully requests that this Court enter an order compelling further reasonably particular responses to Interrogatory No. 1 from ImageKeeper.  Wright Flood also respectfully requests that this Court enter an order staying discovery for ImageKeeper until it identifies its purported trade secrets with reasonable particularity.

Dated: January 29, 2021                    DUANE MORRIS LLP


                                           By:   /s/  *Daniel B. Heidtke*
                                                 Dominica C. Anderson
                                                 Terry W. Ahearn (*pro hac vice*)
                                                 D. Stuart Bartow (*pro hac vice*)
                                                 Daniel B. Heidtke
                                           Attorneys for Defendant *Wright National Flood Insurance Services LLC*

# PROOF OF SERVICE

I hereby certify that I am a citizen of the United States and am employed in Clark County, where this mailing occurs. I am over the age of eighteen years and not a party to the within entitled action; my business address is 100 N. City Parkway, Suite 1560, Las Vegas, Nevada 89106.

On January 29, 2021, I served the document described as **WRIGHT FLOOD'S MOTION TO COMPEL** on the interested party(ies) in this action:

| | |
|---|---|
| H. STAN JOHNSON (SBN 0265)<br>STEVEN B. COHEN (SBN 2327)<br>COHEN JOHNSON LLC<br><br>COLBY B. SPRINGER<br>BARRINGTON E. DYER<br>TERI H.P. NGUYEN<br>MIYA YUSA<br>POLSINELLI LLP<br>Attorneys for Plaintiff IMAGEKEEPER, LLC | DONALD L. PRUNTY, ESQ.<br>Nevada Bar No. 008230<br>BETHANY L. RABE, ESQ.<br>Nevada Bar No. 011691<br>GREENBERG TRAURIG, LLP<br>Counsel for Defendant<br>EVOKE TECHNOLOGIES PRIVATE LIMITED |

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Las Vegas, Nevada, in the ordinary course of business.

☐ **BY FEDERAL EXPRESS:** I served said document(s) to be delivered on the same day to a courier or driver authorized by Federal Express to receive documents, in an envelope or package designated by Federal Express.

☒ **BY ELECTRONIC SERVICE:** I served a true copy, with all exhibits, electronically on designated recipients via electronic transmission of said document(s) as provided under Federal Rules of Civil Procedure.

/s/ Daniel B. Heidtke
Daniel B. Heidtke
An employee of DUANE MORRIS LLP