**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| IMAGEKEEPER LLC, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:20-cv-01470-GMN-VCF |
| vs. ) | |
| ) | **ORDER** |
| WRIGHT NATIONAL FLOOD INSURANCE ) | |
| SERVICES LLC and EVOKE ) | |
| TECHNOLOGIES PRIVATE LIMITED, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is the Motion to Dismiss the Complaint ("First MTD"), (ECF No. 59), filed by Defendant Wright National Flood Insurance Services, LLC ("Wright National").[1] Plaintiff ImageKeeper LLC ("Plaintiff") did not file a Response.

Also pending before the Court is the Motion to Dismiss the Amended Complaint ("Second MTD"), (ECF No. 75), filed by Wright National. Plaintiff filed a Response, (ECF No. 78), to which Wright National filed a Reply, (ECF No. 83).

For the reasons discussed below, the Court **DENIES as moot** Wright National's First Motion to Dismiss and **DENIES** Wright National's Second Motion to Dismiss.

**I.    BACKGROUND**

This case arises from Defendants' purported misappropriation and use of Plaintiff's trade secrets and confidential information. (*See* Am. Verified Compl., ECF No. 67). Plaintiff ImageKeeper's technology enables businesses to: (1) securely capture images, audio, and video via personal mobile devices; (2) tag such files upon capture with ancillary data such as date,

---

[1] In light of Plaintiff's subsequent Amended Complaint, the Court denies without prejudice as moot Wright National's First Motion to Dismiss, (ECF No. 59). *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015).

GPS location and satellite mapping; (3) automatically store and share captured files on Plaintiff's Secured Cloud Storage; and (4) track and verify transmissions of and/or alterations to stored captured files. (*Id*. ¶ 10). Using this technology, Plaintiff developed the Flood Claim Service System (the "ImageKeeper System") as a software solution for documenting and processing flood insurance claims. (*Id.* ¶ 11). Plaintiff provides software to quickly track, prepare, and process flood insurance claims through its mobile applications. (*See* Speasl Decl. ¶¶ 4, 6, 12, ECF No. 6). The ImageKeeper System comprises a secure portal ("Secure Portal") to the ImageKeeper Cloud and a mobile adjuster application ("Adjuster Application"). (*Id.*). The Secure Portal is only accessible from the web with unique and secure login credentials, only made available through Plaintiff to paying users. (*Id.* ¶ 5). The Adjuster Application is downloadable to an iPhone or similar mobile device from the Secure Portal. (*Id.*). The Adjuster Application likewise requires secure credentials to open and use the application. (*Id.*).

Wright National has been a customer of the ImageKeeper System since 2016 and is Plaintiff's largest customer. (*Id.* ¶ 9). Wright National uses the ImageKeeper System to handle flood insurance claims backed by the Federal Emergency Management Agency (FEMA). (*Id.* ¶ 11). In October 2019, following disputes over unpaid invoices, Plaintiff sent its final demand for Wright National to pay its invoices and enter a new Software and Services Agreement ("SSA"). (*Id.* ¶ 16). Wright National agreed and the parties entered into a SSA, effective October 31, 2019. (*Id.*); (SSA, Ex. 2 to Speasl Decl., ECF No. 8).

Pursuant to the terms of the SSA, "Confidential Information," as applied to Plaintiff, is defined to mean "the proprietary aspects of the Service." (SSA § 7.2). In turn, "Service" is defined to mean "a collective reference to the ImageKeeper Software and all related activities in connection with the provisioning and delivery of the services described in [the SSA]." (*Id.* § 5.1). "Confidential Information" is defined as "any other information that the disclosing party

labels in writing as 'confidential' or which, under the circumstances of the disclosure, should be reasonably considered confidential by Recipient." (*Id.* § 7.2).

The SSA also imposes confidentiality and non-disclosure obligations. For example, it forbids copying of Confidential Information or disclosure to third parties:

> 7.1 Non-Disclosure. The party receiving Confidential Information of the other (the "Recipient") *shall protect the confidentiality of the Confidential Information* of the other party (the "Discloser") . . . Recipient shall hold the Confidential Information of Discloser in trust and confidence and *shall not copy* Discloser's Confidential Information *or disclose such information to any third parties* . . . .

