DOMINICA C. ANDERSON (SBN: 2988)
DANIEL B. HEIDTKE (SBN 12975)
**DUANE MORRIS LLP**
100 N. City Parkway, Suite 1560
Las Vegas, NV 89106-4617
Tele: 702.868.2600; Fax:  702.385.6862
E-Mail:  dcanderson@duanemorris.com
        dbheidtke@duanemorris.com

TERRY W. AHEARN (admitted *pro hac vice*)
D. STUART BARTOW (admitted *pro hac vice*)
**DUANE MORRIS LLP**
2475 Hanover Street
Palo Alto, CA 94304-1194
E-Mail:  twahearn@duanemorris.com
        dsbartow@duanemorris.com

JORDANA A. GARELLEK (admitted *pro hac vice*)
**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036-4086
E-mail:   JGarellek@duanemorris.com

BRIANNA M. VINCI (admitted *pro hac vice*)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
E-mail:   BVinci@duanemorris.com

Attorneys for Defendant
*Wright National Flood Insurance Services, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IMAGEKEEPER LLC, a Nevada Limited Liability Company,<br><br>                    Plaintiff,<br><br>          v.<br><br>WRIGHT NATIONAL FLOOD INSURANCE SERVICES, LLC, a Delaware Limited Liability Company,<br><br>                    Defendant. | Civil Action No.: 2:20-cv-01470-CDS-VCF<br><br>**DEFENDANT WRIGHT NATIONAL FLOOD INSURANCE SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO ADEQUATELY DISCLOSE TRADE SECRETS**<br><br>==REDACTED VERSION== |

Defendant Wright National Flood Insurance Services, LLC ("Wright Flood"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Court's Order (ECF No. 195) granting Wright Flood's Motion for Leave to file an Early Motion for Summary Judgment, hereby moves for summary judgment against Plaintiff ImageKeeper LLC's ("Plaintiff"). This Motion is made and based upon the papers and pleadings on file, the memorandum of points and authorities, and declaration that follows, and any oral argument this Court may entertain.

Dated: April 26, 2022          DUANE MORRIS LLP

By:   /s/  *Terry W. Ahearn*
Dominica C. Anderson
Terry W. Ahearn
D. Stuart Bartow
Daniel B. Heidtke
Jordana A. Garellek
Brianna M. Vinci
Attorneys for Defendant *Wright National Flood Insurance Services LLC*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................1

II. STATEMENT OF FACTS & ALLEGATIONS ......................................................2

III. LEGAL STANDARD................................................................................................4

    A. Legal Standard on Motion for Summary Judgment................................. 4

    B. Trade Secret Misappropriation ................................................................. 5

    C. Lack of Particularity Grounds for Summary Judgment........................... 5

IV. PLAINTIFF FAILED TO MEET ITS BURDEN TO ADEQUATELY DISCLOSE ITS ALLEGED TRADE SECRETS WITH SUFFICIENT PARTICULARITY ................7

    A. Plaintiff's Inconsistent and Inadequate Disclosure regarding Source Code ........... 7

        1. Source Code Is Not Alleged in This Case But is Asserted in the Final ID ........... 7

        2. Plaintiff Fails to Specifically Identify Source Code in its Final ID........... 8

        3. For Each of the Seven Alleged Trade Secrets, Source Code Is Not Disclosed At All or In Its Entirety ........... 10

            a. Alleged Trade Secret 1 Does Not Include Source Code...............11

            b. Alleged Trade Secret 2 Does Not Include Source Code...............11

            c. Alleged Trade Secret 3 Does Not Include Source Code...............12

            d. Alleged Trade Secret 4 Does Not Include Source Code...............13

            e. Alleged Trade Secret 5 Does Not Include Source Code...............13

            f. Plaintiff's Disclosure of Alleged Trade Secret 6 Includes Only a Portion of Source Code ...............14

            g. Alleged Trade Secret 7 Does Not Include Source Code...............14

    B. Plaintiff's Alleged Trade Secrets are Inadequately Disclosed............................. 15

        1. The Final ID Contains Improperly Vague and Ambiguous Language ..... 15

        2. Alleged Trade Secrets 1-5 and 7 are Inadequately Disclosed.................. 17

            a. Alleged Trade Secret 1 Contains Ambiguous Language...............17

            b. Alleged Trade Secret 2 Contains Ambiguous Language...............20

            c. Alleged Trade Secret 3 Contains Ambiguous Language...............20

1

d.   Alleged Trade Secret 4 Contains Ambiguous Language ..............22

e.   Alleged Trade Secret 5 Contains Ambiguous Language ..............22

f.   Alleged Trade Secret 7 Contains Ambiguous Language ..............24

C.   Plaintiff Inadequately Disclosed Documentary Evidence ....................................24

1.   Plaintiff Fails to Properly Identify Documentary Evidence In Support of Its Alleged Trade Secrets......................................................................24

2.   The Documentary Evidence Cited by Plaintiff Fails to Identify the Alleged Trade Secrets ..............................................................................27

a.   Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 1 .............27

b.   Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 2 .............27

c.   Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 3 .............27

d.   Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 4 .............28

e.   Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 5 .............28

f.   Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 6 .............28

g.   Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 7 .............29

V.   CONCLUSION..........................................................................................................29

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................4, 5

*Big Vision Private Ltd. v. E.I. Dupont De Nemours & Co.*,
    1 F. Supp. 3d 224 (S.D.N.Y. 2014) ...........................................................7

*Bunnell v. Motion Picture Ass'n of Am.*,
    567 F. Supp. 2d 1148 (C.D. Cal. 2006) ...........................................6, 26, 27

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548 (1986)..........................................................4

*Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*,
    312 F. Supp. 3d 944 (D. Nev. 2018) ...........................................................5

*Dai v. Freeman & Williams*,
    No. 3:05-CV-00269-ECR (VPC), 2007 U.S. Dist. LEXIS 111628 (D. Nev. June
    18, 2007) ...............................................................................................4-5

*FormFactor, Inc. v. Micro-Probe, Inc.*,
    No. C 10-3095 PJH, 2012 U.S. Dist. LEXIS 79359, 2012 WL 2061520 (N.D. Cal.
    June 7, 2012), *vacated pursuant to party stipulation,* 2012 U.S. Dist. LEXIS
    175773 (N.D. Cal. Nov. 21, 2012)...................................................6, 9, 17

*Imax Corp. v. Cinema Techs., Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ...........................................................*Passim*

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
    254 F.R.D. 463 (M.D. Fla. 2008)................................................................16

*Ltd. v. IAC/Interactive Corp.*,
    No. 05-Civ.-9292, 2008 U.S. Dist. LEXIS 12017 (S.D.N.Y. Feb. 20, 2008)..................6, 16

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
    475 U.S. 574 (1986).....................................................................................4

*Mont. Camo, Inc. v. Cabela's, Inc.*,
    No. CV-08-71-BLG-RFC, 2010 U.S. Dist. LEXIS 57895
    (D. Mont. June 11, 2010)...................................................................6, 17

*Native Am. Servs. v. Givens*,
    No. 98-35992, 2000 U.S. App. LEXIS 5045 (9th Cir. Mar. 23, 2000) ........................7

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*,
    210 F.3d 1099 (9th Cir. 2000) ....................................................................4

*Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*,
   18 F.3d 1468 (9th Cir. 1994) ...................................................................................4

*Princess Cruises, Inc. v. Amrigon Enters.*,
   51 F. App'x 626 (9th Cir. 2002) ...............................................................................7

*Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*,
   955 F. Supp. 2d 247 (S.D.N.Y. 2013), *aff'd*, 572 F. App'x. 19 (2d Cir. 2014).................6, 16, 17

*Symbion Rsch. Int'l v. Lewis*,
   No. 2:05-cv-01324-RLH-GWF, 2007 U.S. Dist. LEXIS 117989
   (D. Nev. Dec. 20, 2007) ...........................................................................................4

*X6D Ltd. v. Li-Tek Corps. Co.*,
   No. CV 10-2327-GHK, 2012 U.S. Dist. LEXIS 207418
   (C.D. Cal. Aug. 27, 2012) ..............................................................................*Passim*

**Statutes**

18 U.S.C. § 1839(3) ............................................................................................................5

NRS § 600A.030(5) ...........................................................................................................5

**Rules**

Fed. R. Civ. P. 56(c) ..........................................................................................................4

Local Rule 7-3(a) ...............................................................................................................3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This is a trade secret misappropriation case.  Despite repeated opportunities to adequately disclose its alleged trade secrets with particularity during discovery in this action, and having been warned and then given *one last chance* by the Court to do so, Plaintiff still cannot—or will not—take a position on the metes and bounds of what it contends to be trade secret information, and how such information could be distinguishable from information that is commonly known to the public. Plaintiff's identification of alleged trade secrets is—in a word—inadequate.

