DOMINICA C. ANDERSON (SBN: 2988)
DANIEL B. HEIDTKE (SBN 12975)
**DUANE MORRIS LLP**
100 N. City Parkway, Suite 1560
Las Vegas, NV 89106-4617
Tele: 702.868.2600; Fax:  702.385.6862
E-Mail: dcanderson@duanemorris.com
        dbheidtke@duanemorris.com

TERRY W. AHEARN (admitted *pro hac vice*)
D. STUART BARTOW (admitted *pro hac vice*)
**DUANE MORRIS LLP**
2475 Hanover Street
Palo Alto, CA 94304-1194
Tele: 650-847-4150; Fax: 650.403.1902
E-Mail: twahearn@duanemorris.com
        dsbartow@duanemorris.com

JORDANA A. GARELLEK (admitted *pro hac vice*)
**DUANE MORRIS LLP**
1540 Broadway
New York, NY 10036-4086
E-mail:   JGarellek@duanemorris.com

NELSON STEWART
(admitted *pro hac vice*)
**DUANE MORRIS LLP**
230 Park Avenue, Suite 1130
New York, NY 10169-0079
E-mail:   NMStewart@duanemorris.com

BRIANNA M. VINCI
(admitted *pro hac vice*)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
E-mail:   BVinci@duanemorris.com

Attorneys for Defendant
*Wright National Flood Insurance
Services, LLC*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IMAGEKEEPER LLC, a Nevada Limited Liability Company,<br><br>                    Plaintiff,<br><br>        v.<br><br>WRIGHT NATIONAL FLOOD INSURANCE SERVICES, LLC, a Delaware Limited Liability Company,<br><br>                    Defendant. | Civil Action No.: 2:20-cv-01470-CDS-VCF<br><br>**DEFENDANT WRIGHT NATIONAL FLOOD INSURANCE SERVICES, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO ADEQUATELY DISCLOSE TRADE SECRETS** |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................... 1

II.    PROPER LEGAL STANDARD ............................................. 2

     A.     Plaintiff Failed to Adequately Disclose the Alleged Trade Secrets and Failed to Show Any Evidence of Adequate Disclosure ................................. 2

         1.     Plaintiff Misstates the Standard for Adequately Disclosing Trade Secrets to Survive Summary Judgment ....................................... 2

             a.     Cases Evaluating the Proper Disclosure Prior to Discovery Are Not Applicable Here Where Substantial Discovery Has Been Undertaken and Plaintiff Was Given a Final Chance to Adequately Disclose the Alleged Trade Secrets ............................. 2

             b.     Switch Limited and Montgomery Apply the More Flexible, Lenient 12(b)(6) Standard ........................................ 4

             c.     Plaintiff's Application of St. Jude Med. S.C. is Disingenuous ........ 5

             d.     Menalco is Distinguishable ............................................. 6

         2.     Plaintiff's References to the Preliminary Injunction Are Irrelevant .......... 7

         3.     Plaintiff Fails to Rebut the Correct Standard for Disclosure on Summary Judgment ................................................... 8

III.   ARGUMENT ...................................................................... 10

     A.     Plaintiff Totally Ignores the Sworn Evidence Regarding Source Code .............. 10

     B.     Plaintiff Fails to Address Improperly Vague and Ambiguous Language in the Final ID ............................................................... 12

         1.     Alleged Trade Secret 1 Contains Improperly Vague and Ambiguous Language ..................................................... 12

         2.     Alleged Trade Secret 2 Contains Improperly Vague and Ambiguous Language ..................................................... 13

         3.     Alleged Trade Secret 3 Contains Improperly Vague and Ambiguous Language ..................................................... 13

         4.     Alleged Trade Secrets 4 and 5 Contains Improperly Vague and Ambiguous Language ............................................. 15

         5.     Alleged Trade Secret 7 Contains Improperly Vague and Ambiguous Language ..................................................... 15

     C.     The Documentary Evidence Cited by Plaintiff in Its Opposition Fails to Adequately Identify the Alleged Trade Secrets ................................. 16

Defendant's Reply In Support of Its Motion For Summary Judgment

1.    Plaintiff Fails to Distinguish the Relevant Case Law Governing Disclosure Through Documentary Evidence ............................................. 16

2.    The Documentary Evidence Cited by Plaintiff for Multiple Alleged Trade Secrets Does Not Sufficiently Identify the Alleged Trade Secrets ..................................................................................................... 17

3.    The Documentary Evidence Cited by Plaintiff Fails to Adequately Identify Alleged Trade Secret 1 ...................................................... 18

4.    The Documentary Evidence Cited by Plaintiff Fails to Adequately Identify Alleged Trade Secret 2 ...................................................... 18

5.    The Documentary Evidence Cited by Plaintiff Fails to Adequately Identify Alleged Trade Secret 3 ...................................................... 18

6.    The Documentary Evidence Cited by Plaintiff Fails to Adequately Identify Alleged Trade Secret 4 ...................................................... 18

7.    The Documentary Evidence Cited by Plaintiff Fails to Adequately Identify Alleged Trade Secret 5 ...................................................... 19

8.    The Documentary Evidence Cited by Plaintiff Fails to Adequately Identify Alleged Trade Secret 6 ...................................................... 19

9.    The Documentary Evidence Cited by Plaintiff Fails to Adequately Identify Alleged Trade Secret 7 ...................................................... 19

IV.   WRIGHT FLOOD'S MOTION COMPLIES WITH L.R. 56-1 ...................................... 20

V.    CONCLUSION ............................................................................................................ 20

Defendant's Reply In Support of Its Motion For Summary Judgment

# TABLE OF AUTHORITIES

**Cases**

*Bunnell v. Motion Picture Ass'n of Am.*,
    567 F. Supp. 2d 1148 (C.D. Cal. 2007) ...............................................................................*Passim*

*Dai v. Freeman & Williams*,
    No. 3:05-CV-00269-ECR (VPC), 2007 U.S. Dist. LEXIS 111628 (D. Nev. June
    18, 2007) ....................................................................................................................................12

*FormFactor, Inc. v. Micro-Probe, Inc.*,
    No. C 10-3095 PJH, 2012 WL 2061520 (N.D. Cal. June 7, 2012) ...............................................8

*Global Adv. Metals USA, Inc. v. Kemet Blue Powder Corp.*,
    No. 3:11-cv-00793-RCJ-VPC, 2012 WL 3884939 (D. Nev. Sept. 6, 2012) .................................4

*Hernandez v. Indymac Bank*,
    No. 2:12-cv-00369-MMD-CWH, 2014 WL 12644259 (D. Nev. Sept. 19, 2014).........................7

*Imax Corp. v. Cinema Tech, Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ..............................................................................8, 11, 13, 15

*Menalco v. Buchan*,
    No. 2:07-cv-01178-PMP-PAL, 2010 WL 428911 (D. Nev. Feb. 1, 2020) ................................ 6-7

*Mont. Camo, Inc. v. Cabela's, Inc.*,
    No. CV-08-71-BLG-RFC, 2010 WL 2399548 (D. Mont. June 11, 2010) ..............................9, 13

*Montgomery v. Etreppid Techs., LLC*,
    No. 3:06-cv-00056-PMP-VPC, 2008 WL 11401776 (D. Nev. July 2, 2008)............................ 4-5

*Native Am. Servs. v. Givens*,
    No. 98-35992, 2000 U.S. App. LEXIS 5045 (9th Cir. Mar. 23, 2000) .................................. 15-16

*Newmark Grp. v. Avison Young (Canada) Inc.*,
    No. 2:15-cv-00531-RFB-GWF, 2018 WL 5886531 (D. Nev. Nov. 9, 2018)............................ 2-4