(SSA § 7.1) (emphasis added). Pursuant to the SSA, Wright National also agreed that "all intellectual property rights (patents, trade secrets, copyrights, trademarks and similar rights)" pertaining to the Service "remain the sole property of [] ImageKeeper." (*Id.* §§ 5.1, 13.7).

Further, the SSA expressly restricts Wright National's access as a customer and the access of its end users. Section 6.1 allows Wright National access "for sole purposes of operating the Service in its intended manner as a flood claim processing, archival and retrieval system and for no other purpose." (*Id.* § 6.1). "End User[s]" are agents of Wright National or third parties that are granted access to the Service by Wright National. (*See id.* § 6.2). Under the SSA, each End User must "execute a 'click through' [End User License Agreement]/Terms & Conditions" before the End User is provided access to the Secure Portal or Adjuster Application. (*Id.*). In addition, each End User is issued a "unique user name and password by [Plaintiff] ImageKeeper." (*Id.* § 6.3). Under the SSA, Wright National further agreed "that *no user name or password will be utilized at any time by any person* other than the End User to whom such user name or password was originally assigned*.*" (*Id.*) (emphasis added).

In July 2020, Plaintiff discovered Wright National's mobile "Claims Application for Adjusters" (the "Wright Application") on the Apple Store. (Speasl Decl. ¶ 35). Wright National's application looked and functioned like ImageKeeper's Adjuster Application. (*Id.* ¶¶

35, 36). Plaintiff then discovered that, in late-December 2019, Wright National had shared unique administrator login credentials registered to its Chief Information Officer (CIO), Tim Love, with employees from Evoke Technologies, a software developer, in Hyderabad, India. (Am. Verified Compl. ¶¶ 48–49). Plaintiff believes that, around the same time Wright National entered into the SSA with Plaintiff, Wright National hired Evoke Technologies to "implement and develop Wright Flood's new mobile application." (*Id.* ¶ 44); (*see also* Decl. of Tim Love, ECF No. 30). Plaintiff alleges that, during this time, Evoke Technologies' employees based in Hyderabad, India developed a similar application to the Wright Application and, in the process of development, reviewed Plaintiff's proprietary designs, documents and even uploaded their progress onto ImageKeeper's cloud system as revealed through Plaintiff's internal "audit trail." (*Id.* ¶ 51).

Plaintiff thereafter filed suit on August 7, 2020, alleging violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and Nevada's codification of the Uniform Trade Secrets, NRS Chapter 600A, as well as other state and federal claims. (Verified Compl., ECF No. 1). In addition to filing its Complaint, Plaintiff also filed an Emergency Motion for Temporary Restraining Order, which the Court granted and extended by granting a Preliminary Injunction after a hearing. (Pl.'s Mot. TRO at 23, ECF No. 2); (Min. Proceedings, ECF No. 55). Under the relevant terms of the Preliminary Injunction, the Court ordered that:

> 1. Defendant including its employees, officers, members, agents, attorneys, and representatives as well as any third-parties acting in concert with and at the direction of the Defendant and otherwise involving the subject matter of this dispute, be immediately restrained from, directly or indirectly, publicly releasing any confidential and proprietary information of ImageKeeper in any manner. . . .
>
> 4. Defendant be tasked with ensuring that Evoke Technologies cease all involvement with ImageKeeper technology and to fully account, and ultimately, return any retained confidential information. . . .
>
> 6. Defendant including its employees, officers, members, agents, attorneys, and representatives as well as any third-parties acting in concert with and at the

>direction of the Defendant and otherwise involving the subject matter of this dispute, be immediately restrained from, directly or indirectly, using, offering, releasing, supporting, or marketing any products or software based on, or derived from, the ImageKeeper System, including the Wright Application. . . .

(Order Granting Mot. Prelim. Inj. ("Order") ¶¶ 1, 4, 8, ECF No. 58).