Plaintiff's failure is most notably reflected in three ways.  *First*, as Plaintiff has repeatedly told the Court from the beginning of the case, computer source code is not at issue in this action. Ex. A[1] (PI Hearing Tr.), at 30:1-5 ("We never alleged an issue of source code, Your Honor, so that's not an issue.  Source code is not the issue here…we're not alleging access to source code."  * * *  The Court: "[P]laintiff has made clear that they did not claim that the defendant had copied source code.").   Yet, Plaintiff's final identification of alleged trade secrets implies, and Plaintiff's designated corporate witness repeatedly testified, that *unspecified* lines of source code drawn from *unidentified* source code files of *unknown* number and provenance make up integral portions of each of the seven alleged trade secrets.  Plaintiff's corporate witness on the scope and content of the alleged trade secrets and the ***only*** person who allegedly "designed, developed, managed, and deployed" all of the alleged trade secrets,[2] Michael Patterson, could not identify a single name of a single source code file—and in fact could not even provide a ballpark estimate of how many source code files make up Plaintiff's system, aside from saying there were "lots" of them.  With one minor exception (for alleged trade secret 6), Plaintiff does not identify ***any*** source code at all.

*Second*, Plaintiff takes ambiguous and noncommittal positions concerning the scope and content of the alleged trade secrets, relying on vague and obfuscatory language—"such as," "e.g.," "can/may include," "encompasses," and the like.  Plaintiff also refers to various processes, procedures,

---

[1]  The exhibits cited herein refer to the exhibits to the Declaration of Jordana A. Garellek In Support of Wright Flood's Motion for Summary Judgment ("Garellek Decl.") filed herewith.

[2]  *See* Ex. D (Plaintiff Imagekeeper, LLC's Responses and Objections to Defendant Wright National Flood Insurance Services, LLC's Second Set of Interrogatories (9-11)) at 4.

and characteristics as "proprietary" or "unique," but does not identify what those processes, procedures and characteristics are, let alone how they are purportedly proprietary or unique.  In deposition, Plaintiff's corporate designee on the alleged trade secrets, Michael Patterson, was, once again, unable to answer even basic, straightforward questions about what Plaintiff contends its alleged trade secrets to be.

*Third,* Plaintiff cites a paltry number of documents that it purports disclose the alleged trade secrets.  Plaintiff cites many of the same documents for several of the alleged trade secrets.  However, Plaintiff fails to identify where in any of these documents the alleged trade secrets are disclosed or how the purported trade secrets are distinguishable from public information or information obtained by Plaintiff from Wright Flood that is contained in these documents.  Significantly, Plaintiff's corporate witness, Mr. Patterson, also could not identify the alleged trade secrets purportedly disclosed in any of these documents.

Because Plaintiff fails to identify its alleged trade secrets with reasonable particularity and in a manner that would reasonably allow Defendant Wright Flood to evaluate the scope of Plaintiff's claims and, most importantly, defend against them, the Court should enter summary judgment in favor of Wright Flood as to all seven alleged trade secrets, and further as to all causes of action in this case based on Plaintiff's allegations of misappropriation.

## II.    STATEMENT OF FACTS & ALLEGATIONS

Plaintiff alleges that Wright Flood misappropriated Plaintiff's trade secrets under the Defend Trade Secrets Act ("DTSA") and the Nevada Uniform Trade Secrets Act ("NUTSA") by creating a mobile system for insurance claims adjusters purportedly similar to the mobile system Wright Flood ordered from (and specified for) Plaintiff.  (ECF No. 67, Counts 1-3).  Plaintiff also asserts several other causes of action based on the same basic nucleus of facts in Counts 4-6, 8, and 10-11.

Wright Flood served its first set of interrogatories on Plaintiff on October 15, 2020, including Interrogatory No. 1, which sought a detailed disclosure of Plaintiff's alleged trade secrets.  Plaintiff initially responded to Interrogatory No. 1 on November 17, 2020.  Thereafter, Plaintiff supplemented its response to Interrogatory No. 1 on December 14, 2020.  Neither Plaintiff's initial response nor its supplemental responses provided anything close to a reasonable level of detail concerning the scope

and content of the alleged trade secrets.  Rather, the descriptions were obtuse, vague, and essentially incomprehensible.

On January 29, 2021, Wright Flood filed a motion to compel Plaintiff to provide a more fulsome and complete response concerning its alleged trade secret disclosures.  (ECF Nos. 110, 124, and 134).  That motion was referred to Magistrate Judge Ferenbach.  On April 30, 2021, Magistrate Judge Ferenbach granted Wright Flood's motion, ordering Plaintiff to further supplement its responses to Interrogatory No. 1 no later than May 21, 2021.  (ECF No. 157).  The Court specifically ruled that Plaintiff thereafter would "not be permitted to materially alter the details of its trade secrets disclosed in its supplemental response."  (*Id.*).  Thus, after several tries, this was to be Plaintiff's *final* chance.  In accordance with the Court's April 30, 2021 Order, Plaintiff served its Second Supplemental Responses and Objections to Wright Flood's Interrogatory No. 1 (hereinafter, Plaintiff's "Final Identification of Alleged Trade Secrets" or "Final ID" for short) on May 21, 2021.[3]  *See* Ex. B, (Final ID) at 10-29.

On July 23, 2021, Wright Flood filed its Motion for Leave to File an Early Motion for Summary Judgment Outside the Limitations Imposed by Local Rule 7-3(a). (ECF No. 160). The Court granted this motion on February 17, 2022. (ECF No. 195). The Court stated that it "does not find that Wright National seeks leave to file an early summary judgment for the purposes of evading the District of Nevada's page limits for motions for summary judgment, but rather to simplify the trade secret issues in the case." (*Id.* at 5). The Court stated, "Summary judgment is thus proper as to whether Plaintiff sufficiently identifies, with particularity, a trade secret to form the basis for its misappropriation of trade secrets claim." (*Id.* at 6). Pursuant to the Court's Order (ECF No. 195), Wright Flood files this Motion outside the limitations imposed by Local Rule 7-3(a).

For the reasons discussed below, Plaintiff's Final ID fails to adequately disclose Plaintiff's alleged trade secrets 1-7 (the "Alleged Trade Secrets")—a core element of Plaintiff's trade secret misappropriation claims to which Plaintiff bears the burden of proof.

---

[3]  Plaintiff has since supplemented its responses to other interrogatories in Wright Flood's First Set of Interrogatories (1-8).  The content of Plaintiff's response to Interrogatory No. 1 has remained unchanged since May 21, 2021.  The page numbers cited herein refer to Plaintiff's Final ID as reproduced in Plaintiff's Fourth Supplemental Responses and Objections to Wright Flood's First Set of Interrogatories.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## III.    LEGAL STANDARD

### A.    Legal Standard on Motion for Summary Judgment

Summary judgment prevents unnecessary trials where no material issue of fact exists. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2555 (1986). A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 322. The moving party has the burden of demonstrating that no genuine issue as to any material fact exists. *Celotex*, 477 U.S. at 323. "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. *See also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105 (9th Cir. 2000) (a movant may meet its initial burden on summary judgment by showing that an opposing party lacks sufficient evidence to fulfill its ultimate burden of persuasion at trial).

Once a moving party has met its burden, the opposing party cannot "rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial." *Dai v. Freeman & Williams*, No. 3:05-CV-00269-ECR (VPC), 2007 U.S. Dist. LEXIS 111628, at *3 (D. Nev. June 18, 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, a court considers the following: (a) whether a fact is material; (b) whether a genuine issue for the trier of fact exists, as determined by the documents submitted to the court; and (c) the evidence in light of the appropriate standard of proof. *Id.* at *3-4 (citing *Anderson*, 477 U.S. at 248). The opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Symbion Rsch. Int'l v. Lewis*, No. 2:05-cv-01324-RLH-GWF, 2007 U.S. Dist. LEXIS 117989, at *13-14 (D. Nev. Dec. 20, 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)). "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry

of summary judgment" while "[d]isputes over irrelevant or unnecessary facts should not be considered." *Dai*, 2007 U.S. Dist. LEXIS 111628, at *4. A court may grant summary judgment "[i]f the evidence is merely colorable, or is not significantly probative." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B.   Trade Secret Misappropriation

Under the DTSA:

> [T]he term "trade secret" means all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
>
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information;

18 U.S.C. § 1839(3).

Similarly, NUTSA defines a trade secret as "information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code," which "[d]erives independent economic value . . . from not being generally known to, and not being readily ascertainable by proper means by the public" and "[i]s the subject of efforts . . . to maintain its secrecy." NRS § 600A.030(5). Misappropriation under the NUTSA requires the following: "(1) a valuable trade secret; (2) misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and (3) the requirement that the misappropriation be wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose." *Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*, 312 F. Supp. 3d 944, 958 (D. Nev. 2018).