*Princess Cruises, Inc. v. Amrigon Enters., Inc.*,
    51 F. App'x 626 (9th Cir. 2002) ...........................................................................................13, 15

*Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*,
    955 F. Supp. 2d 247 (S.D.N.Y. 2013), *aff'd*, 572 F. App'x 19 (2d Cir. 2014).........................9, 15

*St. Jude Med. S.C., Inc. v. Janssen-Counotte*,
    305 F.R.D. 630 (D. Or. 2015) ................................................................................................ 5-6

*Switch Commc'ns Grp. v. Ballard*,
    No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929 (D. Nev. 2012).......................................... 2-3

Defendant's Reply In Support of Its Motion For Summary Judgment

*Switch Ltd. v. Fairfax*,
　　No. 2:17-cv-02651-GMN-VCF, 2018 WL 4181626 (D. Nev. Aug. 30, 2018) ............................4

*X6D Ltd. v. Li-Tek Corps. Co.*,
　　No. cv-10-2327-GHK, 2012 U.S. Dist. LEXIS 207418 ........................................................*Passim*

**Statutes**

Cal. Code. Civ. P. § 2019.210................................................................................................................9

Cal. Code Civ. Proc. § 2019 ..................................................................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(6)..........................................................................................................................5

Fed. R. Civ. P. 33(d) ..............................................................................................................................7

Local Rule 56-1....................................................................................................................................19

Defendant's Reply In Support of Its Motion For Summary Judgment

1

## I.     INTRODUCTION

2

The focus of Wright Flood's Motion for Summary Judgment (ECF No. 218, the "Motion") is

3
whether, after extensive discovery, Plaintiff adequately disclosed its Alleged Trade Secrets as a matter

4
of law in order to maintain its claims for trade secret misappropriation. Plaintiff has not. Plaintiff's

5
Opposition (ECF No. 237, the "Opposition") underscores and provides further evidence of the

6
undisputed fact that Plaintiff has utterly failed to adequately disclose the Alleged Trade Secrets.[1]

7

It is Plaintiff's burden to clearly identify the Alleged Trade Secrets.  Plaintiff's discussion of

8
what types of information can be considered a trade secret under the law, whether the alleged trade

9
secrets were kept confidential, and improperly framing Wright Flood's Motion as a discovery dispute

10
or as a matter that can simply be addressed at trial are *all* irrelevant to the Motion and to whether

11
Plaintiff has met its burden to adequately disclose the Alleged Trade Secrets. The starkest illustration

12
of Plaintiff's failure is Plaintiff's and Plaintiff's counsel's ongoing disagreement as to what are, or are

13
not, the Alleged Trade Secrets. In one example, Plaintiff's Opposition states that source code is not,

14
and never has been, at issue in this matter. However, Plaintiff's Final ID and the deposition testimony

15
from Plaintiff's corporate witness on the Alleged Trade Secrets—the person Plaintiff has said in sworn

16
interrogatory responses and under oath solely designed, developed, and deployed the Alleged Trade

17
Secrets—clearly state otherwise. Plaintiff's Opposition offers no specific rebuttal to the clear evidence

18
presented in Wright Flood's Motion. Rather, as discussed herein, Plaintiff misapplies the proper legal

19
standard and the burden that it bears, improperly denies the evidence and testimony of its own

20
percipient witnesses, and completely ignores other evidence showing the Alleged Trade Secrets are

21
inadequately disclosed.

22

After nearly two years of discovery, it is clear there are no *bona fide* trade secrets at stake in

23
this case. Plaintiff's inadequately described Alleged Trade Secrets are nothing more than generally

24
known flood claims processing information that was disclosed *by Wright Flood to Plaintiff* (not the

25
other way around) over the course of their 6-year business relationship. Plaintiff cannot adequately

26
identify the Alleged Trade Secrets sufficient to form the basis of a trade secret misappropriation claim

27

28

[1]  Notably, Plaintiff did not disclose independent expert opinion on the Alleged Trade Secrets by the deadline to disclose experts in this case.

against Wright Flood. As a result, Wright Flood cannot determine the line between the generally known information contained in the Alleged Trade Secrets and any purportedly secret information developed by Plaintiff in order to fully and fairly defend itself against what, at this point, can only be considered specious misappropriation claims. In light of the unrebutted evidence and the arguments presented in the briefing on its motion, Wright Flood requests that summary judgment be entered in its favor as to all causes of action based on Plaintiff's allegations of misappropriation.

## II.    PROPER LEGAL STANDARD

### A.    Plaintiff Failed to Adequately Disclose the Alleged Trade Secrets and Failed to Show Any Evidence of Adequate Disclosure

Plaintiff misstates the standard for the adequate disclosure of trade secrets at the summary judgment stage. Its reliance on an improper legal standard, and its failure to provide evidence of an adequate trade secret disclosure, doom its claims of misappropriation. For these reasons, summary judgment is proper.

#### 1.    Plaintiff Misstates the Standard for Adequately Disclosing Trade Secrets to Survive Summary Judgment

Plaintiff improperly asserts that it is not required to disclose its trade secrets with particularity, arguing that its broad, bare-bones disclosures are sufficient. This argument is based on a misapplication of case law. Plaintiff largely relies upon cases decided not at the summary judgment stage—but at the motion to dismiss stage or early in discovery. The posture of these cases, and the questions raised therein, are entirely different than the facts before the Court on Wright Flood's Motion.

##### a.    Cases Evaluating the Proper Disclosure *Prior* to Discovery Are Not Applicable Here Where Substantial Discovery Has Been Undertaken and Plaintiff Was Given a Final Chance to Adequately Disclose the Alleged Trade Secrets

Plaintiff relies on *Newmark Grp. v. Avison Young (Canada) Inc.*, No. 2:15-cv-00531-RFB-GWF, 2018 WL 5886531 (D. Nev. Nov. 9, 2018) and *Switch Commc'ns Grp. v. Ballard*, No. 2:11-cv-00285-KJD-GWF, 2012 WL 2342929 (D. Nev. 2012), in reciting the purported standard for the adequate disclosure of trade secrets to survive summary judgment. Opp. at 21:18-22. *Newmark* and

*Switch Communications*, however, dealt with the "issue of whether discovery from the defendant should be stayed until the plaintiff describes the alleged misappropriated trade secrets with reasonable particularity." *Newmark Grp.*, 2018 WL 5886531, at *5; *Switch Commc'ns Grp.*, 2012 WL 2342929, at *5.

In *Newmark*, the Nevada District Court held that the plaintiff needed to describe its trade secrets with reasonable particularity, and found that a "list of categories of documents or information that could be trade secrets or confidential information" did not suffice. *Newmark Grp.*, at *7. It explained that *at the early stages of discovery* "[i]t may be somewhat difficult to describe each alleged trade secret in full and complete detail. Plaintiffs can, however, identify the specific documents or information they claim are trade secrets and provide a summary of the facts which support their contention that the items are trade secrets." *Id.* Importantly, the court noted that "[f]urther discovery will obviously be necessary to explore the basis for Plaintiffs' trade secret contentions." *Id.* In sharp contrast to the plaintiff in *Newmark*, Plaintiff is beyond the stage of this case where "it may be . . . difficult" to describe its trade secrets in detail. In this case, discovery is almost over. Plaintiff was ordered to provided its *final* disclosure to Wright Flood's interrogatory requesting a detailed description of the alleged trade secrets. ECF No. 157. Plaintiff has failed to do so. Even at the early stages of discovery, *Newmark* recognized that a party must describe its trade secrets with "*reasonable particularity.*" 2012 WL 5886531, at *7 (emphasis added). Because Plaintiff has failed to do so, at any time in this case, its trade secret claims are inadequate and summary judgment is proper.