On September 23, 2020, Wright National filed its First Motion to Dismiss, (ECF No. 59). Plaintiff then filed an Amended Complaint, (ECF No. 67). Wright National filed the the Second Motion to Dismiss, (ECF No. 75).

## II.   LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered." *Id.* Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to

the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   DISCUSSION

Plaintiff alleges eleven (11) causes of action against Wright National, specifically: (1) trade secret misappropriation in violation of 18 U.S.C. §1836; (2) trade secret misappropriation in violation of NRS 600A.010; (3) infringement of trade secrets in violation of NRS 603.080, 603.050; (4) breach of contract; (5) violation of the Stored Communications Act ("SCA"); (6) violation of the Computer Fraud and Abuse Act ("CFAA"); (7) unlawful acts regarding computers in violation of NRS 205.4765, 205.477, and NRS 205.511; (8) deceptive trade practices in violation of NRS 41.600; (9) unfair trade practices in violation of NRS 603.080 and 603.040; (10) breach of the implied covenant of good faith and fair dealing; and (11) unfair competition/breach of duty of loyalty. (First Am. Compl. ("FAC") ¶¶ 61–167).  Wright National moves to dismiss Claims 3, 5–8, 10, and 11. (Second MTD at 2–10).  Specifically, Wright National argues that Claims 3, 7, 10, and 11 are precluded by the Nevada Uniform

Trade Secrets Act ("UTSA"). (*Id.* at 2–7). Wright National also contends that Plaintiff fails to allege a claim upon which relief can be granted as to Claims 5 to 8. (*Id.* 7–10). The Court first discusses the Nevada UTSA argument before discussing whether Plaintiff plausibly alleges a claim as to Claims 5 to 8.

### A. Nevada Uniform Trade Secrets Act

Wright Flood argues that the Nevada UTSA preempts Counts 3, 7, 10, and 11 because the claims are ultimately based upon misappropriation of a trade secret. (Second MTD 2:21–7:16). In rebuttal, Plaintiff argues that Federal Rule of Civil Procedure 8 allows Plaintiff to plead alternative, even duplicative, causes of action. Dismissing the counts at this stage, Plaintiff argues, is premature. (Resp. to Second MTD 3:17–4:17, ECF No. 78).

"Nevada's Uniform Trade Secrets Act prohibits the misappropriation of trade secrets and provides for a private right of action for damages and injunctive relief." *See* Nev. Rev. Stat. § 600A.010 *et seq*. NRS § 600A.090, a specific provision in the UTSA, displaces conflicting tort, restitutionary, and other laws permitting civil remedies for misappropriation of a trade secret. *See* NRS § 600A.090. Only common law claims that arise out of the same factual episode as the misappropriation of a trade secret claim are precluded under the UTSA. *Frantz v. Johnson*, 116 Nev. 455, 999 P.2d 351, 357-58 (Nev. 2000).

Federal Rule of Civil Procedure 8(d) permits a party to "set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *See* Fed. R. Civ. P. 8(d)(2). At the pleading stage, there is a strong presumption against dismissing an action for failure to state a claim. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Hydrick v.*

*Hunter*, 500 F.3d 978, 985 (9th Cir. 2006) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)).

In *Coleman v. Standard Life Ins. Co.,* 288 F. Supp. 2d 1116, 1121, the Eastern District Court of the District of California allowed Plaintiff's state claims to proceed under Rule 8 even though the defendants in that case argued that the state claims were preempted by the ERISA preemption doctrine. *Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1122 (E.D. Cal. 2003). In reaching its decision, the Eastern District Court reasoned that it remained unclear whether the plan in question was an ERISA plan and the scope of ERISA preemption in the case. *Id*. "Rule 8(e)(2) permits such alternative pleading to avoid precisely such dilemmas. Plaintiffs at this early stage are not bound for purposes of their state law claims by their alternative allegation that there was an ERISA plan." *Id*. Accordingly, the Eastern District Court allowed the plaintiff to go forward with both his federal and state law claims. *Id*. at 1122.