### C.   Lack of Particularity Grounds for Summary Judgment

In order to maintain a claim for trade secret misappropriation, the Ninth Circuit has held that a plaintiff must "describe the subject matter of the trade secret with *sufficient particularity* to separate

it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (internal citations omitted).  Failure to adequately disclose alleged trade secrets with sufficient particularity is grounds for summary judgment.  *See id.* at 1167-70 (affirming district court's summary judgment ruling because plaintiff failed to meet its burden to sufficiently identify its asserted trade secrets); *FormFactor, Inc. v. Micro-Probe, Inc.,* No. C 10-3095 PJH, 2012 U.S. Dist. LEXIS 79359 at *18, 2012 WL 2061520, at *6 (N.D. Cal. June 7, 2012) (granting summary judgment because plaintiff failed to "provide[] the requisite showing to clearly identify what each individual thing is that is alleged to be a trade secret."), *vacated pursuant to party stipulation,* 2012 U.S. Dist. LEXIS 175773, at *1 (N.D. Cal. Nov. 21, 2012); *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1155 (C.D. Cal. 2006) (granting summary judgment after plaintiff failed to identify where to find its trade secrets in 34 disclosed documents); *Mont. Camo, Inc. v. Cabela's, Inc.*, No. CV-08-71-BLG-RFC, 2010 U.S. Dist. LEXIS 57895, *12 (D. Mont. June 11, 2010) (granting summary judgment where trade secrets were only defined by general categories); *Sarkissian Mason, Inc. v. Enter. Holdings, Inc*., 955 F. Supp. 2d 247, 255 (S.D.N.Y. 2013), *aff'd*, 572 F. App'x. 19 (2d Cir. 2014) (applying Missouri law, holding that "the Court cannot find a trade secret, because it is insufficiently defined. . . . General categories of information are insufficiently specific to qualify as trade secrets.") (internal citations omitted).

"[I]t is Plaintiffs' — not Defendants'— burden to clearly identify their trade secrets." *X6D Ltd. v. Li-Tek Corps. Co.*, No. CV 10-2327-GHK (PJWx), 2012 U.S. Dist. LEXIS 207418, at *30 (C.D. Cal. Aug. 27, 2012).  This is not simply a matter for discovery.  "[T]his is a substantive issue on which Plaintiffs bear the burden of proof."  *Id.* at *30.  Indeed, "Plaintiffs are the only ones in possession of the evidence with which to do so."  *Id.* at *30.  This is an important obligation for many reasons: "'so that the defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and non-secret information, and so that a jury can render a verdict based on a discriminating analysis of the evidence of disclosure and misappropriation.'"  *Id.* at *30 n.7 (citing *sit-up Ltd. v. IAC/Interactive Corp.*, No. 05-Civ.-9292, 2008 U.S. Dist. LEXIS 12017, at *11 (S.D.N.Y. Feb. 20, 2008)).

"Numerous courts have found similar [nonspecific and ambiguous] disclosures to be insufficient to carry the plaintiff's burden at summary judgment of identifying the trade secrets at issue with sufficient particularity."  *Id.* at \*24; *see also Big Vision Private Ltd. v. E.I. Dupont De Nemours & Co.*, 1 F. Supp. 3d 224, 258 (S.D.N.Y. 2014) (collecting cases, stating, "each Circuit Court of Appeals to have opined on this issue has required a comparable degree of specificity, as have numerous district courts across the country"); *Princess Cruises, Inc. v. Amrigon Enters.*, 51 F. App'x 626, 628 (9th Cir. 2002) ("[Plaintiff's] failure to properly specify its asserted trade secrets rendered summary judgment on its counterclaim appropriate."); *Native Am. Servs. v. Givens*, No. 98-35992, 2000 U.S. App. LEXIS 5045, at \*4-7 (9th Cir. Mar. 23, 2000) ("Regarding the rest of [Plaintiff's] alleged trade secrets, [Plaintiff] fails to describe them with sufficient specificity. . . . Its generalized and conclusory assertion that this information constitutes or contains trade secrets is insufficient to create a triable issue.").

## IV. PLAINTIFF FAILED TO MEET ITS BURDEN TO ADEQUATELY DISCLOSE ITS ALLEGED TRADE SECRETS WITH SUFFICIENT PARTICULARITY

Plaintiff's Final ID fails to adequately disclose its Alleged Trade Secrets 1-7 with sufficient particularity as ordered by the Court and as required under the law.

### A. Plaintiff's Inconsistent and Inadequate Disclosure regarding Source Code

#### 1. Source Code Is Not Alleged in This Case But is Asserted in the Final ID

Counsel for Plaintiff represented at oral argument early on in the proceedings that "[w]e never alleged an issue of source code, Your Honor, so that's not an issue.  Source code is not the issue here. [W]e're not alleging access to source code."  Ex. A (PI Hearing Tr.) at 30:1-5.  Yet, in its Final ID, as well as in its 30(b)(6) corporate deposition testimony, Plaintiff asserts each of the Alleged Trade Secrets includes source code.  *See, e.g.*, Ex. C (Patterson Dep.) at 28:16-31:3 (with respect to Alleged Trade Secret 1, claiming that ███████████████████████████ ████); *id.* at 35:11-21 ("███████████████████ [in Alleged Trade Secret 2], ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████; *id.* at 36:15-16 (Q. Does [Alleged Trade Secret 3] include any source code files?  A.  Yes."); *id.* at 37:8-15 (█████████

1  ███████████████████████████ [within Alleged Trade Secret 4] █████████

2  ██████████████████████████████████████████████████████████████

3  ██████████████████ ; *id.* at 39:24-40:7 (████████████████████████

4  ██████████████████████████████████████████████████████████████

5  ██████████████████████████████████████████████████████████████

6  █████████████ ; *id.* at 146:2-4 (█████████████████████████████

7  █████████████ ; *id.* at 42:22-43:5 (████████████████████████████

8  ████████████████ [in Alleged Trade Secret 7] ███████████████████

9  ████████████████████████████████████████████ ).

### 2.     Plaintiff Fails to Specifically Identify Source Code in its Final ID

Notwithstanding that Plaintiff now claims that source code is an integral part of each of the seven Alleged Trade Secrets, Plaintiff ***fails to identify any source code at all*** in connection with Alleged Trade Secrets 1-5 and 7.  *See* Ex. B at 16-19 (Alleged Trade Secret 1), 19-21 (Alleged Trade Secret 2), 21-22 (Alleged Trade Secret 3), 23-24 (Alleged Trade Secret 4), 24-26 (Alleged Trade Secret 5), 28-29 (Alleged Trade Secret 7).   For Alleged Trade Secret 6, Plaintiff admits it failed to disclose all of the source code.  Ex. C (Patterson Dep.) at 146:2-4 (███████████████████████ ████████████████████████████ ).  For each of the Alleged Trade Secrets, the Final ID states that Plaintiff ████████████████████████████████ Ex. B (Final ID) at 19, 21, 22, 24, 26, 28, and 29. Yet, Plaintiff failed to produce any source code in this matter.  And even if it had, producing all of its source code without specifically identifying the source code that purportedly implements the Alleged Trade Secrets is insufficient to meet Plaintiff's burden.  *X6D Ltd.,* 2012 U.S. Dist. LEXIS 207418, at *23 (it is plaintiff's "'burden of identifying for the court ***exactly*** what it claim[s] as trade secrets.'") (citing *Imax Corp.,* 152 F.3d at 1166) (emphasis added).

Indeed, Plaintiff's corporate witness admitted that even if source code were provided, it would be difficult to determine the relevant source code for the Alleged Trade Secrets without the ████ ████████████████ *See* Ex. C (Patterson Dep.) at 55:22-57:2 (objections omitted, emphasis added):



When asked how many source code files are used in Plaintiff's system, he was unable to even provide an estimate. *Id.* at 56:21-57:2 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). By Plaintiff's own admission, such particular source code—had it actually been produced—would be ▮▮▮▮▮▮▮▮▮▮ Ex. C (Patterson Dep.) at 55:22-57:2.

It is not Wright Flood's, the Court's, or the jury's obligation to slog through potentially thousands (or tens of thousands) of source code files in order to eventually "come across" (or stumble upon) what Plaintiff purportedly believes the source code trade secrets to be. *X6D Ltd.,* 2012 U.S. Dist. LEXIS 207418, at *30 ("[I]t is Plaintiffs' — not Defendants'— burden to clearly identify their trade secrets."). If Plaintiff wants to claim source code as a trade secret, Plaintiff must specify it. Plaintiff does not. *FormFactor,* 2012 U.S. Dist. LEXIS 79359 at *17-18 (N.D. Cal. June 7, 2012) (plaintiff failed to satisfy, among other things, "the requirement that the plaintiff identify each particular trade secret (not just a file that might contain a trade secret). . . .").