In *Switch Communications*, the Nevada District Court also required the trade secret plaintiff to describe its trade secrets with "reasonable particularity" before the defendant would be required to respond to discovery. 2012 WL 2342929, at *5. The court in *Switch Communications* actually went beyond the standard recited by Plaintiff, and noted that: "In order to meet its burden of describing its alleged trade secrets with reasonable particularity, Switch *must specifically describe what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination.*" *Id.* (emphasis added). The Nevada District Court in *Switch Communications* required a more detailed disclosure at the *early stages of discovery*

1  than Plaintiff boldly asserts it should be required to provide *at any point in this litigation*.  Plaintiff

2  misinterprets the law and its burden.

3  Reliance on *Global Adv. Metals USA, Inc. v. Kemet Blue Powder Corp.*, No. 3:11-cv-00793-

4  RCJ-VPC, 2012 WL 3884939 (D. Nev. Sept. 6, 2012) is also misplaced here. *Global Advanced*

5  *Metals*, like *Newmark* and *Switch Communications*, was decided early in discovery. *See* 2012 WL

6  3884939, at *6. In relevant part, *Global Advanced Metals* considered a motion for protective order in

7  which the trade secret defendant sought to prevent plaintiff from taking trade secret discovery "until

8  plaintiff has identified with sufficient detail the trade secrets it alleges defendant misappropriated."

9  *Id.* A magistrate judge had previously dealt with this request, and declined to require plaintiff to

10  identify its trade secrets with particularity "because of their voluminosity." *Id.* at *7. The District

11  Court spent very little time on this issue, and held that there was no clear error in the magistrate's

12  decision because "[t]he magistrate judge has broad discretion in ordering particular discovery."  *Id.*

13          b.    ***Switch Limited*** **and** ***Montgomery*** **Apply the More Flexible, Lenient**

14               **12(b)(6) Standard**

15  Plaintiff also cites to *Switch Ltd. v. Fairfax*, No. 2:17-cv-02651-GMN-VCF, 2018 WL

16  4181626 (D. Nev. Aug. 30, 2018), claiming that it supports the assertion that Nevada does not

17  require a plaintiff to "allege its misappropriation claims with greater particularity." Opp. at 22:3-12

18  (quoting *Switch Ltd.*, 2018 WL 4181626, at *3). Plaintiff neglects to explain that *Switch Ltd.* was

19  decided at the motion to dismiss stage and considered whether a plaintiff adequately stated a claim

20  for misappropriation.  2018 WL 4181626, at *3. *Switch Ltd.* points out that trade secret disclosures

21  in a complaint need not be all that specific. But, as Wright Flood accurately explains, even in

22  Nevada, more particularity is required to actually succeed on a trade secret claim. *Id.* at *4-5 (finding

23  that plaintiff stated a claim for misappropriation but failed to establish likelihood of success on the

24  merits because it "failed to provide any specific evidence" defining its trade secrets). Plaintiff—far

25  beyond the more lenient motion to dismiss stage—fails to provide that necessary particularity.

26  Similarly, *Montgomery v. Etreppid Techs., LLC*, No. 3:06-cv-00056-PMP-VPC, 2008 WL

27  11401776 (D. Nev. July 2, 2008) is inapposite. *Montgomery* was also decided on a motion to dismiss

28  a claim for trade secret misappropriation. 2008 WL 11401776, at *6. In that case, the Court found

Defendant's Reply In Support of Its Motion For Summary Judgment

that "[t]he Counterclaim sufficiently identifies the trade secret at issue *for purposes of surviving a Rule 12(b)(6) motion to dismiss*." *Id.* (emphasis added). The court distinguished situations in which courts had required a more detailed disclosure prior to discovery or at the summary judgment stage. *Id. Montgomery* explicitly distinguished a motion to dismiss and motion for summary judgment, and noted that there are further opportunities for the parities to further define the alleged trade secrets at the early stages of a case. *Id.*

By contrast, this case is far beyond those early stages. Unlike the plaintiff in *Montgomery*, Plaintiff has been provided with a final opportunity, after substantial discovery, to adequately identify and describe its trade secrets. The *Montgomery* court, in contrast to Plaintiff's assertions, implied that summary judgment may be appropriate when, after the parties have been provided the opportunity to "pursue further definition of the [alleged] trade secret[s] at issue through discovery," a party fails to adequately identify its trade secrets. *Id.* at *6. Judge Navarro, in this case, was more emphatic in holding "[s]ummary judgment is thus proper as to whether Plaintiff sufficiently identifies, *with particularity*, a trade secret to form the basis for its misappropriation of trade secrets claim." ECF No. 195 at 6 (emphasis added). As discussed below, Plaintiff's Opposition fails to raise any dispute of fact as to the adequacy of its disclosure. As such, summary judgment is appropriate here.

c.    **Plaintiff's Application of *St. Jude Med. S.C.* is Disingenuous**

Plaintiff cites to *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, 305 F.R.D. 630 (D. Or. 2015) for the proposition that "the identification requirement is lessened" where a plaintiff presents evidence that a defendant copied and distributed the plaintiff's trade secrets. Opp. at 21-22. Not only does this contention improperly assume that Plaintiff has presented such evidence (it has not), but it also misrepresents the *St. Jude* court's findings. In *St. Jude*, the defendant was a former employee who left plaintiff's employ for a competitor. "In a forensic review of the computer equipment used by defendant shortly before she left plaintiff's employ, plaintiff discovered evidence that defendant had copied, emailed, and downloaded what plaintiff contended were among its most competitively sensitive trade secrets and other confidential information." *St. Jude*, 305 F.R.D. at 632. Defendant's new employer sought to limit the plaintiff's ability to take discovery until it identified its trade

Defendant's Reply In Support of Its Motion For Summary Judgment

secrets with greater particularity. *Id.* The court determined that under the circumstances, the plaintiff "need not identify its trade secrets at issue with any greater particularity before it may take discovery from [the new employer] to determine what precisely defendant Janssen took and whether she is using it improperly for the benefit of her new employer." *Id.* at 641. This decision was based on the following considerations: (1) "a plaintiff's broad right to discovery under the Federal Rules"; (2) "the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating"; and (3) "if the trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a 'Catch–22' . . . . If the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret. If instead it is too specific, it may miss what the defendant is doing." *Id.* (quoting *BioD, LLC v. Amnio Tech, LLC*, 2014 WL 3864658, at *4 (D. Ariz. Aug. 6, 2014)). Thus, *St. Jude* did not hold—as Plaintiff disingenuously suggests—that any time a plaintiff alleges that its trade secrets were misappropriated, it need not identify those trade secrets with reasonable particularity. Plaintiff does not (and cannot) allege that it, like the plaintiff in *St. Jude*, is unable to identify the asserted trade secrets with particularity because it has been denied the opportunity to explore its trade secret claims in discovery. *St. Jude* is therefore inapposite.