Another Court in this district reached the same result, but specifically in the context of the preemption and scope of the Nevada UTSA. *Montgomery v. Etreppid Techs., LLC*, Nos. 3:06-CV-00056-PMP-VPC, 3:06-CV-00145-PMP-VPC, 2008 U.S. Dist. LEXIS 28118, at *9 (D. Nev. Apr. 7, 2008). There, the Court similarly found it premature to dismiss the non-statutory common law claims. *Id*. "Even if any of the above claims are duplicative of the misappropriation of trade secrets claim and therefore preempted by the Nevada Unfair Trade Secrets Act, [the plaintiff] is entitled to plead the claims in the alternative under Rule 8." *Id*.

Likewise, the Court finds dismissal premature at this stage of the proceeding. Plaintiff may plead statutory and non-statutory claims in the alternative, even if non-statutory claims are duplicative of the misappropriation of trade secrets claim. *See id.* The cases Wright Flood cites to do not persuade the Court to the contrary. *See Hutchison v. KFC Corp.*, 809 F. Supp. 68, 71-72 (D. Nev. 1992); *SVI, Inc. v. Supreme Corp.*, 2:16-cv-01098-JAD-NJK, 2017 U.S. Dist. LEXIS 81983 (D. Nev. May 30, 2017). Neither case addressed the crossover between the

Nevada UTSA and Federal Rule of Civil Procedure 8. Accordingly, the Court denies Wright Flood's Motion to Dismiss as to Claims 3, 7, 10, and 11.[2]

### B. Stored Communications Act

Wright Flood moves to dismiss Plaintiff's fifth cause of action—violation of the SCA, 18 U.S.C. §§ 2701, 2707. (Second MTD 7:18–9:9). Specifically, Wright Flood argues that dismissal is proper on three grounds: (1) the SCA prohibits unauthorized access, not unauthorized use; (2) Plaintiff fails to allege facts in support of an "exceeding authorization" theory; and (3) Plaintiff fails to plead that Wright Flood accessed an "electronic communication." (Reply to Second MTD 2:1–19). In response, Plaintiff solely rebuts Wright Flood's argument on authorization, specifically arguing that Wright Flood vitiated consent by deceitfully gaining access to the ImageKeeper System with the intent to usurp ImageKeepers' proprietary information. (Resp. to Second MTD 9:2–13). Given that Plaintiff does not advocate for its "exceeding authorization" theory in its Response, the Court limits its below discussion to whether the Stored Communications Act includes vitiated consent and further, whether Plaintiff sufficiently pleads that Wright Flood access an "electronic communication."

The Stored Communications Act prohibits the unlawful access to a "wire or electronic communication while it is in electronic storage in such system." *See* 18 U.S.C. § 2701(a). Unlawful access is defined in two ways: (1) intentionally accessing without authorization; or (2) intentionally exceeding an authorization. *See id*. The Ninth Circuit in *Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2003) interpreted the meaning of "authorization" under the SCA and CFAA. *Theofel*, 359 F.3d at 1072–79. There, it held that "[p]ermission to access

---

[2] Wright Flood argues, in its Reply, that *Montgomery* is inapplicable because "the counterclaim did not allege that the stolen property—including hard drives, e-mails, or other information—qualified as trade secrets." (Reply 6:15–18, ECF No. 167). The *Montgomery* Court, however, allowed the claims to proceed even in hypothetical circumstance that the non-statutory claims were duplicative and qualified as trade secrets. *Montgomery v. Etreppid Techs.*, LLC, Nos. 3:06-CV-00056-PMP-VPC, 3:06-CV-00145-PMP-VPC, 2008 U.S. Dist. LEXIS 28118, at *2 (D. Nev. Apr. 7, 2008).

a stored communication does not constitute valid authorization if . . . a defendant . . . procures consent by exploiting a known mistake that relates to the essential nature of his access." *Id.* at 1073. Similar to the theory of physical trespass, "an overt manifestation of assent or willingness would not be effective . . . if the defendant knew, or probably if he ought to have known in the exercise of reasonable care, that the plaintiff was mistaken as to the nature and quality of the invasion intended." *See id*. (citing Prosser & Keeton § 13 at 70).