As a result, Wright Flood has no way of knowing or identifying what source code Plaintiff contends to be part of the Alleged Trade Secrets, or of locating the same within "lots" of source code files—possibly thousands or even tens of thousands of source code files.[4] Ex. C (Patterson Dep.) at

---

[4] Even if source code had been adequately disclosed in the Final ID, Plaintiff's misappropriation claims fail as a matter of fact and law because it is undisputed that Wright Flood never had access to any of Plaintiff's source code. Counsel for Plaintiff told the Court that source code is not alleged to have been misappropriated in this case. Ex. A (PI Hearing Tr.) at 30:1-5. And the Amended Verified Complaint (ECF No. 67) does not allege Wright Flood misappropriated source code. Nor could it because Wright Flood never had access to Plaintiff's source code.

DEFENDANT WRIGHT NATIONAL FLOOD INSURANCE SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT

131:4-10.  Plaintiff's failure to identify source code in connection with each of the Alleged Trade Secrets, as well as Plaintiff's contradictory statements regarding whether source code is at issue in this case, renders the Alleged Trade Secrets inadequately disclosed.  For these reasons alone, the Court should dismiss Plaintiff's trade secrets misappropriation allegations regarding all seven Alleged Trade Secrets.

**3.    For Each of the Seven Alleged Trade Secrets, Source Code Is Not Disclosed At All or In Its Entirety**

Plaintiff's corporate witness was unable to identify any or all source code in connection with the seven Alleged Trade Secrets.  *See* Ex. C (Patterson Dep.) at 30:21-32:8 (██████████

███████████████████████████████████████████████████████████████

██████████████████████████; *id.* at 35:22-36:6 (████████████████████

████████████████████████████ [in Alleged Trade Secret 2]? ███████████████

████████████████████████████████████████████████████████████████

██████████████████████████████); *id.* at 36:7-24 (███████ [source code] ███ [for Alleged Trade Secret 3]? █████████████████████████

███████████████████████████████████████████████████████████████

██████); *id.* at 37:16-38:4 (███████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████); *id.* at 39:24-40:25 (██████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████); *id.* at 146:2-4 (█████████████████████████

███████████████████); *id.* at 42:22-43:5 (██████████████████████████

███████████████████████████ [in Alleged Trade Secret 7] ██████████████

████████████████████████████████████████████████████████████).

This is a striking admission by Plaintiff concerning "a substantive issue on which Plaintiff[] bear[s] the burden of proof."  *X6D Ltd.,* 2012 U.S. Dist. LEXIS 207418, at *30.  Plaintiff is "the only one[] in possession of the evidence" who can do so.  *Id.*  And Plaintiff admittedly has not.  As outlined

below, each of the Alleged Trade Secrets is insufficiently disclosed in Plaintiff's Final ID by failing to include any or all of the relevant source code.

### a.   Alleged Trade Secret 1 Does Not Include Source Code

Alleged Trade Secret 1 is primarily identified as ███████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████ Ex. B (Final ID) at 16.  Plaintiff's corporate representative testified that in this context, ████████████████████████████████ ██████████████████████████████████████████████ Ex. C (Patterson Dep.) at 29:8-14 (emphasis added).  Yet, Plaintiff did not identify any source code in connection with Alleged Trade Secret 1.  Indeed, Plaintiff's corporate representative testified that he could not recall any names of any source code files relevant to Trade Secret 1 and admitted that there are no names or lines of source code files identified in the Final ID in connection with Alleged Trade Secret 1.  *Id.* at 30:21-32:8 (████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████).

Plaintiff further asserts ████████████████████████████████ Ex. B (Final ID) at 16.  Plaintiff's corporate representative testified that this ██████████████ is implemented in source code, but could not identify any source code files or portions thereof that would reflect this purportedly ██████████.  Ex. C (Patterson Dep.) at 55:22-57:2 (████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████).

### b.   Alleged Trade Secret 2 Does Not Include Source Code

Alleged Trade Secret 2 is primarily identified in the Final ID as ████████████ ████████████████ Ex. B (Final ID) at 19.  Plaintiff's corporate representative testified that ████████████ in this context is intended again as a reference to source code.  Ex. C (Patterson Dep.) at 35:11-21.  However, Plaintiff does not identify any source code in connection with Alleged Trade Secret 2.  Plaintiff's corporate representative testified that he could not recall any names, lines, or locations of any source code files that might be part of Alleged Trade Secret 2, and none were

listed in Plaintiff's Final ID. *Id.* at 35:22-36:6 (████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████).

### c.   Alleged Trade Secret 3 Does Not Include Source Code

Trade Secret 3 is identified as ██████████████████████████

████████████████████████████████████████ Ex. B (Final ID) at

21. API stands for "application programming interface." APIs in general have outward-facing "calls"

that allow users from outside organizations to be able to interact with the API, while the non-public

portion of the API is comprised of source code that actually implements the functionality. Consider,

for example, a 'drive-thru' menu at a fast-food restaurant. A motorist might pull up to the speaker

and order (call) a "Combo Meal #1," and upon payment at the window receive a burger, a large order

of french fries, and a medium cola drink. "Combo Meal #1" and what it represents (burger, large

fries, medium cola) are like the outward-facing portions of the API – which, undisputedly, is all

Wright Flood had access to in this case. What the motorist does not see, however, is the particular

steps of the order being prepared or the particular recipes (*i.e.*, processes) involved in making the

"Combo Meal #1." That process—out of the motorist's view—is analogous to the non-public source

code that actually makes the API function which, undisputedly, Wright Flood ***never*** had access to in

this case.

Importantly, Plaintiff fails in the Final ID to distinguish between the outward-facing aspects

of the allegedly proprietary APIs versus the source code that actually makes the allegedly proprietary

APIs function. This is important to this case and the allegations asserted because Plaintiff previously

admitted that Wright Flood never had access to the source code (*see* Ex. A (PI Hearing Tr.) 30:1-5;

Ex. C (Patterson Dep.) 149:23-150:2), so there cannot be any misappropriation if such allegations are

based on the implementation of the APIs.

Incongruously, Plaintiff's corporate representative nevertheless testified that Alleged Trade

Secret 3 as articulated in the Final ID includes source code. Ex. C (Patterson Dep.) at 36:7-17 (███

████████████████████████████████████████████████████████

1

2

3 ).  The representative further testified that Alleged Trade

4 Secret 3 includes

5 *Id.* at 130:24-131:3.  But Plaintiff identifies no source code

6 in connection with Alleged Trade Secret 3.  As the witness indicated,

7 *Id.* at 131:4-10.  And Plaintiff's corporate

8 representative admitted that no particular source code was specified in the disclosure of Alleged Trade

9 Secret 3.  *Id.* at 36:15-24 (

10

11 ).

**d.     Alleged Trade Secret 4 Does Not Include Source Code**

13      Alleged Trade Secret 4 is identified as

14 Ex. B (Final ID) at 23. Like the other alleged

15 trade secrets, Plaintiff's corporate representative testified that Alleged Trade Secret 4's

16

17 Ex. C (Patterson Dep.) at 37:13-15.  However, Plaintiff does not identify any

18 source code allegedly related to Trade Secret 4.  As Plaintiff's corporate representative testified,

19

20 *Id.* at 37:23-38:4.

**e.     Alleged Trade Secret 5 Does Not Include Source Code**

22      Alleged Trade Secret 5 is identified as a

23 Ex. B (Final ID) at 24.  Despite admitting

24 that the allegedly "proprietary" aspects of Alleged Trade Secret 5 are reflected in source code,

25 Plaintiff does not identify any source code purportedly relating to Alleged Trade Secret 5.  As

26 Plaintiff's corporate representative admitted,                                    in the

27 disclosure of Alleged Trade Secret 5.  Ex. C (Patterson Dep.) at 39:24-41:4.

28

1

2

**f.      Plaintiff's Disclosure of Alleged Trade Secret 6 Includes Only a Portion of Source Code**

Alleged Trade Secret 6 is identified as ████████████████████████ Ex. B (Final ID) at 26.  As for Alleged Trade Secret 6, the Final ID ***does*** include a snippet of source code. *See* Ex. B (Final ID) at 26-28; Ex. C (Patterson Dep.) at 41:10-14 (██ ████████████████ ████████████████████████████████ ██████████████████████).  Clearly, Plaintiff knew how to identify relevant source code when it chose to do so.  And insofar as Plaintiff alleged that snippet of source code to be a trade secret, Wright Flood agrees that it would have been identified with specificity. However, Plaintiff refuses to draw the line here.