### d.   *Menalco* is Distinguishable

Plaintiff cites to a sole summary judgment case, *Menalco v. Buchan*, No. 2:07-cv-01178-PMP-PAL, 2010 WL 428911 (D. Nev. Feb. 1, 2020), for the proposition that "[r]eference to tangible trade secret material will suffice to adequately describe the trade secret." *Id.* at *28. Notably, Plaintiff's Opposition makes little to no effort to apply this proposition to its own trade secret disclosures. This is likely because of the clear distinctions between Plaintiff's disclosure and the one at issue in *Menalco*. In *Menalco*, the court denied a trade secret defendant's motion for summary judgment because the trade secrets were adequately identified as "software for the cards and point-of-sale terminals, technical manuals, training videos, and technical overview documentation." *Id.* The *Menalco* trade secret claims were limited to specific materials that SCTN/Phoenix, the counterclaim plaintiffs, provided to the counterclaim defendants pursuant to a license agreement and

Defendant's Reply In Support of Its Motion For Summary Judgment

1   which counterclaim defendants did not return. *Id.*

2         Plaintiff, by contrast, does not identify specific materials as the only source of its trade

3   secrets. And with respect to the documents Plaintiff does identify, it does not take a position on

4   whether it limits its Alleged Trade Secrets to those particular documents. ECF No. 218-3, Ex. B

5   (Final ID) at 19, 21, 22, 24, 26, 28, and 29 (stating, "Pursuant to Federal Rule of Civil Procedure

6   33(d), ImageKeeper hereby further produces, and directs Defendant to, the following documents

7   describing [each Alleged Trade Secret] . . . ."). Plaintiff is still relying on abstract, overbroad

8   categories of information—something that *Menalco* itself explains do not suffice to survive

9   summary judgment. *Id.* (*citing Imax Corp. v. Cinema Tech, Inc.*, 152 F.3d 1161, 1167 (9th Cir.

10   1998)) ("reference to a general catchall phrase to describe features of a system . . .does not

11   adequately describe the trade secret.").  Plaintiff therefore may not rely upon *Menalco* to justify its

12   inadequate trade secret disclosures.

13         **2.**      **Plaintiff's References to the Preliminary Injunction Are Irrelevant**

14         Plaintiff's claim that the preliminary injunction somehow proves the Alleged Trade Secrets

15   have been adequately disclosed totally misstates the law and Plaintiff's burden to adequately

16   disclose the Alleged Trade Secrets. Opp. at 22:2-23:15. The standard applied at the preliminary

17   injunction stage is distinct from the standard applied at summary judgment. *E.g.*, *Hernandez v.*

18   *Indymac Bank*, No. 2:12-cv-00369-MMD-CWH, 2014 WL 12644259, at *4 (D. Nev. Sept. 19, 2014)

19   ("The standard for determining preliminary injunctive relief is different than for determining

20   summary judgment. The former requires the Court to review the likelihood of success on the merits

21   whereas the latter compels the Court to decide the issue on the merits. To hold otherwise would

22   essentially transform a motion for preliminary injunction into one for summary judgment.").

23         Plaintiff conflates the Court's finding that preliminary injunctive relief was proper at the time

24   of that motion with a finding that Plaintiff sufficiently disclosed its trade secrets to survive a

25   challenge to the merits of its misappropriation claim. This conflation is improper and should be

26   given no weight. Plaintiff suggests that Judge Navarro found that Plaintiff need not disclose its trade

27   secrets with reasonable particularity because Plaintiff moved for preliminary injunction under the

28   DTSA and NUTSA. Opp. at 22:26-23:7. This is an inaccurate representation. At the preliminary

1 injunction hearing, Judge Navarro stated not that Plaintiff *never* needed to disclose its alleged trade

2 secrets with reasonable particularity, but that such a disclosure was not required "at *this stage of the*

3 *litigation*." ECF No. 73 (Preliminary Inj. Hearing) at 67:5-8. Judge Navarro explicitly stated that the

4 standards for disclosure at the preliminary injunction stage are different from those at play on

5 "Motions to Compel discovery or *Motions for Summary Judgment*." *Id.* 67:1-3 (emphasis added).

6 Plaintiff's representation of Judge Navarro's findings is inaccurate and has no bearing on the

7 standard for disclosure to survive summary judgment.

8       Plaintiff also argues that Wright Flood's compliance with the preliminary injunction order

9 somehow renders Plaintiff's Final ID sufficient. Opp. at 23:5-15. This suggestion misrepresents the

10 record. At the preliminary injunction hearing, Wright Flood explicitly told the Court that it was

11 unclear on what Plaintiff was claiming its trade secrets were. ECF No. 73 (Preliminary Inj. Hearing)

12 at 50:1-15, 51:19-23. When the preliminary injunction issued, Wright Flood took a broad approach

13 in discontinuing use of the accused Wright Flood Application. This decision was made, in part,

14 because of the lack of clarity surrounding Plaintiff's alleged trade secret disclosures—not because

15 Wright Flood somehow understood the parameters of the alleged trade secrets. Wright Flood's

16 compliance with the preliminary injunction is therefore irrelevant to Plaintiff's failure, at summary

17 judgment, to adequately disclose its trade secrets

18         **3.**    **Plaintiff Fails to Rebut the Correct Standard for Disclosure on Summary**

19               **Judgment**

20       Plaintiff makes an insufficient effort to distinguish the relevant case law cited in Wright

21 Flood's Motion. The vast majority of Plaintiff's counter-arguments incorrectly claim that Wright

22 Flood's cases are related to "the more particularized Cal. Code Civ. Proc. § 2019 standard of

23 disclosure, which is not at issue here." Opp. at 24:11-24 (attempting to distinguish *Imax Corp.*, 152

24 F.3d at, 1164, 1167-68, *FormFactor, Inc. v. Micro-Probe, Inc.*, No. C 10-3095 PJH, 2012 WL

25 2061520 (N.D. Cal. June 7, 2012), and *Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d

26 1148, 1155 (C.D. Cal. 2007)).

27       Plaintiff's assertion that *Imax* does not apply are belied by its own favorable citation to

28 *Imax. Compare* Opp. at 24:11-15 (claiming that *Imax* does not apply) with Opp. at 21:24-25

(applying *Imax*). Moreover, Plaintiff fails to acknowledge that each of the cases cited by Wright Flood that Plaintiff attempts to distinguish was decided at the motion for summary judgment stage, while Cal. Code. Civ. P. § 2019.210 is a *discovery* statute. California law does not require a "more particularized standard of disclosure" (Opp. at 24:12-13), but simply requires that the disclosure of trade secrets with reasonable particularity be made earlier in a case—before discovery may begin. *See* Cal. Code. Civ. P. § 2019.210. Plaintiff's efforts fail to distinguish these cases and their applicability to this Motion.

Plaintiff also unsuccessfully attempts to distinguish *Mont. Camo, Inc. v. Cabela's, Inc.*, No. CV-08-71-BLG-RFC, 2010 WL 2399548, at *3 (D. Mont. June 11, 2010) and *Sarkissian Mason, Inc. v. Enter. Holdings, Inc.*, 955 F. Supp. 2d 247, 256 (S.D.N.Y. 2013), *aff'd*, 572 F. App'x 19 (2d Cir. 2014). Plaintiff claims that the *Montana Camo* court granted summary judgment "because plaintiff's alleged trade secrets were generally known, readily ascertainable, undefined as to specific details (such as cost, pricing, marketing information), or unsupported by other evidence." Opp. at 25:1-8. While that is *part* of the *Montana Camo* court's holding, and also true in this case as to the Alleged Trade Secrets, the court also held that a party fails to "sufficiently identify a trade secret" where it claims "nebulous concept[s]" rather than specific materials.  2010 WL 2399548, at *5.

Plaintiff similarly complains that the *Sarkissian Mason* court granted summary judgment because the trade secrets were "publicly known." Opp. at 25:9-14. Although the Alleged Trade Secrets in this case are also publicly known, Plaintiff's interpretation disingenuously limits the *Sarkissian Mason* court's holding. Namely, it ignores the court's clear finding that trade secrets are "insufficiently defined," and summary judgment is proper, where the plaintiff, as in this case, claims ownership of "broadly" defined concepts. 955 F. Supp. 2d at 255.