Applying its findings to the facts of that case, the Ninth Circuit in *Theofel* held that the plaintiffs alleged sufficient facts that the defendant, NetGate, vitiated consent. *Id.* There, NetGate disclosed samples of multiple messages, many of which were privileged or personal, in response to a purportedly valid subpoena. *Id*. Unbeknownst to NetGate, the subpoena was invalid. *Id*. Though NetGate effectively authorized access to the privileged emails, the Ninth Circuit reasoned that NetGate did not truly authorize access as defined under the SCA. *Id*. "The subpoena's falsity transformed the access from a bona fide state-sanctioned inspection into private snooping." *Id*.

Likewise, Plaintiff plausibly alleges that its authorization of access to the ImageKeeper system was vitiated. Plaintiff alleges that Wright Flood deceived ImageKeeper into thinking that Wright Flood would comply and honor its contractual and confidentiality obligations with ImageKeeper. (FAC ¶ 113). Plaintiff claims that Wright Flood knew that Plaintiff was mistaken as to the nature and quality of Wright Flood's access to the ImageKeeper System. (*Id*.). Specifically, "Wright Flood deceived ImageKeeper as to Wright Flood's intentions in order to gain access to the ImageKeeper System, which but for Wright Flood's false promises and false pretenses ImageKeeper had intended to terminate." (*Id*.). These facts, taken together, support a plausible claim that Wright Flood vitiated consent and thus, that it unlawfully accessed the ImageKeeper System.

Wright Flood further argues that Plaintiff fails to identify any "wire or electronic communication" that Wright Flood allegedly accessed while it was in electronic storage. (Reply 8:1–2).  To demonstrate a violation of the SCA, Plaintiff must also allege that Wright Flood "obtain[ed], alter[ed], or prevent[ed] authorized access to a wire or electronic communication while it is in electronic storage" in addition to demonstrating unauthorized access. *See* 18 U.S.C. § 2701(a).  Here, Plaintiff sufficiently alleges that Wright Flood altered authorized access to the ImageKeeper System "by providing, transferring, or sharing its unique login credentials to unauthorized individuals in India tasked with misappropriating and reverse engineering the ImageKeeper System." (FAC ¶ 114).  The Court finds, therefore, that Plaintiff has plausibly alleged that Wright Flood unlawfully accessed the ImageKeeper System under the SCA.

### C. Computer Fraud and Abuse Act

Wright Flood also moves to dismiss Claim 6: violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030. (Second MTD 7:18–9:9).  Similar to the SCA claim, Wright Flood specifically argues that the CFAA prohibits unauthorized use; however, Plaintiff authorized access to Wright Flood. (*Id*. at 7–9).  Even if Plaintiff sufficiently alleges unlawful access, Wright Flood argues that Plaintiff fails to allege actionable harm under Section (c)(4)(A)(i)(VI). (Reply 8:12–27).

The CFAA prohibits the unlawful access—either access without authorization or exceeding authorized access—of a protected computer and thereby obtains information from a protected computer. *See* 18 U.S.C. § 1030(a)(2).  "Any person who suffers damage or loss by reason of a violation of [the CFAA] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief," provided that certain factors, not in dispute for the purpose of this motion, are satisfied. *Id*. § 1030(g).

As established above, Plaintiff plausibly alleges that Wright Flood vitiated consent. *See Theofel*, 359 F.3d at 1072–7 (applying the theory of vitiated consent to the CFAA). Thus, the relevant inquiry is whether Plaintiff provides sufficient facts to demonstrate alleged harm under Section (c)(4)(A)(i)(VI), which imposes penalties if the offense "caused damage affecting 10 or more protected computers during any 1-year period." *See* 18 U.S.C. § 1030(c)(4)(A)(i)(VI). Wright Flood specifically disputes Plaintiff's allegation that its unlawful conduct caused damage to ten or more protected computers when, Wright Flood asserts, Plaintiff only identified one "protected computer" in the First Amended Complaint. (Reply 8:18–27).