Plaintiff's corporate witness refused to commit to identifying such code as the entirety of Alleged Trade Secret 6.  Ex. C (Patterson Dep.), at 146:2-4 (█████████████████ ██████████████); *id*. at 58:2-6 (██████████████████████████ ████████████████████████████ ██████████████████████).  Mr. Patterson was also unable to identify where this snippet of source code came from or in what file it exists. *Id.* at 41:15-22 (██ ████████████████████████████████ ████████████████████████████ ██████████████████████).  In any event, Mr. Patterson admitted that Plaintiff does not contend that the source code cited was ever accessed by Wright Flood. *Id.* at 149:23-150:2 (██ ████████████████████████████████ ████████████████).

**g.      Alleged Trade Secret 7 Does Not Include Source Code**

Alleged Trade Secret 7 is identified as ████████████████████████ Ex. B (Final ID) at 28.  Plaintiff fails to indicate whether this trade secret includes or is limited to source code and Plaintiff has not disclosed any source code allegedly related to Trade Secret 7. Moreover, Plaintiff's corporate representative testified that he did ██████████████████████ ████████████████████ in relation to Alleged Trade Secret 7. Ex. C (Patterson

Dep.) at 42:22-43:5.

**B.     Plaintiff's Alleged Trade Secrets are Inadequately Disclosed**

**1.     The Final ID Contains Improperly Vague and Ambiguous Language**

Equally deficient, the Alleged Trade Secrets are described at multiple, often conflicting, levels of abstraction in the Final ID, using vague and ambiguous language.  Terms like ████████ ████████████████████████████████████████████████████ appear repeatedly throughout the descriptions.  *See, e.g.*, Ex. B (Final ID) at 15-17, 25 (████████), 22, 23 (██████████████████).  There are further references to ██████████████ and ██████████████████, but those ██████████████████ are undisclosed.  *See, e.g., id.* at 18 and 24.  These open-ended and ambiguous terms leave Wright Flood, the Court, and the trier of fact guessing as to the scope of Plaintiff's alleged trade secrets.

Courts have held that such open-ended descriptions are insufficient to maintain an action for trade secret misappropriation.  *See, e.g. Imax Corp.*, 152 F.3d at 1164-65 (affirming grant of summary judgment for failure to identify trade secrets with "sufficient particularity").   Trade secret misappropriation plaintiffs "must identify the trade secrets and carry the burden of showing they exist," by "describ[ing] the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade."  *Id*.  The defendant in *Imax* issued two interrogatories requesting that Imax identify the alleged trade secrets in their entirety.  *Id*. at 1165.  Imax was compelled by the court to respond to— and later, to supplement its responses to—these interrogatories.  *Id*. at 1165-66.  Imax's responses identified eighty purported trade secrets but failed to "identify the precise numerical dimensions and tolerances" of those purported trade secrets.  *Id*. at 1166.  Instead, Imax used the improper "catchall phrase 'including every dimension and tolerance that defines or reflects that design.'"  *Id*. at 1167.  The Ninth Circuit determined that this disclosure was insufficient because "it does not ***clearly refer*** to tangible trade secret material."  *Id*. (emphasis added).  Thus, it would be "unlikely" that the district court could discern which of the asserted system's "many 'dimensions and tolerances' were trade secrets."  *Id*.  And it would be impossible for the defendant to prepare a defense to the trade secrets claim "without some concrete identification of exactly what 'dimensions and tolerances'" the

defendant was alleged to have misappropriated.  *Id.*  Because Imax's Fourth Supplemental interrogatory responses "failed to indicate precisely which dimensions and tolerances were trade secrets"—and therefore failed to identify the purported trade secrets with "reasonable specificity"—summary judgment was proper.  *Id.*

Plaintiff's Final ID suffers from the same shortcomings that made summary judgment appropriate in *Imax*.  Like the plaintiff in *Imax*, Plaintiff was ordered by the Court to provide a specific identification of its alleged trade secrets.  *See* ECF No. 157.  Plaintiff's Final ID parallels the insufficient identification in *Imax*.  Plaintiff's Final ID similarly uses broad, "catchall" terms from which the Alleged Trade Secrets cannot be clearly determined.  For example, Plaintiff claims that "[Alleged] ███████████████████████████████████████████████████████ (*see infra* § IV.B.1) and that Alleged Trade Secret 3 includes ██████████████████████████ ████████████████████████████████████████████ *See infra* § IV.B.3.  The Final ID therefore fails to properly identify the Alleged Trade Secrets.  *See Imax*, 152 F.3d at 1167; *see also X6D Ltd.*, 2012 U.S. Dist. LEXIS 207418, at *22 ("Plaintiffs' operative trade secrets disclosure fails to identify any actual trade secrets but instead lists twenty categories of Plaintiffs' trade secrets that Plaintiffs allege to be misappropriated and which Plaintiffs intend to pursue at trial.") (internal citations and quotation marks omitted); *Sarkissian*, 955 F. Supp. 2d at 255 ("[T]he Court cannot find a trade secret, because it is insufficiently defined. . . . General categories of information are insufficiently specific to qualify as trade secrets.") (internal citations omitted); *Knights Armament Co. v. Optical Sys. Tech., Inc.*, 254 F.R.D. 463, 467 (M.D. Fla. 2008) ("It is axiomatic that a party may not assert a cause of action for misappropriation of trade secrets without identifying for the opposing party the trade secrets at issue. . . . [I]t is insufficient to describe the trade secrets by generic category. . . . Rather, [the plaintiff] must identify the specific characteristics of each trade secret. . . .") (internal citations omitted); *sit-up Ltd.*, 2008 U.S. Dist. LEXIS 12017, at *34 ("[S]pecificity is required before the court so that the defendant can defend himself adequately against claims of trade secret misappropriation, and can divine the line between secret and non-secret information, and so that a jury can render a verdict based on a discriminating analysis of the evidence of disclosure and misappropriation.").

Plaintiff's lack of specificity in its disclosures and in its subsequent corporate testimony renders the Alleged Trade Secrets inadequately disclosed.  Plaintiff's insufficient disclosures inappropriately leave Wright Flood, the Court, and the trier of fact to discern the specific elements of the Alleged Trade Secrets.  For this additional reason, the Court should dismiss Plaintiff's trade secrets misappropriation allegations regarding the Alleged Trade Secrets.

### 2.  Alleged Trade Secrets 1-5 and 7 are Inadequately Disclosed

As discussed below, each of Alleged Trade Secrets 1-5 and 7 are insufficiently disclosed in Plaintiff's Final ID due to Plaintiff's improper use of broad and ambiguous language.  It is Plaintiff's "'burden of identifying for the court *exactly* what it claim[s] as trade secrets.'"  *X6D Ltd.,* 2012 U.S. Dist. LEXIS 207418, at *23 (citing *Imax Corp.*, 152 F.3d at 1166) (emphasis added).   This identification must go beyond the disclosure of "nebulous concepts," categories, or examples.  *Mont. Camo, Inc.*, 2010 U.S. Dist. LEXIS 57895, at *12; *see also Sarkissian Mason, Inc.*, 955 F. Supp. 2d at 255 ("If Plaintiffs[] seek to define the concept so broadly, the Court cannot find a trade secret, because it is insufficiently defined . . . . General categories of information are insufficiently specific to qualify as trade secrets.") (internal citations omitted).  Plaintiff must show (1) whether a given piece of information *constitutes* a trade secret; (2) identify that trade secret; and (3) describe the subject matter of that trade secret *all* with sufficient particularity. *FormFactor,* 2012 U.S. Dist. LEXIS 79359 at *17-18.  Again, Plaintiff fails to do so.

### a.  Alleged Trade Secret 1 Contains Ambiguous Language

Plaintiff's description of ███████████████████████████ describes a generic category of functionalities, not a specific proprietary method. Ex. B (Final ID) at 16.  According to Plaintiff, ████████████████████████████████ certain functionality. *Id.* (emphasis added).  The word ██████████ is ambiguous.  It can be open-ended (meaning it could include other things) or closed-ended (an exhaustive description).  *See* ███████████████████████████████████████████████████. (last accessed Apr. 1, 2022). At deposition, Plaintiff's corporate representative refused to commit to whether ████████ is intended as open-ended or closed-ended in this context. Ex. C (Patterson Dep.) at 43:6-46:6.  While Alleged Trade Secret 1 may ████████ certain ████████ Plaintiff

1   will not say how those capabilities are implemented (somewhere in source code, apparently), or what

2   other capabilities, if any, might also be included.

3        According to Plaintiff, ██████████████████████████████████████████

4   ██████████████████████████████████████████████████ Ex. B (Final

5   ID) at 16 (emphasis added).  Again, ██████████ is ambiguous.  Additionally, ██████ connotes

6   an example or series of examples that may or may not be exhaustive.  ██████████████████

7   ██████████████████████████████████████████ (last accessed Apr. 1,

8   2022).   It would have been straightforward enough for Plaintiff to simply say "Trade Secret 1 *is* ██

9   ██████████████████████████ implemented [in a particular way] . . . ."  Yet Plaintiff

10  and its representatives have repeatedly declined to limit or clarify the description as they were ordered

11  to do.   Moreover, if there are multiple discrete alleged trade secrets in this first category of

12  functionalities, Plaintiff has failed to clarify this point in violation of the Court's order to do so and

13  violation of the law.

14        Later, the Final ID asserts, ██████████████████████████████████████

15  █  Ex. B (Final ID) at 16.  Plaintiff does not identify what this purportedly ██████ process is.

16  Likewise, ██████████████████████████████████████ Ex. B (Final ID) at 18.

17  Plaintiff never identifies what the purportedly ██████████████ is.  Plaintiff's corporate

18  representative testified that ████████████████████ is ████████████████

19  ██████████████████ but this example is neither mentioned in the Final ID nor is it in any way

20  ██████ to Plaintiff's system.   Ex. C (Patterson Dep.) at 83:5-19.   In fact, the ██████████

21  ██████ is a number issued by FEMA, a federal agency, and used for many years in Wright Flood's

22  (and others') National Flood Insurance Program claim processing, so how that number, at least in its

23  own right, could ever be a trade secret of Plaintiff's is unclear.  *Id.* at 85:5-86:4 (acknowledging

24  ██████████████████████████████████████████).  If Plaintiff is alleging that Alleged

25  Trade Secret 1 is a combination of the ██████████████ with some other information, Plaintiff

26  fails to say what that combination is.

27        Plaintiff further alleges that it has trade secret rights in ██████████████████████

28  ████████████████████████████████████████ Ex. B (Final ID) at 18.  But

Plaintiff does not identify which ███████ these are, or how they are ███████d (again, apparently in source code that Plaintiff did not identify and Wright Flood never had access to).

Plaintiff contends that ████████████████████████████████████████████ ████████████████████████████████████████████████ Ex. B (Final ID) at 18. Plaintiff did not identify these ████████████████ Plaintiff provides one example: ████████ ████████ But like the ████████████████████████████ is not proprietary to Plaintiff. To the contrary, the ████████████████ is administered by FEMA, a federal agency funded by taxpayers. And if Plaintiff means to claim rights in how these ████████████ are ████████, presumably that would take place in source code, which Plaintiff did not identify and Wright Flood never had access to.

According to Plaintiff, "[Alleged] ████████████████████████████████ ████████████████████████████ Ex. B (Final ID) at 18. As discussed above, ████████████████ can be open-ended or closed-ended, and Plaintiff cannot (or will not) say which applies in this context. Plaintiff also contends that █████████████████████████████████████ ████████████████████████████████████████ *Id.* at 19. Yet Plaintiff does not identify or anywhere describe this ████████████ Of course, any ████████ process presumably is implemented in source code, which Plaintiff admits it did not identify and Wright Flood never had access to.

Plaintiff further contends that ██████████████████████████████████ ████████████████████ Ex. B (Final ID) at 19. But again, this is just a generic capability, not a particular process. Nor does Plaintiff identify what aspects are ████████████ or how such ████████████ is implemented. Of course, any alleged ████████████ presumably is implemented in source code that Plaintiff has not identified and Wright Flood never had access to.

Plaintiff also claims ████ ███████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████ Ex. B (Final ID) at 19. But again, this is just a statement of generic capability, not an identification of anything that is even arguably unique. Plaintiff further states, ██████████ ████████████████████████████████████████████████ *Id.* Again,

1   Plaintiff fails to identify these purportedly ███████████████████.

2   **b.**   **Alleged Trade Secret 2 Contains Ambiguous Language**

3   According to Plaintiff, "[Alleged] █████████████████████████

4   ██████████████████████████████████████████████████████

5   ████████████████████████████ Ex. B (Final ID) at 19.  This passage appears

6   to merely describe a generic capability, not a particular means of implementing such capability.

7   Plaintiff says that ███████████████████████████████████████

8   ████████████████████████████████████████████████████ *Id.*

9   (emphasis added).  The phrase ███████████ is open-ended and conditional.

10   According to the Final ID, ██████████████████████████████

11   ██████████████████████████████████████ Ex. B (Final ID) at 20.

12   But again, this is just a generic capability, not an implementation of anything.  To the extent there is

13   an implementation of this capability, that implementation presumably exists in source code—source

14   code not identified by Plaintiff and never accessed by Wright Flood.

15   **c.**   **Alleged Trade Secret 3 Contains Ambiguous Language**

16   According to Plaintiff, ███████████████████████████████

17   ██████████████████████████████████████████████████████

18   ███████████   Ex. B (Final ID) at 21.

19   As discussed above (*see supra* § IV.A.3.), Plaintiff fails in the Final ID to distinguish between

20   the outward-facing aspects versus the implementation aspects (*i.e.* source code) of the allegedly

21   proprietary APIs.  It is the implementation aspects that actually make the APIs function.  This is an

22   important distinction because Wright Flood never had access to the implementing aspects of the APIs

23   and, in any event, Plaintiff has completely failed to disclose any implementing aspects of the APIs in

24   its Final ID. *See supra* § IV.A.3.  Thus, there cannot be any misappropriation of the APIs by Wright

25   Flood if such allegations are based on the implementation of the APIs.  If the proprietary features of

26   the APIs are in the outward facing aspects of these APIs, the Final ID fails, once again, to disclose

27   the specific trade secrets that are purportedly contained in the outward-facing aspects.

28

First, Plaintiff fails to disclose which APIs or which tasks out of this purported ███████ constitute Alleged Trade Secret 3.  The Final ID further states, ██  ████████████ ████████████████████████████████ Ex. B (Final ID) at 21 (emphasis added). Not only does Plaintiff provide just one ████████ (another open-ended term), Plaintiff does not identify the names of any *particular* APIs.  Rather, this example appears to refer to some category of ███████████████—the identities of which are not specified.  Additionally, the Final ID states that ████████████████████████████████████████████████ ████████████████████████████ *Id.*  Plaintiff does not identify these APIs by name or even indicate how many such █████████████████ are in this category.  Plaintiff's corporate representative testified, ██████████████████████████████████████████ ████ but could not identify what APIs those were. Ex. C (Patterson Dep.) at 126:24-127:10.

The Final ID also states that "[Alleged Trade Secret 3] ███████████████████ ████████████████████████████████████████████████████ Ex. B (Final ID) at 21-22. Not only is this passage not explained, Plaintiff does not indicate whether it regards these ████████ to be trade secrets – if they are alleged trade secrets, as discussed above, the corresponding source code is missing.  More importantly, Plaintiff's corporate representative testified that the ████████████████ an Alleged Trade Secret and that there is ███████████ ████████████████████████ the ██████████████████████ but does not recall ████████████ Ex. C (Patterson Dep.) at 128:15-129:9.

Lastly, the Final ID states, ████████████████████████████████████ ███████████████████ Ex. B (Final ID) at 22.  Plaintiff fails to identify any ████████████ or even indicate how many such APIs are in this category.  Again, not only is Plaintiff's Final ID lacking any identification of the alleged trade secret APIs, Plaintiff itself did not know or refused to identify the names of these APIs.  Plaintiff's corporate representative testified that the █████████████ ███████████████████████████████████████████ Ex. C (Patterson Dep.) 129:10-14 (emphasis added).

1        **d.      Alleged Trade Secret 4 Contains Ambiguous Language**

2        While Plaintiff does not include report creation in the title for Trade Secret 4, Plaintiff states

3    that this alleged trade secret ███████████████████████████████ and lists

4    examples of various types of ████. Ex. B (Final ID) at 23. It is unclear whether Plaintiff claims

5    ████████████████████ as trade secrets, or whether it is some subpart or subfeature of

6    the same that is at issue.

7        Further, Plaintiff's corporate representative testified, ███████████████████

8    ███████████ and that the ██████████████████████

9    ██████████ Ex. C (Patterson Dep.) at 132:17-133:14. Plaintiff has not specifically

10   identified what these █████████████ are.

11       Moreover, Alleged Trade Secret 4 merely includes generic descriptions of █████████.

12   The ██████ listed are ██████ publicly defined by insurance companies or according to FEMA

13   reporting forms.  According to Plaintiff, ███████████████████████████

14   █ Ex. B (Final ID) at 23. It is not sufficient to merely provide █████ of ████ and forms.

15   Plaintiff needed to identify which particular ones (or portions thereof) it was alleging as trade secrets.

16   Yet Plaintiff would not take a position on that issue.

17       Additionally, Plaintiff's description of ███████████ simply states that ██

18   ████████████████████████████████████████████████████

19   but fails to describe how ████████████████████████████████

20   ████████ or how any of this is an alleged trade secret. Ex. B (Final ID) at 23. Plaintiff also fails

21   to describe how it uses the █████████████████ or what the █████████

22   ███████████████ is. *Id.*

23       **e.      Alleged Trade Secret 5 Contains Ambiguous Language**

24       According to Plaintiff, ██████████████████████████████████

25   █████████████████████ Ex. B (Final ID) at 24-25.  Again, ██████ is an open-

26   ended term.  Plaintiff would not commit to a position as to whether there are other █████, not

27   listed in the response, that it believes are part of this trade secret category. *See* Ex. C (Patterson Dep.)

28   at 144:4-145:21. Plaintiff therefore fails to identify which █████ it alleges to be trade secret.

1    Plaintiff also fails to indicate whether it is asserting its Alleged Trade Secret 5 is the

2  *functionality* of the ████████████████████████ tool or the *method* and order of steps

3  that are described in the response.  Plaintiff also failed to explain what the ████████████

4  comprise and how they are ████████████  Ex. B (Final ID) at 25.  Plaintiff additionally fails to

5  indicate how the ████████████ are created, how the ████████████████ and to which

6  ████████ it is referring.  *Id.*  Further, as discussed above, the term ████████ in ████████████

7  ████████████████████████████████████████████  only provides an

8  example of the ████████  *Id.*  Plaintiff additionally fails to indicate whether the ████████ are part

9  of the Alleged Trade Secret 5 or if they are some user-defined variation.

10   According to Plaintiff, ████████████████████████████████████

11  ████████████████████████████████  *Id.*  Plaintiff never explains what is

12  purportedly unique about the ████ and whether there is a set of unique features of the ████ that

13  Plaintiff asserts to be a trade secret.

14   According to Plaintiff, ████████████████████████████████

15  ████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████

17  ████████████████  *Id.*  As with the ████████████████ tool, Plaintiff does not explain what is

18  purportedly unique about the ████ that it is claiming as a trade secret.  It is unclear whether Plaintiff

19  is asserting that ████████████████████████████ is part of—or comprises in

20  its entirety—a trade secret.  Plaintiff does not articulate or take a position on ████████████████

21  ████████████████████████████████

22   According to Plaintiff, ████████████████████████████████

23  ████████████████████████████████████████████████████████

24  ████████████████████████  *Id.* at 26.  Again, ████████ is an open-ended term.  Plaintiff

25  failed to indicate whether it is alleging the fact that ████████████████████████████████

26  ████████████ is a trade secret.  If the latter, Plaintiff fails to indicate what is the allegedly

27  proprietary method for ████████████████████.

28

1    Plaintiff states that the ███████████████████████████
2    ██████████████████████████████████████████████████████
3    ██████████   *Id.* (emphasis added).  Again, this is an open-ended term.  Plaintiff fails to indicate
4    whether it is the content of the report that it is asserting is the trade secret.  If so, Plaintiff fails to
5    indicate what are the purportedly unique or proprietary elements of the ████.  Plaintiff does not
6    articulate what kind of ███████████████ is provided and how it is generated.  *Id.*  Plaintiff also
7    fails to clarify what kind of ███████████████ is provided and how it is generated.  *Id.*

### f.    Alleged Trade Secret 7 Contains Ambiguous Language

9    According to Plaintiff, ████████████████████████████████
10   █████████████████████████████████████████████████████████
11   ████████████████████████████████████████████████  Ex.
12   B (Final ID) at 28 (emphasis added).  These are again open terms.  Plaintiff fails to identify all of the
13   updates it is asserting to be trade secrets, instead of merely listing a few examples.

14   Plaintiff also fails to explain how this Alleged Trade Secret differs from Alleged Trade Secret
15   3.  And Plaintiff's corporate representative further contributes to the confusion and ambiguity by
16   testifying that Alleged Trade Secret 7 ████████████████████████  Ex. C (Patterson
17   Dep.) at 150:10-152:3.

18   The Final ID also states, ████████████████████████████
19   █████████████████████████████████████████████████████████
20   ██████████████████████████  Ex. B (Final ID) at 29 (emphasis added).
21   This is an open-ended term.  Plaintiff has failed to articulate what other activities are allegedly
22   covered, if any.

### C.    Plaintiff Inadequately Disclosed Documentary Evidence

#### 1.    Plaintiff Fails to Properly Identify Documentary Evidence In Support of Its Alleged Trade Secrets

25   Plaintiff cites a mere 37 documents that purportedly disclose the Alleged Trade Secrets, out
26   of the more than 52,000 documents it has produced in this case. *See generally*, Ex. E (Documents
27   Cited in Final ID). Additionally, Plaintiff cites many of the same documents for each Alleged Trade

Secret without any description of what information in these documents constitutes each of the Alleged Trade Secrets the documents are being cited for. *See, e.g.,* Ex. B (Final ID) at 19, 21, 22, 24, and 29 (identifying IMKP-WF-098682, IMKP-WF-098733, and IMKP-WF-098734 for Alleged Trade Secrets 1, 2, 3, 4, and 7).[5] In addition to the overlap of documents cited for many of the Alleged Trade Secrets, Plaintiff has generally failed to identify where in these documents any of the Alleged Trade Secrets are disclosed.

Plaintiff's corporate representative, Michael Patterson, could not identify the scope of the Alleged Trade Secrets within these documents either. *See, e.g.,* Ex. C (Patterson Dep.) at 109:19-22 and 110:3-6. In reviewing IMKP-WF-098715-098717, which was identified in the Final ID as purportedly disclosing Alleged Trade Secret 1, Plaintiff's corporate representative was asked about the ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ *Id.* at 109:21-110:6.

In fact, Mr. Patterson testified that documentation of the Alleged Trade Secrets may not exist at all. Plaintiff has stated that all of the Alleged Trade Secrets (except for Alleged Trade Secret 6) were "[c]reated by Michael Patterson no later than 2013." Ex. F (Plaintiff's First Supplemental Response to Interrogatory No. 2) at 30.[6] Yet, Plaintiff's corporate representative, Mr. Patterson, testified as follows:

[5] *See also id.* at 19 and 22 (identifying IMKP-WF-098694-098696 and IMKP-WF-098713-098714 for Alleged Trade Secrets 1 and 3); *id.* at 21 and 22 (identifying IMKP-WF-098671-098675 and IMKP-WF-098687-098688 for Alleged Trade Secrets 2 and 3); *id.* at 22 and 24 (identifying IMKP-WF-098663-098664, IMKP-WF-098683-098686, IMKP-WF-098691-098693, IMKP-WF-098698-098699, and IMKP-WF-098711-098712 for Alleged Trade Secrets 3 and 4); *id.* at 22 and 29 (identifying IMKP-WF-098676-098680 for Alleged Trade Secrets 3 and 7).

[6] The page numbers cited herein refer to Plaintiff's First Supplemental Response to Interrogatory No. 2, as reproduced in Plaintiff's Fourth Supplemental Responses and Objections to Wright Flood's First Set of Interrogatories.



Ex. C (Patterson Dep.) at 70:20–71:24 (emphasis added) (objections omitted).

Nevertheless, simply listing Bates numbers, without citing specific pages or passages or providing any sort of guidance as to what the Alleged Trade Secrets are and where they are located within those documents is not sufficient to meet Plaintiff's burden to adequately disclose the Alleged Trade Secrets with sufficient particularity.   *See, e.g., Bunnell*, 567 F. Supp. 2d at 1155 (granting summary judgment for failure to identify its alleged trade secrets); *X6D Ltd.*, 2012 U.S. Dist. LEXIS 207418, at *28 (granting summary judgment where "Plaintiffs merely list[ed] hundreds of documents that allegedly 'reflect' their trade secrets but they d[id] not provide any assistance on where in those documents the trade secrets can be found."). In *Bunnell*, the plaintiffs alleged that their trade secrets were disclosed within thirty-four documents. 567 F. Supp. 2d at 1151, 1155. However, plaintiffs "failed to identify exactly what the trade secret is and apparently expect[ed] the Court to determine how the [thirty-four] documents . . . constitute a trade secret." *Id.* at 1155.

Likewise, Plaintiff's Final ID asserts that the Alleged Trade Secrets can be found within 37 cited documents but fails to identify where the Alleged Trade Secrets are disclosed within those documents. *See, e.g.*, Final ID at 19, 21, 22, 24, and 29. Trade secrets do not become sufficiently described by merely providing a list of documents without citing specific passages or providing any guidance as to what the alleged trade secrets are and where they are located within those documents— unless, of course, the document itself is what is claimed as the trade secret. *Bunnell*, 567 F. Supp. at 1155. Plaintiff cannot shift its burden of identifying its trade secrets with reasonable particularity to the Court or to Wright Flood or to the trier of fact. *Id.* Plaintiff's failure to explain *how* the cited documents disclose the Alleged Trade Secrets renders the Alleged Trade Secrets inadequately

disclosed.

**2.      The Documentary Evidence Cited by Plaintiff Fails to Identify the Alleged Trade Secrets**

Plaintiff must "specifically identify what in these documents is a trade secret and where within these documents that information is located." *X6D Ltd.,* 2012 U.S. Dist. LEXIS 207418, at *23; *see also Bunnell*, 567 F. Supp. 2d at 1155.  As outlined below, the documentary evidence cited by Plaintiff, likewise, fails to sufficiently disclose the Alleged Trade Secrets.

**a.      Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 1**

Plaintiff identifies six documents that purportedly describe Alleged Trade Secret 1.  *See* Ex. B (Final ID) at 19.  Plaintiff makes no effort to specify what information in those documents is allegedly trade secret.  Notably, of the six documents identified, three of them are also identified in connection with Alleged Trade Secrets 2, 3, 4, and 7.  *See id.* at 19, 21, 22, 24, and 29.  Likewise, another document of the six documents identified that purportedly describe Alleged Trade Secret 1 is also identified for Alleged Trade Secret 3.  *See id.* at 19 and 22. Plaintiff does not provide any indication of what information in each of those documents constitutes each Alleged Trade Secret.

**b.      Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 2**

Plaintiff identifies six documents that purportedly describe Alleged Trade Secret 2.  *See* Ex. B (Final ID) at 21.  Plaintiff does not specify what information in those documents is purportedly trade secret.  Of the six documents identified, three of them are also identified for Alleged Trade Secrets 1, 3, 4, and 7.  *See id.* at 19, 21, 22, 24, and 29.  Likewise, another two of the six documents that purportedly describe Alleged Trade Secret 2 are also identified for Alleged Trade Secret 3. *See id.* at 21 and 22.   Plaintiff provides no indication of what information in each of those documents purportedly constitutes each Alleged Trade Secret.

**c.      Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 3**

Plaintiff identifies 31 documents that purportedly describe Alleged Trade Secret 3.  Ex. B (Final ID) at 22.  Plaintiff has not identified what information in those documents is allegedly trade secret. Of the 31 documents identified, three of them are also identified for Alleged Trade Secrets 1,

2, 4, and 7. *See id.* at 19, 21, 22, 24, and 29.  Likewise, another two documents of the 31 documents that purportedly describe Alleged Trade Secret 3 are also identified for Alleged Trade Secret 2. *See id.* at 21 and 22.  Similarly, another five documents of the 31 documents that purportedly describe Alleged Trade Secret 3 are also identified for Alleged Trade Secret 4.  *See id.* at 22 and 24. Further, another document of the 31 documents identified that purportedly describe Alleged Trade Secret 3 is also identified for Alleged Trade Secret 1. *See id.* at 19 and 22. Additionally, one more document of the 31 documents that purportedly describe Alleged Trade Secret 3 is also identified for Alleged Trade Secret 7.  *See id.* at 22 and 29.  Plaintiff does not provide any indication of what information in each of those documents constitutes each Alleged Trade Secret.

> **d.     Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 4**

Plaintiff identifies nine documents that purportedly describe Alleged Trade Secret 4.  Ex. B (Final ID) at 24. Of the nine documents identified, three of them are also identified for Alleged Trade Secrets 1, 2, 3, and 7. *See id.* at 19, 21, 22, 24, and 29.  Likewise, another five documents of the nine documents that purportedly describe Alleged Trade Secret 4 are also identified for Alleged Trade Secret 3.  *See id.* at 22 and 24. Plaintiff does not provide any indication of what information in each of those documents constitutes each Alleged Trade Secret.

> **e.     Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 5**

Plaintiff identifies the following document that purportedly describes Alleged Trade Secret 5: IMKP-WF-098726-098729. Ex. B (Final ID) at 26. Plaintiff has not identified what information in this document is allegedly trade secret.

> **f.     Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 6**

Plaintiff identifies the following document that purportedly describes Alleged Trade Secret 6: IMKP-WF-098730-098731. Ex. B (Final ID) at 28. Plaintiff has not identified what information in this document is allegedly trade secret.

1

2

**g.      Plaintiff Does Not Identify the Alleged Trade Secrets in the Documents Cited with Regard to Alleged Trade Secret 7**

Plaintiff identifies five documents that purportedly describe Alleged Trade Secret 7.  Ex. B (Final ID) at 29. Of the five documents identified, three of them are also identified for Alleged Trade Secrets 1, 2, 3, and 4.  *See id.* at 19, 21, 22, 24, and 29.  Additionally, another document of the five documents that purportedly describe Alleged Trade Secret 7 is also identified for Alleged Trade Secret 3.  *See id.* at 22 and 29.  Plaintiff does not provide any indication of what information in each of those documents constitutes each Alleged Trade Secret.

**V.      CONCLUSION**

For the reasons set forth above, the Court should enter summary judgment in favor of Wright Flood as to all seven Alleged Trade Secrets and all causes of action related to these trade secrets. Specifically, the Court should enter summary judgment in favor of Wright Flood as to Counts 1-3 of the Amended Verified Complaint.   And to the extent Counts 4-6, 8, and 10-11 are based on misappropriation of the Alleged Trade Secrets that are inadequately disclosed, the Court should enter summary judgment in favor of Wright Flood as to these claims as they relate to the alleged, inadequately disclosed trade secrets.

Dated: April 27, 2022                    DUANE MORRIS LLP

By:___/s/  *Terry W. Ahearn*_____
                    Dominica C. Anderson
                    Terry W. Ahearn
                    D. Stuart Bartow
                    Daniel B. Heidtke
                    Jordana A. Garellek
                    Brianna M. Vinci

                    Attorneys for Defendant *Wright National Flood Insurance Services LLC*

**PROOF OF SERVICE**

I hereby certify that I am a citizen of the United States and am employed in Clark County, where this mailing occurs. I am over the age of eighteen years and not a party to the within entitled action; my business address is 2475 Hanover Street, Palo Alto, CA 93404.

On April 27, 2022, I served the document described as **DEFENDANT WRIGHT NATIONAL FLOOD INSURANCE SERVICES, LLC'S MOTION FOR SUMMARY JUDGMENT** on the interested party(ies) in this action:

| | |
|---|---|
| H. Stan Johnson, Esq.<br>Steven B. Cohen, Esq.<br>COHEN JOHNSON LLC<br>375 E. Warm Springs Road, Suite 104<br>Las Vegas, NV 89119<br>Tel: 702-823-3500<br>Fax: 702-823-3400<br>Email: sjohnson@cohenjohnson.com<br>Email: scohen@cohenjohnson.com | Donald L. Prunty<br>Glenn F. Meier<br>Bethany L. Rabe<br>GREENBERG TRAURIG, LLP<br>10845 Griffith Peak Drive, Suite 600<br>Las Vegas, NV 89135<br>Tel: 702.792.3773<br>Fax: 702.792.9002<br>Email: pruntyd@gtlaw.com<br>Email: meierg@gtlaw.com<br>Email: rabeb@gtlaw.com |
| Colby B. Springer, Esq.<br>Miya Yusa, Esq.<br>POLSINELLI LLP<br>Three Embarcadero Center, Suite 2400<br>San Francisco, CA 94111<br>Tel: 415.248.2100<br>Fax: 415.247.2101<br>Email: cspringer@polsinelli.com<br>Email: myusa@polsinelli.com | F. Christopher Austin<br>WEIDE & MILLER, LTD.<br>10655 Park Run Drive, Ste. 100<br>Las Vegas, NV 89144<br>Tel: 702.382.4804<br>Fax: 702.382.4805<br>Email: caustin@weidemiller.com |

☐    **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Las Vegas, Nevada, in the ordinary course of business.

☐    **BY FEDERAL EXPRESS:** I served said document(s) to be delivered on the same day to a courier or driver authorized by Federal Express to receive documents, in an envelope or package designated by Federal Express.

☒    **BY ELECTRONIC SERVICE:** I served a true copy, with all exhibits, electronically on designated recipients via electronic transmission of said document(s) as provided under Federal Rules of Civil Procedure.

*/s/ Andrew Hanna*
_____
An employee of DUANE MORRIS LLP