Additionally, Plaintiff alleges that the Motion is "a discovery dispute that the Court has disposed of twice." Opp. at 1:9-10. This is totally false. The time for amending its disclosures in discovery has long passed and, as Judge Navarro noted, Plaintiff's inadequate disclosure is now an issue of burden of proof, which Plaintiff simply has not met to survive summary judgment. *X6D Ltd.*, 2012 U.S. Dist. LEXIS 207418, at *30 (""[I]t is Plaintiffs' — not Defendants'— burden to

1   clearly identify their trade secrets.").

2          Plaintiff's Opposition cites to inapplicable case law and fails to distinguish cases which

3   provide the proper standard for adequate disclosure of trade secrets at the summary judgment stage.

4   Under the proper standard, Plaintiff's Final ID is plainly inadequate and renders summary judgment

5   for failure to sufficiently identify the Alleged Trade Secrets proper.

6   **III.   ARGUMENT**

7          **A.      Plaintiff Totally Ignores the Sworn Evidence Regarding Source Code**

8          Plaintiff, in its Opposition, unequivocally states, "ImageKeeper is not alleging

9   misappropriation of source code in this action." Opp. at 26:21-22.  Wright Flood does not object to

10  source code not being alleged in this case. Wright Flood has never had access to any source code

11  written by Plaintiff. But it is simply not true that "ImageKeeper has never claimed that its Trade

12  Secrets include source code." Opp. at 26:17-18.  Plaintiff's Final ID of the Alleged Trade Secrets

13  clearly asserts that source code is part of *each and every Alleged Trade Secret*. Mot. at §IV.A.; ECF

14  No. 218-3, Ex. B at 19, 21, 22, 24, 26, 28, and 29. And Plaintiff's corporate witness on the scope of

15  the Alleged Trade Secrets clearly asserts source code is part of *each and every Alleged Trade Secret*.

16  Mot. at §IV.A.; ECF No. 218-4, Ex. C at 28:16-31:3, 35:11-21, 36:15-16, 37:8-15, 39:24-40:7,

17  42:22-43:5, and 146:2-4.

18         Plaintiff's only response to this evidence is to accuse Wright Flood of "cobbl[ing] together"

19  Mr. Patterson's admissions, "badger[ing] the witness," or somehow being "unfair"[2] to Mr. Patterson

20  in obtaining these admissions. Opp. at 27:4-17. Specifically, Plaintiff completely fails to address the

21  Final ID and its citation to source code for every single Alleged Trade Secret, including Alleged

22  Trade Secret 6 that actually lists source code. Mot. at 14:2-22 (Plaintiff affirming the Final ID

23  discloses source code for Alleged Trade Secret 6).  Instead, Plaintiff admits that "the technological

24  processes claimed in each Trade Secret is [*sic*] implemented within [unidentified] source code," but

25  Plaintiff just "[does] not claim the source code itself as the secret" (Opp. at 27). A plain reading of

26

27  _____
    [2] Plaintiff claims that Wright Flood's questions were "unfair" because "[i]t would be impossible for
    [Mr.] Patterson to remember the location and line number of each function." Opp. at 27, n.10. Mr.
28  Patterson would not have had to know or memorize any lines of source code if the source code had
    been adequately disclosed in the Final ID as required under the law and as ordered by the Court.

the unrebutted evidence cited above and in Wright Flood's Motion belies Plaintiff's glib assertions and illustrates Plaintiff's failure to adequately disclose the Alleged Trade Secrets in the Final ID. *See, e.g.*, *Imax Corp*, 152 F.3d at 1164-65 (granting summary judgment after plaintiff failed, in its final response to interrogatory requesting identification of trade secrets, to sufficiently describe trade secrets); *X6D Ltd.*, 2012 U.S. Dist. LEXIS 207418, at *30 (Plaintiff bears the burden of identifying its trade secrets); *X6D Ltd. v. Li-Tek Corps. Co.*, No. cv-10-2327-GHK, 2012 U.S. Dist. LEXIS 207418, at *23 (summary judgment proper where plaintiff failed to "identify each particular trade secret (not just a file that might contain a trade secret)").

In a particularly poignant example, the Final ID identifies Alleged Trade Secrets that are ███████████████ (TS1 and TS2), ████████ (TS4 and TS5), contain ██████████████ (TS6) and include ████████████████ (TS7). ECF No. 218-3, Ex. B at 16:13-19, 19:22, 23:1-9, 24:24, 26:20, 28:13-26. Mr. Patterson testified that ████████████ by definition, refers to source code. ECF No. 218-4, Ex. C at 29:8-14 and 35:11-21. Similarly, Mr. Patterson testified that ████████ refers to source code. ECF No. 218-4, Ex. C at 37:13-15. As already discussed, Alleged Trade Secret 6 explicitly identifies source code. ECF No. 218-4, Ex. C at 41:5-14. And Mr. Patterson testified that ████████████████ refers to source code. ECF No. 218-4, Ex. C at 42:10-43:5. As for Alleged Trade Secret 3, Mr. Patterson testified that another "component" of Alleged Trade Secret 3 "is going to be the actual [undisclosed] source code…." ECF No. 218-4, Ex. C at 36:15-16 and 130:18-131:3.

The bizarre discrepancy between Plaintiff and Plaintiff's counsel as to the Alleged Trade Secrets, likewise, demonstrates the Alleged Trade Secrets have been inadequately disclosed. [3] On the source code issue alone, summary judgment should be granted.

---

[3] This is not the only contradiction between what Plaintiff's counsel claims the Alleged Trade Secrets are and what Plaintiff, under oath and in sworn interrogatory responses, states the Alleged Trade Secrets are. In another contradiction, counsel for Plaintiff stated that "there's no real trade secret that we are alleging that's at issue here that was forward facing that a user like yourself or anyone else could see…." ECF No. 73 (Preliminary Inj. Hearing) at 22:19-23:5. Mr. Patterson, Plaintiff's corporate witness and the person who designed, developed, and deployed the Alleged Trade Secrets, clearly asserted that, at least as to Trade Secret 3, the Alleged Trade Secrets included "outward facing components." ECF No. 218-4, Ex. C at 130:18-131:3.

**B.** **Plaintiff Fails to Address Improperly Vague and Ambiguous Language in the Final ID**

The Motion identified numerous, specific ambiguous and open-ended terms used in the Final ID for Alleged Trade Secrets 1-5 and 7. Mot. at 17-24. Plaintiff's Opposition, however, generally responds by pointing to the Final ID and documents cited in the Final ID without any further explanation or analysis as to how, contrary to Wright Flood's Motion, this evidence meets Plaintiff's burden of adequate disclosure. *See, e.g.,* Opp. at 8:14-21; 15:12-19; 16:12-18 and 24:8-10; *Dai v. Freeman & Williams*, No. 3:05-CV-00269-ECR (VPC), 2007 U.S. Dist. LEXIS 111628, at *3 (D. Nev. June 18, 2007) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)) (Once a moving party has met its burden, the opposing party cannot "rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial.").

**1.** **Alleged Trade Secret 1 Contains Improperly Vague and Ambiguous Language**

When discussing Alleged Trade Secret 1, the Opposition states, "Defendant's claim that ImageKeeper does not identify the ███████████████████████ ███████████ associated with Trade Secret No. 1 is readily disproven by Response to Interrogatory No. 1 and the deposition testimony of Mr. Patterson." Opp. at 8:14-17. Plaintiff cites to Mr. Patterson's deposition testimony in support of its argument. Opp. at 8:17-18 (citing deposition testimony at 55:15-56:16 and 99:15-103:12). This testimony, however, supports Wright Flood's contention, not Plaintiff's. Mr. Patterson testified that the ████████████ identified in this excerpt was the "implementation" of the authentication in the system, which was implemented in the source code. ECF No. 237, Exhibit E (Feb. 22, 2022 Patterson Depo. Tr.) at 55:18-56:16, 103:7-16. Thus, Plaintiff's citations to evidence allegedly showing that Plaintiff adequately disclosed its Alleged Trade Secrets by defining, for example, what ██████ is, directs Wright Flood and the trier of fact right back to source code, which Plaintiff failed to disclose in the Final ID and which Plaintiff claims in its Opposition is not part of the Alleged Trade Secrets.

2.   **Alleged Trade Secret 2 Contains Improperly Vague and Ambiguous Language**

Regarding Alleged Trade Secret 2, the Opposition states:

> Defendant implies that ImageKeeper's disclosure of its Trade Secret No. 2 is deficient because it uses the word "could include" to state ███████████████ ███████████████████████████████████████████████, and that such information "could include" data, media or reports. Motion, at 20:7-9. A cursory review of the ImageKeeper system would inform Defendants that data, media and reports are indeed categories of information related to an "item." The term "could include" means that each data field is not required; rather, a member could provide data, media and/or reports.

Opp. at 10:20-26.

Even if Wright Flood had access to the ImageKeeper System, which it does not, it is not Wright Flood's (or the trier of fact's) job to analyze the ImageKeeper System in order to understand Plaintiff's Alleged Trade Secret disclosure. *X6D Ltd.*, 2012 U.S. Dist. LEXIS 207418, at *30 ("[I]t is Plaintiffs' — not Defendants'— burden to clearly identify their trade secrets. . . . [T]his is a substantive issue on which Plaintiffs bear the burden of proof."); *Bunnell*, 567 F. Supp. at 1155 (Plaintiff cannot "expect the Court to determine" the contours of the alleged trade secrets). Plaintiff was required to disclose its Alleged Trade Secrets with sufficient particularity in its Final ID. ECF No. 157; *Imax Corp.*, 152 F.3d at 1164-65; *X6D Ltd.*, 2012 U.S. Dist. LEXIS 207418, at *21-24; *Mont. Camo, Inc.*, 2010 U.S. Dist. LEXIS 57895, at *12. Additionally, Plaintiff's argument in its Opposition was not part of the Final ID or Mr. Patterson's testimony. Further, "could include" was just one ambiguous phrase Plaintiff used in the Final ID. *See* Mot. at 20:2-14.  And the Opposition fails to address the other ambiguous phrases that were raised in Wright Flood's Motion. *Id.*

3.   **Alleged Trade Secret 3 Contains Improperly Vague and Ambiguous Language**

Regarding Alleged Trade Secret 3, the Opposition does not address the ambiguous terms identified in Wright Flood's Motion. *Compare* Mot. at 21 *with* Opp. at 11-13. And Plaintiff does not show how the ambiguous terms comprise Alleged Trade Secret 3, as opposed to matters of general knowledge, which is required by law. *See, e.g.*, *Imax Corp.*, 152 F.3d at 1164-65 ("The trade secret's subject matter must be described with "sufficient particularity to separate it from matters

of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade.");

*Bunnell*, 567 F. Supp. 2d at 1155 (same); *Princess Cruises, Inc. v. Amrigon Enters., Inc.*, 51 F.

App'x 626, 628 (9th Cir. 2002) (summary judgment proper where plaintiff's "generalizations

concerning its database components are insufficient to establish the necessary distinctions between

its work and general knowledge in the trade").

Plaintiff also states that Alleged Trade Secret 3 is ████████████████ (Opp. at

11:1), not the "implementation aspects (*i.e.* source code) of the APIs." Opp. at 13:14. Neither the

Final ID, nor Plaintiff's corporate testimony, support this contention. In other words, the Plaintiff

now claims that Alleged Trade Secret 3 consists of the ████████████████. This

new position is completely inconsistent with the Final ID and Plaintiff's corporate testimony

concerning Alleged Trade Secret 3. It is also inconsistent with representation made by Plaintiff's

counsel to the Court.

In order to obtain a preliminary injunction, Plaintiff's counsel stated to the Court that there

are no Alleged Trade Secrets being claimed in "forward facing" information.  *See* ECF No. 73

(Preliminary Inj. Hearing) at 22:19-23:5 ("[T]here's no real trade secret that we are alleging that's at

issue here that was forward facing that a user like yourself or anyone else could see...."). Further,

Plaintiff's Final ID and corporate witness stated that Alleged Trade Secret 3 *does* include

implementation (*i.e.* source code). *See* ECF No. 218-4, Ex. C at 36:15-16 ("Q. Does this trade secret

include any source code files? A. Yes."); *id.* at 130:20-131:3 ("Trade Secret number 3 contains

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████."); ECF No. 218-3,

Ex. B (Final ID) at 22:23-25 ("ImageKeeper also makes available for inspection the ImageKeeper

System and the source code related thereto in response to this interrogatory."). Moreover, even if

Alleged Trade Secret 3 is limited to the ████████████████, Plaintiff fails to say so

in the Final ID.

1

2

### 4. Alleged Trade Secrets 4 and 5 Contains Improperly Vague and Ambiguous Language

3

Plaintiff does not address the facts raised by Wright Flood regarding the improperly vague

4

and ambiguous terms in the disclosures of Alleged Trade Secrets 4 and 5. Mot. at 22-24. The

5

Opposition simply points to the same disclosure that contains the ambiguous language without any

6

explanation as to how the Final ID or deposition testimony meets Plaintiff's burden. Opp. at 15:12-

7

19 and 16:12-18. Alleged Trade Secrets 4 and 5 remain inadequately disclosed. *See, e.g.*, *Imax*

8

*Corp.*, 152 F.3d at 1164-65 (use of "catchall phrase[s]" and general language, while failing to

9

provide a "concrete identification" of the alleged trade secrets, insufficient to survive summary

10

judgment); *Sarkissian Mason*, 955 F. Supp. 2d at 255 ("[T]he Court cannot find a trade secret,

11

because it is insufficiently defined. . . . General categories of information are insufficiently specific

12

to qualify as trade secrets.").

### 5. Alleged Trade Secret 7 Contains Improperly Vague and Ambiguous Language

13

14

15

Plaintiff does not address the facts raised by Wright Flood regarding the improperly vague

16

and ambiguous terms in the disclosure of Alleged Trade Secret 7. Mot. at 24:8-22. Plaintiff argues,

17

instead, that "[t]o the extent ImageKeeper relies on Trade Secrets that it has not disclosed, then the

18

proper way to address that is through an objection at trial, not a motion for summary judgment."

19

Opp. at 18:26-28. However, as discussed in the case law above and cited in the Motion, and

20

confirmed in the Court's Order (ECF No. 195), "[s]ummary judgment is thus proper as to whether

21

Plaintiff sufficiently identifies, with particularity, a trade secret to form the basis for its

22

misappropriation of trade secrets claim." ECF No. 195 at 6. Clearly, the scope of the Alleged Trade

23

Secrets is an issue ripe for summary judgment, not simply "an objection at trial" for later

24

determination if Plaintiff goes beyond its trade secret disclosure. Opp. at 18:26-28.

25

Plaintiff radically misstates the law on disclosure of alleged trade secrets and Plaintiff's

26

burden regarding its disclosure. Plaintiff's burden to disclose its Alleged Trade Secrets with

27

sufficient particularity is required by most, if not all, jurisdictions throughout the country, and that is

28

a genuine issue for summary judgment. *See Imax Corp.*, 152 F.3d at 1164-65; *Bunnell*, 567 F. Supp.

1   2d at 1155; *Sarkissian Mason, Inc.*, 955 F. Supp. 2d at 255; *X6D Ltd.*, 2012 U.S. Dist. LEXIS

2   207418, at *24; *Princess Cruises, Inc.*, 51 F. App'x at 628; *Native Am. Servs. v. Givens*, No. 98-

3   35992, 2000 U.S. App. LEXIS 5045, at *4-7 (9th Cir. Mar. 23, 2000) (all finding summary judgment

4   proper when plaintiff fails to describe its trade secrets with sufficient specificity).

5   **C.    The Documentary Evidence Cited by Plaintiff in Its Opposition Fails to
              Adequately Identify the Alleged Trade Secrets**

6

7   The documents cited in the Final ID are cited for multiple Alleged Trade Secrets. Yet, the

8   Final ID does not indicate where in each document the particular Alleged Trade Secret is located.

9   Mot. at 24-29. Plaintiff argues that the documents show the Alleged Trade Secrets without ever

10  attempting to identify exactly where each Alleged Trade Secret is disclosed. Opp. at 26.

11  ("ImageKeeper assigned those documents to each trade secret with which it is associated."). This is

12  inaccurate. The documents cited, on their face, do not appear to show any alleged trade secret

13  information.

14  **1.    Plaintiff Fails to Distinguish the Relevant Case Law Governing
              Disclosure Through Documentary Evidence**

15

16  To the extent Plaintiff attempts to distinguish its inadequate disclosures from those at issue in

17  cases such as *X6D Ltd.* and *Bunnell*, these attempts are unsuccessful. Plaintiff asserts that its

18  disclosure is unlike the ones made in *X6D Ltd.* and *Bunnell* because "Image Keeper pinpointed seven

19  specific trade secrets and a finite universe of documents that support the same. Plaintiff assigned

20  those documents to each trade secret with which it is associated. Plaintiff specifically undertook the

21  effort to create and provide demonstratives accounting." Opp. at 26. Even a cursory review of the

22  Final ID puts the lie to this overstatement.

23  Plaintiff does not "pinpoint" what makes up the seven alleged trade secrets. In fact, Plaintiff

24  cites the same documents for multiple Alleged Trade Secrets without adequately explaining "where

25  in th[e identified] documents the trade secrets can be found." *X6D Ltd.*, 2012 U.S. Dist. LEXIS

26  207418, at *28; *Bunnell*, 567 F. Supp. 2d at 1155 (summary judgment proper where plaintiffs "failed

27  to identify exactly what the trade secret is and apparently expect[ed] the Court to determine how the

28  [thirty-four] documents . . . constitute a trade secret."). Plaintiff claims that it does not expect the

1   Court to "determine how" its cited documents contain each of the alleged trade secrets. *Bunnell*, 567

2   F. Supp. 2d at 1155; *see* Opp. at 26. But that is precisely what the Final ID, and now Plaintiff's

3   Opposition, forces Wright Flood and the Court to do. Plaintiff's Final ID leaves for Wright Flood

4   and the Court to determine which portions of the cited documentary evidence represent the alleged

5   trade secrets. This is insufficient under the law. Thus, like the plaintiffs in *X6D Ltd.* and *Bunnell*,

6   Plaintiff has failed to identify its trade secrets with particularity, rendering summary judgment

7   proper. *X6D Ltd.*, 2012 U.S. Dist. LEXIS 207418, at *28; *Bunnell*, 567 F. Supp. 2d at 1155.

8           **2.     The Documentary Evidence Cited by Plaintiff for Multiple Alleged Trade
                      Secrets Does Not Sufficiently Identify the Alleged Trade Secrets**

9

10          Plaintiff argues they have adequately disclosed the Alleged Trade Secrets because they

11   provided Wright Flood with "20 pages of explanation" in the Final ID. Opp. at 26. Plaintiff's

12   verbosity does not demonstrate, under the law or the facts of this case, adequate disclosure.

13          Plaintiff refers to the ████████████ for Alleged Trade Secrets 1-5 and 7 (Opp. at 7-8,

14   10, 14-15, 16 and 18), yet specifically refers to Alleged Trade Secret 3 as the ████████████

15   ████ (Opp. at 11). Plaintiff makes no attempt to distinguish where in the ████████████

16   each of the Alleged Trade Secrets is disclosed, nor does Plaintiff explain why the ████████

17   ████████████ is a separate Alleged Trade Secret if it is also included in the other Alleged

18   Trade Secrets. The ████████████ refers to the general capabilities and features of the

19   ImageKeeper System but does not state the means for implementing these basic capabilities. The

20   ████████████ also does not distinguish these general capabilities and features from the

21   Alleged Trade Secrets.

22          Plaintiff also relies on "technical summaries" for all of the Alleged Trade Secrets. Opp. at

23   6:15-19, Ex. G (Alleged Trade Secret 1); *id.* at 9:3-12, 10:6-7, Ex. P (Alleged Trade Secret 2); *id.* at

24   11:6-7, Ex. S (Alleged Trade Secret 3); *id.* at 14:1-16, Ex. OO (Alleged Trade Secret 4); *id.* at 16:2-

25   15, Ex. PP (Alleged Trade Secret 5); *id.* at 17:1-6, Ex. QQ (Alleged Trade Secret 6); *id.* 17:10-18:2,

26   Ex. RR (Alleged Trade Secret 7). These documents, however, are simply screenshots of the

27   ImageKeeper System user guide that are made available to all users of the ImageKeeper System and

28   were made into demonstratives for the preliminary injunction hearing in this case. Furthermore,

these "technical summaries" only show capabilities or features of the ImageKeeper System. They do not show the Alleged Trade Secrets.  *See, e.g.*, Opp. at 6, 9, 11, 14, 16, and 17.

        **3.**     **The Documentary Evidence Cited by Plaintiff Fails to Adequately Identify Alleged Trade Secret 1**

     Plaintiff cites to ECF No. 237, Exhibit G (Trade Secret No. 1 Technical Summary, IMKP-WF-098715-17) for Alleged Trade Secret 1 and claims it ███████████████████████████ ████████████████████████████████████████████ Opp. at 6-7. However, it is unclear where in this document Alleged Trade Secret 1 is disclosed.

        **4.**     **The Documentary Evidence Cited by Plaintiff Fails to Adequately Identify Alleged Trade Secret 2**

     Regarding Alleged Trade Secret 2, Plaintiff cites to ECF No. 237, Exhibit P (Trade Secret No. 2 Technical Summary, IMKP-WF-098718-19), and states that it ████████████████ ██████████████████████████████████████ However, the technical summary for Alleged Trade Secret 2 does not state what "aspects" of the ImageKeeper System constitute the ████████████████ that is claimed as Alleged Trade Secret 2.

        **5.**     **The Documentary Evidence Cited by Plaintiff Fails to Adequately Identify Alleged Trade Secret 3**

     Regarding Alleged Trade Secret 3, Plaintiff cites to ECF No. 237, Exhibit S (Trade Secret No. 3 Technical Summary, IMKP-WF-098720-21) without any substantive explanation and does not identify exactly where Alleged Trade Secret 3 is disclosed therein.

        **6.**     **The Documentary Evidence Cited by Plaintiff Fails to Adequately Identify Alleged Trade Secret 4**

     Regarding Alleged Trade Secret 4, Plaintiff cites to ECF No. 237, Exhibit OO (Trade Secret No. 4 Technical Summary, IMKP-WF-098722-25), and states ████████████████████ ████████████████████████████████████████ Opp. at 14. However, Alleged Trade Secret 4 is titled ████████████████

Defendant's Reply In Support of Its Motion For Summary Judgment

1    ████████████████████████. Additionally, as with the other documentary

2    evidence, it does not identify exactly where Alleged Trade Secret 4 is disclosed therein.

3            **7.    The Documentary Evidence Cited by Plaintiff Fails to Adequately
                     Identify Alleged Trade Secret 5**
4

5        Regarding Alleged Trade Secret 5, Plaintiff cites to ECF No. 237, Exhibit PP (Trade Secret

6    No. 5 Technical Summary, IMKP-WF-098726-29) and states that it "describes specifically what

7    parts of the ImageKeeper System Plaintiff is claiming to be Trade Secret No. 5." Opp. at 16.

8    However, Plaintiff does not show how this document specifically describes Alleged Trade Secret 5.

9    Plaintiff points out "screen shots with diagrammed yellow callout boxes, noting where an aspect of

10   an element of the trade secret can be found" (Opp. at 16), but the yellow boxes do not disclose

11   Alleged Trade Secret 5. The yellow boxes simply encompass portions of screenshots of the

12   ImageKeeper System portal.

13           **8.    The Documentary Evidence Cited by Plaintiff Fails to Adequately
                     Identify Alleged Trade Secret 6**
14

15       Regarding Alleged Trade Secret 6, Plaintiff cites to ECF No. 237, Exhibit QQ (Trade Secret

16   No. 6 Technical Summary, IMKP-WF-098730 (ECF No. 163-14)), and states, "[t]his document

17   shows specifically what parts of the ImageKeeper System Plaintiff is claiming to be Trade Secret

18   No. 6." (Opp. at 17.) This document is just another "technical summary" from the ImageKeeper

19   System user guide, which simply shows the steps to take to cause the Loss Reserve Calculator to be

20   enabled.  This explanation ignores the Final ID that reproduces the source code formula and states

21   that it is the formula that is the trade secret. ECF No. 218-3, Ex. B at 27:1-28:5. Mr. Patterson

22   testified that Alleged Trade Secret 6 consists of the source code formula identified in the Final ID

23   but that is "just a piece of Trade Secret 6." ECF No. 218-4, Ex. C at 58:2-6. The Final ID, Plaintiff's

24   corporate witness testimony, and the Opposition all conflict with each other regarding the scope of

25   Alleged Trade Secret 6.

26           **9.    The Documentary Evidence Cited by Plaintiff Fails to Adequately
                     Identify Alleged Trade Secret 7**
27

28       Regarding Alleged Trade Secret 7, Plaintiff cites to ECF No. 237, Exhibit Exhibit RR (Trade

1   Secret No. 7 Technical Summary, IMKP-WF-098732) and states that it ███████

2   ████████████████████████████████████████████████████

3   ███████████████████   Opp. at 17. Again, it is unclear where in this document Alleged Trade Secret 7

4   is disclosed.

5   **IV.    WRIGHT FLOOD'S MOTION COMPLIES WITH L.R. 56-1**

6          Plaintiff's argues that Wright Flood's Motion fails meet the requirements of Local Rule 56-1.

7   Opp. at 1. To the contrary, Wright Flood provided a concise statement of the facts and background

8   relevant to the Motion – whether the Final ID adequately discloses, as a matter of law, the Alleged

9   Trade Secrets sufficient to form the basis of Plaintiff's claims for misappropriation. Mot. at 2:18-

10  3:25. In fact, Plaintiff recites some of the same facts in the body of the Opposition. *Compare* Opp. at

11  23:23-26 *with* Mot. at 3:7-12 (both discussing the Court's Order on Wright Flood's motion to

12  compel (ECF No. 157)). Plaintiff's arguments to the contrary are simply false.

13  **V.     CONCLUSION**

14         For the reasons set forth above and in Wright Flood's Motion, Wright Flood requests the Court

15  enter summary judgment in favor of Wright Flood as to all seven Alleged Trade Secrets and all causes

16  of action related to these trade secrets.   Specifically, the Court should enter summary judgment in

17  favor of Wright Flood as to Counts 1-3 of the Amended Verified Complaint.  And to the extent Counts

18  4-6, 8, and 10-11 are based on misappropriation of the Alleged Trade Secrets that are inadequately

19  disclosed, the Court should enter summary judgment in favor of Wright Flood as to these claims as

20  they relate to the alleged, inadequately disclosed trade secrets.

21  Dated: June 22, 2022                    DUANE MORRIS LLP

22                                          By:____/s/  *Terry W. Ahearn*_____
                                                Dominica C. Anderson (SBN 2988)
23                                              Terry Ahearn (admitted *pro hac vice*)
                                                D. Stuart Bartow (admitted *pro hac vice*)
24                                              Daniel B. Heidtke (SBN 12975)
                                                Jordana A. Garellek (admitted *pro hac vice*)
25                                              Nelson Stewart (admitted *pro hac vice*)
                                                Brianna M. Vinci (admitted *pro hac vice*)
26
                                                Attorney for Defendant *Wright National Flood*
27                                              *Insurance Services, LLC*

28

Defendant's Reply In Support of Its Motion For Summary Judgment

**PROOF OF SERVICE**

  I hereby certify that I am a citizen of the United States and am employed in Clark County, where this mailing occurs. I am over the age of eighteen years and not a party to the within entitled action; my business address is 2475 Hanover Street, Palo Alto, CA 93404.

  On June 22, 2022, I served the document described as **DEFENDANT WRIGHT NATIONAL FLOOD INSURANCE SERVICES, LLC'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** on the interested party(ies) in this action:

H. Stan Johnson, Esq.
Steven B. Cohen, Esq.
COHEN JOHNSON LLC
375 E. Warm Springs Road, Suite 104
Las Vegas, NV 89119
Tel: 702-823-3500
Fax: 702-823-3400
Email: sjohnson@cohenjohnson.com
Email: scohen@cohenjohnson.com

Donald L. Prunty
Glenn F. Meier
Bethany L. Rabe
GREENBERG TRAURIG, LLP
10845 Griffith Peak Drive, Suite 600
Las Vegas, NV 89135
Tel: 702.792.3773
Fax: 702.792.9002
Email: pruntyd@gtlaw.com
Email: meierg@gtlaw.com
Email: rabeb@gtlaw.com

Colby B. Springer, Esq.
Miya Yusa, Esq.
POLSINELLI LLP
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111
Tel: 415.248.2100
Fax: 415.247.2101
Email: cspringer@polsinelli.com
Email: myusa@polsinelli.com

F. Christopher Austin
WEIDE & MILLER, LTD.
10655 Park Run Drive, Ste. 100
Las Vegas, NV 89144
Tel: 702.382.4804
Fax: 702.382.4805
Email: caustin@weidemiller.com

☐ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Las Vegas, Nevada, in the ordinary course of business.

☐ **BY FEDERAL EXPRESS:** I served said document(s) to be delivered on the same day to a courier or driver authorized by Federal Express to receive documents, in an envelope or package designated by Federal Express.

☒ **BY ELECTRONIC SERVICE:** I served a true copy, with all exhibits, electronically on designated recipients via electronic transmission of said document(s) as provided under Federal Rules of Civil Procedure.

/s/ *Andrew Hanna*
_____

An employee of DUANE MORRIS LLP

Defendant's Reply In Support of Its Motion For Summary Judgment