Wright Flood's argument is unavailing. Plaintiff alleges that "Defendants' conduct affected multiple protected computer devices, at least 10 in multiple states." (FAC ¶ 128). Earlier in the First Amended Complaint, Plaintiff alleges sufficient facts demonstrating that the devices are "protected computers." (*Id.* ¶ 124) ("Defendants accessed ImageKeeper's protected computer system through the Secure Portal, the ImageKeeper Cloud and the Adjuster Application. The ImageKeeper System is used in interstate and foreign commerce and communication."). Given the foregoing facts, the Court denies Wright Flood's Motion to Dismiss as to Plaintiff's claim for violation of the CFAA.

**D. Deceptive Trade Practices Act**

Lastly, Wright Flood seeks dismissal of Claim 8: Deceptive Trade Practices in violation of NRS § 41.600. (Second MTD 9:12–23). Wright Flood specifically argues that Plaintiff fails to allege the basic requirements for a deceptive trade practices claim under NRS § 41.600. (*Id.*).

NRS § 41.600 provides, "[a]n action may be brought by any person who is a victim of consumer fraud. As used in this section, 'consumer fraud' means: . . . a deceptive trade practice as defined in NRS 598.0915 to NRS 598.0925 . . . ." *See* NRS § 41.600. "Consumer fraud encompasses deceptive practices, such as '[k]nowingly mak[ing a] . . . false

representation in a transaction.'" NRS § 598.0915(15). To establish a deceptive trade practice claim under Nevada law, the plaintiff must demonstrate that (1) an act of consumer fraud by the defendant (2) caused (3) damages to the plaintiff. *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657-58 (D. Nev. 2009).

Here, Plaintiff alleges a plausible claim under the DPTA. Plaintiff claims that Wright Flood falsely represented to adjuster firms, like Colonial Claims, that ImageKeeper is the source or sponsor of the Wright Flood application or has ImageKeepers' approval. (FAC ¶ 143). Additionally, Plaintiff alleges that Wright Flood failed to disclose the following:

> (a) no intention of honoring its contractual and confidentiality obligations, (b) planned to immediately reverse engineer and replicate the secured ImageKeeper System for its own use, and (c) intended to use ImageKeeper's technology to develop a clone product intended to replace and eliminate the ImageKeeper from the market.

(*Id*. ¶ 145). These false representations, Plaintiff alleges, induced Plaintiff into agreeing to the terms of the SSA, including a two-year non-compete provision. (*Id*.). "Had [Plaintiff] known of Wright Flood's intentions, [Plaintiff] would not have executed the SSA and would have terminated Wright Flood's access to the ImageKeeper System." (*Id*.). Plaintiff purportedly gave access to the secure ImageKeeper System in reliance on Wright Flood's misrepresentation. (*Id*.). Based on the foregoing allegations, the Court finds that Plaintiff alleges a plausible deceptive trade practices claim.

Wright Flood argues that Plaintiff fails to identify the "goods and services" purportedly at issue. (Second MTD 9:13–14). NRS 598.0915(1) prohibits "[k]nowingly pass[ing] off goods or services for sale or lease as those of another person" and NRS 598.0915(2) prohibits "[k]nowingly mak[ing] a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease." *See* NRS § 598.0915. Plaintiff, however, repeatedly refers to two goods/services in its Amended Complaint—the ImageKeeper System

and the competing Wright Flood Application. (FAC ¶¶ 11, 45). Moreover, Plaintiff alleges that Wright Flood failed to disclose its true intentions "[i]n connection with negotiating the SSA for the use of the ImageKepeer System." (*Id*. ¶ 145). Given the allegations listed above, the Court denies Wright Flood's Motion to Dismiss as to Plaintiff's Deceptive Trade Practices claim.

## V. CONCLUSION

**IT IS HEREBY ORDERED** that Wright Flood's Motion to Dismiss the Complaint, (ECF No. 59), is **DENIED as moot**.

**IT IS FURTHER ORDERED** that Wright Flood's Motion to Dismiss the Amended Complaint, (ECF No. 75), is **DENIED**.

**DATED** this __29__ day of September, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT