H. STAN JOHNSON (SBN 0265)
STEVEN B. COHEN (SBN 2327)
COHEN JOHNSON LLC
375 E. Warm Springs Road, Suite 104
Las Vegas, NV 89119
T: 702.823.3500
Email: sjohnson@cohenjohnson.com
Email: scohen@cohenjohnson.com

COLBY B. SPRINGER (admitted *pro hac vice*)
MIYA YUSA (admitted *pro hac vice*)
POLSINELLI LLP
Three Embarcadero Center, Suite 2400
San Francisco, CA 94111
T: 415.248.2100
Email: cspringer@polsinelli.com
Email: myusa@polsinelli.com

MICHAEL P. DULIN (admitted *pro hac vice*)
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202
T: 303.572.9300
Email: mdulin@polsinelli.com

MELENIE VAN *(*admitted *pro hac vice)*
POLSINELLI LLP
2049 Century Park East, Suite 2900
Los Angeles, CA 90067
T: 310.229.1355
Email: mvan@polsinelli.com

EMILY C. McNALLY (admitted *pro hac vice*)
POLSINELLI PC
1000 Second Avenue, Suite 3500
Seattle, WA 98104
T: 206.393.5413
Email: emcnally@polsinelli.com

Attorneys for Plaintiff
IMAGEKEEPER, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| IMAGEKEEPER, LLC, a Nevada Limited Liability Company,<br><br>          Plaintiff,<br><br>     v.<br><br>WRIGHT NATIONAL FLOOD INSURANCE SERVICES, LLC, a Delaware limited liability Company, and EVOKE TECHNOLOGIES PRIVATE LIMITED, an Ohio foreign corporation,<br><br>          Defendants. | Case No. 2:20-cv-01470-CDS-VCF<br><br>**PLAINTIFF IMAGEKEEPER, LLC'S OPPOSITION TO DEFENDANT EVOKE TECHNOLOGIES PRIVATE LIMITED'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 259]**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**REDACTED VERSION** |

1

**TABLE OF CONTENTS**

2

Page No.

3   I.   INTRODUCTION ................................................................................................1

4   II.  IMAGEKEEPER'S RESPONSE TO EVOKE'S UNDISPUTED FACTS ............2

5        A.   Background .................................................................................................2

6        B.   Wright Flood Hires Evoke to Build Replacement Software.......................3

7        C.   Evoke's Independent Development of the Software Based on Wright
             Flood's Requirements ................................................................................3

8
         D.   The Wright Flood App Project was in Accordance with Standard Practices
9             ...................................................................................................................5

10       E.   The Wright Flood System and Corresponding Application is Briefly
             Available to Adjusters................................................................................6

11
         F.   This Case is Ripe for Summary Judgment..................................................7
12
     III. LEGAL STANDARD.........................................................................................7
13
     IV.  ARGUMENT ......................................................................................................8
14
         A.   Summary Judgment is Not Warranted on ImageKeeper's Trade Secret
15            Misappropriation Claims (Counts 1 and 2)................................................8

16            1.   ImageKeeper Has Adequately Defined its Trade Secrets...............9

17            2.   ImageKeeper Has Never Made its Trade Secrets Public Nor Has it
                  Abandoned its Trade Secrets ........................................................9
18
              3.   Documents and Deposition Testimony Show that Evoke
19                 Misappropriated ImageKeeper's Trade Secrets...........................10

20                 a.   Evoke Accessed ImageKeeper's Trade Secrets via
                       Improper Means ................................................................10
21
                       i.   Evoke Accessed All of ImageKeeper's Trade
22                          Secrets .....................................................................11

23                     ii.   Evoke Misrepresented Itself When It Accessed
                            ImageKeeper's Trade Secrets ...............................12
24
                       iii.  Evoke Breached Duties Imposed by ImageKeeper's
25                           End User License Agreement ...............................12

26       B.   Evoke's Argument that the Nevada Uniform Trade Secret Act Preempts
             ImageKeeper's Other State Law Causes of Action (Counts 3, 7, 9) is
27            Premature and Unfounded .......................................................................14

28

i

C.   Summary Judgment is Not Warranted on ImageKeeper's Nevada State Law Trade Secret Infringement Claim (Count 3) .....................................17

D.   Summary Judgment is Not Warranted on ImageKeeper's Stored Communications Act Claim (Count 5) ......................................................17

    1.   Access to "Communications" is At-Issue Here and Has Previously Been Addressed ...........................................................................17

    2.   Evoke Had Reason to Know that "Authorization" from Wright Flood was Improper .....................................................................19

    3.   ImageKeeper's Cloud Storage Meets the Statutory Definition .....19

    4.   The Stored Communications Act Applies to the Access and Also the Misuse of Information Acquired...............................................20

E.   Summary Judgment is Not Warranted on ImageKeeper's Computer Fraud and Abuse Act Claim (Count 6).............................................................21

    1.   There is Sufficient Evidence to Demonstrate "Loss" and "Damage" as Defined Under the Computer Fraud and Abuse Act ................21

        a.   Loss in a 1-Year Period Aggregating At Least $5,000......21

        b.   Damage Affecting 10 or More Protected Computers During Any 1-Year Period ...........................................................22

    2.   Documents and Deposition Testimony are Sufficient to Show All Other Elements of ImageKeeper's Computer Fraud and Abuse Act Claim...........................................................................................23

        a.   Evoke Acted Without Authorization Under the Statute ....23

        b.   Evoke Acted "Knowingly and With Intent to Defraud" ImageKeeper ...................................................................24

        c.   ImageKeeper's Damages Under the Computer Fraud and Abuse Act are Not Limited to Economic Damages...........25

F.   Summary Judgment is Not Warranted on ImageKeeper's Claim Regarding State Law Unlawful Acts Regarding Computers (Count 7) .....................25

G.   Summary Judgment is Not Warranted on the ImageKeeper's Claim Regarding Unfair Trade Practices (Count 9) ..............................................27

H.   Summary Judgment is Not Warranted on the ImageKeeper's Breach of Contract Claim (Count 12)........................................................................27

I.   Summary Judgment is Not Warranted as to the Availability of Punitive Damages and Attorneys' Fees as Evoke Did Act with the Requisite State of Mind...................................................................................................29

V.   CONCLUSION.................................................................................................30

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)....................................................................................................8, 15

*Aydin Corp. v. Loral Corp.*,
   718 F.2d 897 (9th Cir. 1983) ...................................................................................8

*Burrage-Simon v. State Farm Mut. Auto. Ins. Co.*,
   No. 2:14-CV-00429-GMN, 2015 WL 5224885 (D. Nev. Sept. 8, 2015) ...............................29

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)....................................................................................................7

*Cousineau v. Microsoft Corp.*,
   6 F. Supp. 3d 1167 (W.D. Wash. 2014)....................................................................20

*Creative Computing v. Getloaded.com LLC*,
   386 F.3d 930 (9th Cir. 2004) ...................................................................................25

*Facebook, Inc. v. Power Ventures, Inc.*,
   844 F.3d 1058 (9th Cir. 2016) .................................................................................22

*Forbush v. City of Sparks*,
   No. 321CV00163MMDWGC, 2021 WL 6551282 (D. Nev. Dec. 21, 2021).........................28

*Frantz v. Johnson*
   999 P.2d 351, 358 (Nev. 2000) ...............................................................................15

*Johnson v. Wells Fargo Home Mortg., Inc.*,
   558 F. Supp. 2d 1114 (D. Nev. 2008)....................................................................29, 30

*K-2 Ski Co. v. Head Ski Co.*,
   506 F.2d 471 (9th Cir. 1974) ...................................................................................9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)....................................................................................................7

*MB Am., Inc. v. Alaska Pac. Leasing Co.*
   (2016)........................................................................................................................28

*MB America, Inc. v. Alaska Pacific Leasing Co.*,
   No. CV14-01229, 2014 WL 11191241 (Nev.Dist.Ct. Oct. 22, 2014)....................................28

*Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*,
   818 F. Supp. 2d 1271 (D. Nev. 2011).................................................................27, 28, 29

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

*Menalco v. Buchan,*
    No. 207-CV-01178-PMP-PAL, 2010 WL 428911 (D. Nev. Feb. 1, 2010)............................15

*Mirage Casino-Hotel v. Beale St. Blues Co. Las Vegas, LLC,*
    132 Nev. 1008 (2016) .................................................................................................................28

*Montgomery v. eTreppid Techs., LLC,*
    No. 306CV00056PMPVPC, 2008 WL 11401771 (D. Nev. June 26, 2008) ..........................15

*Multiven, Inc. v. Cisco Sys., Inc*
    725 F. Supp. 2d 887, 894 (N.D. Cal. 2010) .............................................................................23

*New England Life Ins. Co. v. Lee,*
    No. 2:14-CV-1797 JCM NJK, 2015 WL 1413391 (D. Nev. Mar. 27, 2015) ........................15

*Newmark Grp., Inc. v. Avison Young (Canada) Inc.,*
    No. 215CV00531RFBGWF, 2019 WL 575476 (D. Nev. Jan. 7, 2019), *report
    and recommendation adopted sub nom. BGC Partners, Inc. v. Avison Young
    (Canada), Inc.,* No. 215CV00531RFBGWF, 2019 WL 570724 (D. Nev. Feb.
    11, 2019) ....................................................................................................................................14

*NLRK, LLC v. Indoor Ag-Con, LLC,*
    No. 321CV00073LRHWGC, 2022 WL 293252 (D. Nev. Jan. 31, 2022).............................24

*P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC.,*
    428 F.3d 504 (3d Cir. 2005).....................................................................................................25

*Switch Ltd. v. Fairfax,*
    No. 2:17-CV-02651-GMN-VCF, 2018 WL 4181626 (D. Nev. Aug. 30, 2018) ......................8

*Theofel v. Farey-Jones,*
    359 F.3d 1066 (9th Cir. 2004) .................................................................................................19

*United Factory Furnishings Corp. v. Alterwitz,*
    No. 2:12-CV-00059, 2012 WL 2138115 (D. Nev. June 13, 2012) ..........................................22

*United States v. Nosal,*
    844 F.3d 1024 (9th Cir. 2016) ...................................................................................................9

*United States v. Saini,*
    23 F.4th 1155 (9th Cir. 2022) ..................................................................................................24

*V.C.X., Ltd. v. Burge,*
    No. 206-CV-00641-PMP-RJJ, 2006 WL 3511347 (D. Nev. Dec. 5, 2006) ..........................16

**Statutes**

18 U.S.C. § 1030 *et seq.*...............................................................................21, 22, 24, 25

18 U.S.C. § 1836 *et seq.*...............................................................................................29

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

18 U.S.C. § 1839 *et seq.*.................................................................8, 10, 12

18 U.S.C. § 1893 *et seq.* ........................................................................8, 9

18 U.S.C. § 2510 *et seq.* ...........................................................................19

18 U.S.C. §§ 2701 *et seq.* ....................................................................17, 19

18 U.S.C. § 2707 *et seq.*............................................................................29

NRS § 205.477.............................................................................................25

NRS § 205.511.............................................................................................29

NRS § 205.4765...........................................................................................15

NRS § 2058.477...........................................................................................15

NRS § 205.511.............................................................................................15

NRS § 600A.030 *et seq.*.............................................................9, 10, 11, 12

NRS § 600A.050...........................................................................................29

NRS § 600A.060(3).......................................................................................29

NRS § 603.040.......................................................................................16, 27

NRS § 603.050.................................................................................15, 17, 29

NRS §§ 603.080.....................................................................................15, 16

**Other Authorities**

Fed. R. Civ. P. 56(a) ......................................................................................7

Federal Rule of Civil Procedure 12(b)(1) ...................................................28

Rule 33(d) ....................................................................................................11

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

Plaintiff ImageKeeper, LLC ("ImageKeeper" or "IMKP") opposes Defendant Evoke Technologies Private Limited's ("Evoke") Motion for Summary Judgment (ECF No. 259, "Motion"). Defendant Wright National Flood Insurance Services, LLC ("Wright Flood") also filed a Motion for Summary Judgment (ECF No. 263) ("Wright Flood's Motion") to which ImageKeeper responds separately. Evoke and Wright Flood each filed a notice of Joinder to the other's Motion for Summary Judgment (ECF Nos. 265, 266). The present response also serves to address Wright Flood's joinder.

## I.    INTRODUCTION

The Court should deny Evoke's Motion for Summary Judgment. Evoke re-hashes those arguments surrounding the previously affirmed adequacy of ImageKeeper's disclosure of its trade secrets but nevertheless made in a still pending motion for summary judgment. *See* ECF Nos. 218, 227. ImageKeeper previously addressed those arguments in its opposition to that motion. *See* ECF No. 237. As for Evoke's remaining arguments regarding summary judgment on ImageKeeper's trade secret misappropriation claims (Counts 1 and 2), Evoke essentially pleads two contradicting, alternative defenses. Evoke states that it never accessed ImageKeeper's trade secrets, but if it did, it did so unknowingly and under Wright Flood's instructions, which it claims was standard practice.

Evoke's motion makes several admissions that support ImageKeeper's various claims against Evoke. Evoke admits to receiving log-in credentials to the ImageKeeper System and confidential ImageKeeper System documents from Wright Flood; accessing the ImageKeeper System without ImageKeeper's authorization; and developing a system that mirrored the the ImageKeeper System. Evoke also purports to have only acted under Wright Flood's instructions and never asked Wright Flood whether any proprietary issues were involved.  But proprietary and confidentiality issues clearly came up during discussions between Evoke and Wright Flood, as documented in communications produced by Evoke and Wright Flood. It was known to Evoke that accessing the ImageKeeper System was suspect; however, Evoke failed to investigate the issue. Evoke's arguments for summary judgment on the ImageKeeper's claims against Evoke (Counts 3, 5, 6, 7, 9, 12) are similarly lacking and unpersuasive.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

## II.     IMAGEKEEPER'S RESPONSE TO EVOKE'S UNDISPUTED FACTS

### A.     Background

ImageKeeper disputes Evoke's attempts to oversimplify the ImageKeeper System and ImageKeeper's trade secrets. *See* Motion at 2:22-24 ("there is minimal distinction between the different components of the ImageKeeper System"). ImageKeeper's trade secrets at-issue in this litigation relate to various components of the ImageKeeper Flood Claim Processing System (the "ImageKeeper System").[1] ImageKeeper has identified its trade secrets as:



---

[1] *See* ECF No. 68 (First Amended Verified Complaint ("FAC")) at ¶ 11-12 ("[t]he ImageKeeper System comprises a secure portal ('Secure Portal') to the ImageKeeper Cloud and a mobile adjuster application ('Adjuster Application)'"); **Exhibit 5** (Plaintiff ImageKeeper, LLC's Fourth Supplemental Responses…First Set of Interrogatories (1-8), ("Responses to Interrogatories")) at 5:19-29:10.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

**B.      Wright Flood Hires Evoke to Build Replacement Software**

Undisputed.

**C.      Evoke's Independent Development of the Software Based on Wright Flood's Requirements**

ImageKeeper disputes Evoke's claims it developed the Wright Flood system independently. Evoke cannot claim it developed the Wright Flood system (Motion at 3:3-5:16) when it also admits the following:

- Wright Flood sent Evoke *ImageKeeper's* "Quick Start Guide". Motion at 3:8-13; *see also* **Exhibit 6** at p. 3.

- Evoke *used* ImageKeeper's Quick Start Guide to understand Wright Flood's needs and business requirements. Motion at 3:15-16.

- Evoke *obtained further information* regarding the functions performed by the ImageKeeper System through demonstrations…. *Id*. at 3:19-20.

- Wright Flood provided Evoke with login credentials to the ImageKeeper System through which Evoke *accessed the ImageKeeper System* and Evoke was *further able to understand* the functionality of the ImageKeeper System. *Id*. at 3:21-4:3; *see also* **Exhibit 7** at p. 15, **Exhibit 9** at 238:2-245:9, **Exhibit 10** at 224:3-11.

- Evoke *received ImageKeeper API documentation* that related to the ImageKeeper System, some of which was provided by Wright Flood and others of which Evoke had *downloaded from Evoke's access to the ImageKeeper System*. Motion at 5:3-9.

Evoke claims without support that the Quick Start Guide is not part of ImageKeeper's Trade Secrets (*see* Motion at 3:13-14).  But ImageKeeper's Trade Secrets can only be ascertained through access to the Secure Portal, which includes access to the workflows set forth in ImageKeeper's Quick Start Guide. Testimony from Evoke's witnesses show that Evoke understood the features and depictions of the ImageKeeper System to be described in the Quick Start Guide. *See* **Exhibit 11** at 189:4-192:21; Ex. 9 at 49:8-21, 59:2-7, 59:23-69:23, 60:6-11. Furthermore, it is very clear that the Quick Start Guide is owned by ImageKeeper. The first page of ImageKeeper's Quick Start Guide (Ex. A-1 to Motion (EVOKE015172-189)) contains the ImageKeeper name and logo and the disclaimer "*Copyright © ImageKeeper, LLC. Patent Pending; All rights reserved.*" The bottom of every page thereafter contains the disclaimer "*Copyright © ImageKeeper, LLC.*"

Given the foregoing, it is undisputed that Evoke (1) accessed, used, and tested the ImageKeeper System and (2) accessed and used ImageKeeper documentation (*i.e.*, Quick Start Guide and API documents) that related to the ImageKeeper System. *See also* Ex. 11 at 90:9-91:1;

3

Ex. 9 at 115:5-13, 116:5-9, 229:17-231:17. Internal records of ImageKeeper's Secure Portal traffic and mobile application showed that Evoke (using Wright Flood's credentials) (1) certified photos of activities undertaken by Evoke; (2) tested the generation of preliminary reports, Advanced Payment Requests, and photo capture functionality; (3) documented the development of the Wright Flood system; and (4) uploaded copies of that documentation into the ImageKeeper Cloud. *See* FAC at ¶ 51; ECF No. 6 at ¶ 42-56. Evoke understood the functions and features of the ImageKeeper System to be the requirements that Wright Flood wanted for its knock off system.[2] Evoke clearly used ImageKeeper's Trade Secrets to build that system.

ImageKeeper further disputes Evoke's claim that reliance on *customer documents* as the source of information for the business requirements for software solutions is a standard practice throughout the software development industry. Motion at 3:16-18. But the documents on which Evoke admitted that it relied on were ImageKeeper's documents. While Wright Flood might have ***provided*** the documents, they were the proprietary information of ImageKeeper. *Id*. at 3:15-16, 3:19-20, 5:3-9.

ImageKeeper further disputes Evoke's claim that the ImageKeeper API documentation it received did not show the internal processes the APIs at-issue used to create its output. *Id*. at 5:1-2, 5:9-11. ImageKeeper's APIs provide the input parameters and other information necessary to carry out the function of creating and managing an adjuster account as disclosed in ImageKeeper's Trade Secret No. 1. *See* Ex. 5 at 19:17-21. The API documentation also defined the endpoints available for adjusting firms, including documentation for retrieving a listing of all adjusters (**Exhibit 8** at p. 29) and API documentation for creating a new adjuster account (*id*. at p. 41). *See also* **Exhibit 12** at 112:11-113:12; Ex. 9 at 88:19-94:23. ImageKeeper's API documentation sets forth confidential information such as the response codes, the names and descriptions of the parameters necessary to make the API calls, sample request formats, response information, and

---

[2] *See* Motion at 3:8-18; Ex. 6 at p. 1 ("App UI design remains the same as current Image Keeper system…flow and functionality remains same so that Users/Adjusters will have no different in usability."); Ex. 7 at p. 42 ("Evoke tester and Project Manager started accessing IK system to understand the functionality"); Ex. 7 at p. 21; Ex. 9 at 45:2-50:4.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

1    sample response formats.[3] The API documentation contains the information that Evoke needed

2    and used to create APIs to function the same way as ImageKeeper's APIs.  Ex. 11 at 114:13-23,

3    142:7-143:21, 238:2-23; Ex. 9 at 82:12-83:16, 112:3-116:9, 247:11-20.

4         ImageKeeper's API documentation was critical for Evoke to modify external systems to

5    communicate with the Wright Flood system. Ex. 11 at 238:14-23; Ex. 9 at 156:1-157:4; Ex. 7 at

6    p. 1 (p. 2: "IK system endpoints (request) is not standard they asked these partners to specially

7    build these request bodies"). The ImageKeeper Trade Secret No. 3 API documents that Evoke

8    received and/or downloaded include at least the following APIs[4]:



23   *See* Ex. 9 at 86:23-89:5, 96:10-23; Ex. 7 at p. 46).

24        **D.    The Wright Flood App Project was in Accordance with Standard Practices**

25        ImageKeeper disputes what Evoke purports to be standard practice for developing software

26   for its US-based customers. Motion at 6:3-9. Evoke implies that because its illicit conduct was

---

[3] Ex. 8 at pp. 29, 41, 43, 44; *see also* Ex. 12 at 112:5-113:6; Ex. 9 at 106:14-111:6.

[4] For convenience, the corresponding document that ImageKeeper has identified as its Trade Secret No. 3 API documents in its Responses to Interrogatories at 22:12-25 have been included.

1   standard that its conduct was appropriate.  While Evoke might routinely misappropriate third-party

2   intellectual property, those "standard" practices do not somehow become justified or without legal

3   implications and liabilities.

4       ImageKeeper disputes Evoke's claim that it is typical for Evoke's customers to instruct

5   Evoke to avoid contact with companies affiliated with the *customer's existing software products*.

6   Motion at 6:10-12. The ImageKeeper System was the existing software *used by* Wright Flood. It

7   was ImageKeeper's product, ***not*** Wright Flood's. Evoke understood this. *See* Ex. 6 at p. 1 ("█

8   ████████████████████████████████████████████" (emphasis added)). In the Master

9   Service Agreement between Wright Flood and Evoke (ECF No. 260, Ex. D to Motion), section 7

10  (EVOKE000469) states that "████████████████████████████████████████

11  █████████████████████████████████████████████████████████

12  ████████████████████████████████" The agreement between

13  Evoke and Wright Flood thus expressly allowed Evoke to engage with ImageKeeper as necessary

14  to obtain information needed for Evoke's obligations under the agreement, but Evoke never

15  reached out to ImageKeeper.

16      Evoke needed to access, use, and test the ImageKeeper System and it needed

17  ImageKeeper's documents to further understand the ImageKeeper System. *See supra* section II(C).

18  But instead of engaging with ImageKeeper, Evoke instead went so far as to mask its access to the

19  ImageKeeper System so that ImageKeeper would not detect access by someone located outside

20  the United States. *See* Ex. 7 at p. 16 ("███████████████████████████████

21  █████████████████████████████████████████████████████████

22  ████████████████"); Ex. 11 at 71:10-15; Ex. 9 at 231:18-232:15, 233:7-237:4.

23      **E.**    **The Wright Flood System and Corresponding Application is Briefly Available**

24                **to Adjusters**

25      Undisputed. Wright Flood stopped using the Wright Flood system and corresponding

26  application in August of 2020, at the same time ImageKeeper filed its action against Wright Flood

27  and a motion for a preliminary injunction to stop Wright Flood from offering and using a

28  competing software application copied from ImageKeeper. *See* ECF Nos. 1 (Original Complaint),

6

2 (Emergency Motion for TRO/PI). The Court granted ImageKeeper's motion, specifically prohibiting Defendants from "engaging in any activities . . . that use[], rel[y] upon, [are] based on or disclose[] any of ImageKeeper's confidential, proprietary or trade secret information." ECF. No. 58 at ¶ 7; *see also* ECF No. 15. Defendants never objected to nor sought to clarify the Court's order. Wright Flood acknowledged that after the issuance of the preliminary injunction, it ordered Evoke to cease all work on the Wright Flood system. ECF No. 88-2, at ¶ 2.

### F.     This Case is Ripe for Summary Judgment

Disputed. Evoke's statements in this section are not facts, but legal conclusions it draws in its own favor. The statements are not appropriate to be under a list of "Undisputed Facts."

ImageKeeper disputes this conclusion as Evoke oversimplifies its reason for accessing the ImageKeeper System: "[t]o better understand the needs of its client Wright Flood." Motion at 7:7-9. Evoke accessed the ImageKeeper System because it needed to replicate the ImageKeeper System. Evoke needed to create the same design, functions, and features so that there would be no difference in usability between the new application and the ImageKeeper System. *See* Ex. 6 at p. 1 ("App UI design remains the same as current Image Keeper system…flow and functionality remains same so that Users/Adjusters will have no different in usability."); Ex. 7 at p. 21; Ex. 9 at 45:2-50:4.

ImageKeeper also disputes Evoke's statement that "ImageKeeper cannot come forward with sufficient evidence to prove its claims against Evoke." Motion at 7:9-10. The burden of proof on summary judgment lies with Evoke.  And as previewed above and will be discussed further below, ImageKeeper has sufficient evidence to not only rebut the present motion prove its claims against Evoke at trial. The Court should deny Evoke's motion.

## III.   LEGAL STANDARD

Summary judgment is appropriate only when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The evidence and all reasonably drawn inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party bears the initial burden of showing the court the absence of

1  any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

2          An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-

3  finder could find for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248-

4  49 (1986). A dispute is "material" if it could affect the outcome. *Id*. Summary judgment is not

5  appropriate where reasonable minds could differ on the material facts at-issue. *See id*. at 250-51.

6  "The amount of evidence necessary to raise a genuine issue of material fact is enough to require a

7  jury or judge to resolve the parties' differing versions of the truth at trial." *Aydin Corp. v. Loral

8  Corp*., 718 F.2d 897, 902 (9th Cir. 1983) (internal citations omitted).

9  **IV.    ARGUMENT**

10         **A.    Summary Judgment is Not Warranted on ImageKeeper's Trade Secret Misappropriation Claims (Counts 1 and 2)**

11         ImageKeeper's Count 1 is trade secret misappropriation under the Defend Trade Secrets

12  Act ("DTSA") and Count 2 is trade secret misappropriation under the Nevada Uniform Trade

13  Secrets Act ("NUTSA"). *See* FAC at ¶ 61-74, 75-88. A claim for misappropriation of trade secrets

14  under DTSA requires: (1) that the plaintiff possessed a trade secret; (2) that the defendant

15  misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to

16  the plaintiff. 18 U.S.C. § 1839(5). A claim for misappropriation under NUTSA similarly requires:

17  (1) a valuable trade secret; (2) misappropriation of the trade secret through use, disclosure, or

18  nondisclosure of use of the trade secret; and (3) that the misappropriation was made in breach of

19  an express or implied contract or by a party with a duty not to disclose. *See Switch Ltd. v. Fairfax*,

20  No. 2:17-CV-02651-GMN-VCF, 2018 WL 4181626, at *3 (D. Nev. Aug. 30, 2018).

21         A "trade secret" under DTSA is defined as:

22         "all forms and types of financial, business, scientific, technical, economic, or
23         engineering information, including patterns, plans, compilations, program
           devices, formulas, designs, prototypes, methods, techniques, processes,
24         procedures, programs, or codes, whether tangible or intangible, and whether or
           how stored, compiled, or memorialized physically, electronically, graphically,
25         photographically, or in writing."

26  18 U.S.C. § 1839(3). The information must "derive[] independent economic value, actual or

27  potential, from not being generally known to, and not being readily ascertainable through proper

28  means by, another person who can obtain economic value from the disclosure of use of the

information." 18 U.S.C. § 1893(3)(B). The owner of the trade secret must have "taken reasonable measures to keep such information secret." 18 U.S.C. § 1893(3)(A). A "trade secret" under NUTSA is:

> "information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code."

NRS § 600A.030(5)(a). Trade secrets under NUTSA must similarly derive "independent economic value…from not being generally known" and be "the subject of [reasonable] efforts…to maintain its secrecy." NRS § 600A.030(5)(a)(1)-(2). "A trade secret can exist in a combination of characteristics and components" if "the unique combination affords a competitive advantage…" *United States v. Nosal*, 844 F.3d 1024, 1042 (9th Cir. 2016) (internal citations omitted). Whether information constitutes a trade secret in a particular case is a question of fact. *See K-2 Ski Co. v. Head Ski Co.*, 506 F.2d 471, 474 (9th Cir. 1974).

### 1. ImageKeeper Has Adequately Defined its Trade Secrets

In its opposition to ***Wright Flood's*** previously pending motion for summary judgment (ECF No. 218), ImageKeeper addressed arguments as to whether ImageKeeper has adequately defined its trade secrets. *See* ECF No. 237. Evoke does not offer any new arguments regarding this issue and ImageKeeper defers to its prior opposition.  The information that ImageKeeper has defined as its Trade Secrets meet the statutory definitions of "trade secret." ImageKeeper's Trade Secrets were maintained as confidential. ImageKeeper has adequately identified its Trade Secrets in this litigation. The Court should therefore find that summary judgment is not warranted in this respect.

### 2. ImageKeeper Has Never Made its Trade Secrets Public Nor Has it Abandoned its Trade Secrets

Wright Flood filed a motion for summary judgment on the basis that ImageKeeper's Trade Secrets have been extinguished and abandoned. *See* ECF No. 263. Evoke joined Wright Flood's motion in that regard and incorporates Wright Flood's arguments. *See* ECF. No. 265. As Evoke has not offered anything new, ImageKeeper incorporates by reference its Opposition to Wright Flood's motion. *See* IMKP's Opp. to Wright Flood's MSJ at sections III(C), (D) and IV(B), (C). Stated simply: ImageKeeper's patent applications do not disclose ImageKeeper's Trade Secrets.

*See id*. Nor has ImageKeeper "abandoned" the same under some yet to be defined legal theory.

*Id*.  Therefore, the Court should find that summary judgment is not warranted in this respect.

> **3.**     **Documents and Deposition Testimony Show that Evoke Misappropriated ImageKeeper's Trade Secrets**

DTSA provides the following three definitions of "misappropriation":

a) the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

b) the disclosure or use of a trade secret without the owner's express or implied consent.

18 U.S.C. §§ 1839(5)(A), (5)(B). "Misappropriation" under NUTSA means:

a) acquisition of the trade secret of another by a person by improper means;

b) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

c) disclosure or use of a trade secret of another without express or implied consent by a person who:

  i.   used improper means to acquire knowledge of the trade secret;

  ii.  at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:

    1. derived from or through a person who had used improper means to acquire it;

    2. acquired, under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

    3. derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

  iii. before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

NRS § 600A.030(2). Discovery yielded both documents and deposition testimony showing that Evoke knowingly misappropriated ImageKeeper's Trade Secrets, acquired ImageKeeper's Trade Secrets via improper means, and used ImageKeeper's Trade Secrets without ImageKeeper's express or implied consent.

> **a.**     **Evoke Accessed ImageKeeper's Trade Secrets via Improper Means**

Under DTSA, "improper means" includes "misrepresentation, breach or inducement of a breach of a duty to maintain secrecy." 18 U.S.C.A. § 1839(6)(A). Similarly, under NUTSA,

10

1  "improper means" includes misrepresentation; willful breach or willful inducement of a breach of

2  a duty to maintain secrecy. NRS § 600A.030.

3             **i.**      **Evoke Accessed All of ImageKeeper's Trade Secrets**

4        Evoke continues to simultaneously dispute what *are* ImageKeeper's Trade Secrets (Motion

5  at 8:18-27) while contending that it did not use the same (*id*. at 10:16-12:20). ImageKeeper clearly

6  described its Trade Secrets. *See* FAC at ¶ 11-12 ("[t]he ImageKeeper System comprises a secure

7  portal ('Secure Portal') to the ImageKeeper Cloud and a mobile adjuster application ('Adjuster

8  Application')"); Ex. 5 at 5:19-29:10. Evoke admits that it "reviewed materials...to learn what

9  *functions* the ImageKeeper System performed." Motion at 11:8-9 (emphasis in original); Ex. 7 at

10  p. 21; Ex. 9 at 45:2-50:4. Evoke goes to great lengths to avoid addressing those materials include

11  the ImageKeeper System itself, ImageKeeper's Quick Start Guide[5], and ImageKeeper's API

12  documentation. Motion at 3:8, 5:3-9. These materials were all accessed by Evoke and they all

13  encompass ImageKeeper's Trade Secrets. *See supra* section II(A), (C).

14        Evoke also attempts to make a distinction that it had limited access (but access all the same)

15  to the APIs claimed in Trade Secret No. 3. Motion at 11:22-12:20. Trade Secret No. 3 is the

16  "[p]roprietary, non-public APIs accessible only through the ImageKeeper Portal (e.g., insurance

17  claim updates and associated claim update API)." *See* Ex. 5 at 6:1-2, 21:9-10; ECF No. 237 at

18  10:27-13:18. ImageKeeper identified under Rule 33(d) the exact documents that constitute the

19  ImageKeeper API documentation. *See* Ex. 5 at 22:12-25; *see also* ECF No. 237 at 11:9-12:25.

20  Evoke received and/or downloaded at least sixteen ImageKeeper API documents. *See supra*

21  section II(C).

22        ImageKeeper's APIs provide the proprietary input parameters and other information

23  necessary to carry out the function of creating and managing an adjuster account as disclosed in

24  ImageKeeper's Trade Secret No. 1. *See supra* section II(C). Evoke needed and used at least sixteen

25  ImageKeeper API documents to create APIs in the cloned Wright Flood system to function the

26  same way as ImageKeeper's APIs. *Id*. ImageKeeper's API documentation was critical for Evoke

27

28  [5] The Quick Start Guide is clearly owned by ImageKeeper. *See supra* section II(C). This further
discounts Evoke's argument that it did not have reason to know that items provided from Wright
Flood would be problematic. Motion at 13:12-16.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

to modify external systems to communicate with the Wright Flood system because the APIs were not standard and specially built by ImageKeeper. *Id*. Contrary to Evoke's assertion, Evoke did not develop, on its own, the logic and code to get the APIs in the Wright Flood system to perform correctly.

### ii. Evoke Misrepresented Itself When It Accessed ImageKeeper's Trade Secrets

Evoke accessed ImageKeeper's Trade Secrets through improper means by misrepresenting its identity to ImageKeeper.  *See* 18 U.S.C.A. § 1839(6)(A); NRS  § 600A.030. Evoke admits to accessing the ImageKeeper System using Wright Flood's login credentials. *See* Motion at 3:21-4:3. Wright Flood's credentials were under Wright Flood's name (ECF No. 30 at 6:1-3), and Evoke knew this[6]. By using Wright Flood's credentials, Evoke posed as Wright Flood. *See* FAC at ¶¶ 44, 49, 53. Evoke further misrepresented its identity when it downloaded ImageKeeper's API documentation from inside the ImageKeeper System (Motion at 5:3-9). Evoke even went so far as to mask its IP address when it was testing the ImageKeeper System so that ImageKeeper would not detect access by someone located outside the United States. *See supra* section II(D). In light of all this, the Court should find that Evoke accessed ImageKeeper's Trade Secrets via misrepresentation and deny summary judgment.

### iii. Evoke Breached Duties Imposed by ImageKeeper's End User License Agreement

Evoke had express duties not to reproduce and create derivative works of the ImageKeeper System, as imposed by ImageKeeper's End User License Agreement (ECF No. 67-6, Ex. F (ImageKeeper End User License Agreement ("EULA"))). To access the ImageKeeper System, Evoke "██████████████████████████████████████████████████████████████████████████████████████████████" as admitted by Timothy Love. ECF No. 30 at 6:3-5; FAC at ¶ 170. The EULA includes the following relevant provisions:

██ ████████████████████████████████████████████████

---

[6] *See* Ex. 7 at p. 42; Ex. 7 at p. 15, Ex. 9 at 238:2-245:9, Ex. 10 at 224:3-11.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT



By logging into the ImageKeeper System, clicking through the EULA, and using the ImageKeeper System, Evoke agreed to the EULA and the terms contained therein. Evoke agreed not to reproduce the ImageKeeper System and to not create any derivative works. Evoke acknowledges that the ImageKeeper System is protected by intellectual property and proprietary rights; thus, Evoke would have reason to know that the ImageKeeper System is protected by trade secret and a litany of other intellectual property rights.

Notwithstanding the EULA, Evoke was aware of that there were proprietary issues surrounding the ImageKeeper System.[8] Evoke was aware that information from third-parties may be involved and Evoke would have to divulge information to those third-parties as evidenced in the Master Service Agreement between Wright Flood and Evoke. *See* Ex. D to Motion at section 7 (EVOKE000469) (" _____ "). Evoke needed to access, use, and test the ImageKeeper System and needed ImageKeeper's documents to further understand the ImageKeeper System. *See supra* sections II(C), IV(A)(3)(a)(ii). At no point did Evoke ever reach out to ImageKeeper for those items.  Common sense suggests why.

Evoke suggests that it created the Wright Flood system independently from ImageKeeper's Trade Secrets (Motion at 3:3-5:16, 11:10-12, 13:5-7), but its arguments are inconsistent with its admissions:

---

[7] "Software" in the EULA is defined collectively as "this software, firmware, services, and documentation, and any applicable updates provided by IMAGEKEEPER." EULA at p. 1.

[8] *See* Ex. 6 at p. 1; Ex. 7 at pp. 14, 16, 17, 40, 44; Ex. 9 at 180:9-181:12, 191:17-193:21.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

- Evoke understood the functions and features of the ImageKeeper System to be the requirements that Wright Flood wanted for its application. Motion at 3:8-18; Ex. 6 at p. 1; Ex. 7 at p. 42; Ex. 7 at p. 21; Ex. 9 at 45:2-50:4.

- Evoke *used* ImageKeeper's Quick Start Guide to understand Wright Flood's needs and business requirements. Motion at 3:15-16; *see also* Ex. 6 at p. 3.

- Evoke *obtained further information* regarding the functions performed by the ImageKeeper System through demonstrations…. Motion at 3:19-20.

- Wright Flood provided Evoke with login credentials to the ImageKeeper System through which Evoke *accessed the ImageKeeper System* and Evoke was *further able to understand* the functionality of the ImageKeeper System. *Id.* at 3:21-4:3; *see also* Ex. 7 at p. 15, Ex. 9 at 238:2-245:9, Ex. 10 at 224:3-11.

- Evoke *received ImageKeeper API documentation* that related to the ImageKeeper System, some of which was provided by Wright Flood and others of which Evoke had *downloaded from Evoke's access to the ImageKeeper System*. Motion at 5:3-9.

Wright Flood essentially wanted a replica, derivative of the ImageKeeper System. Evoke accessed, used, and tested the ImageKeeper System and downloaded and used ImageKeeper documentation (*i.e.*, Quick Start Guide and API documents) to build the Wright Flood system. Evoke reproduced and created a derivative work of the ImageKeeper System. The Court should find that Evoke used ImageKeeper's Trade Secrets in breach of duties imposed by the EULA and deny summary judgment.

**B.    Evoke's Argument that the Nevada Uniform Trade Secret Act Preempts ImageKeeper's Other State Law Causes of Action (Counts 3, 7, 9) is Premature and Unfounded**

Evoke argues that summary judgment is warranted in Evoke's favor on ImageKeeper's other state law causes of action, specifically Counts 3, 7, and 9. *See* Motion at 14:13-16:10. Evoke's reasoning is that NUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret" and the "causes of action arise from a single factual episode involving misappropriation of trade secrets." *Id.* However, noncontractual claims for misappropriation of confidential information that do not constitute a trade secret are not preempted. *Newmark Grp., Inc. v. Avison Young (Canada) Inc.*, No. 215CV00531RFBGWF, 2019 WL 575476, at *10 (D. Nev. Jan. 7, 2019), *report and recommendation adopted sub nom. BGC Partners, Inc. v. Avison Young (Canada), Inc.*, No.

14

215CV00531RFBGWF, 2019 WL 570724 (D. Nev. Feb. 11, 2019). Allegations unrelated to misappropriation of trade secrets or that do not depend on the information at-issue being deemed a trade secret are also not preempted. *New England Life Ins. Co. v. Lee*, No. 2:14-CV-1797 JCM NJK, 2015 WL 1413391, at *6 (D. Nev. Mar. 27, 2015); *Menalco v. Buchan*, No. 207-CV-01178-PMP-PAL, 2010 WL 428911, at *22 (D. Nev. Feb. 1, 2010)[9]. Here, there are genuine issues of material fact—as well as clear principles of law—to support ImageKeeper's state law claims Counts 3, 7, and 9 that would make granting summary judgment not be appropriate. An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the non-moving party. *Anderson*, 477 U.S. at 250-51.

ImageKeeper's Count 3 is for infringement of trade secret under NRS §§ 603.080 and 603.050. *See* FAC at ¶ 89-96. However, NRS § 603.050 includes an element of copying that is separate from misappropriation of trade secret under NUTSA: "[i]t is an infringement of a trade secret for a person . . . to obtain possession of or access to a proprietary program or a compilation of proprietary information . . . and *make or cause to be made a copy of that program or data* . . . ." Because Count 3 includes an additional element, summary judgment on Count 3 would be premature. The issue before the Nevada Supreme Court in *Frantz v. Johnson* was the propriety of the trial court's **award of damages** based on multiple causes of action with identical facts relating to misappropriation of trade secrets, not liability on those causes of action. 999 P.2d 351, 358 (Nev. 2000); *see also Montgomery v. eTreppid Techs., LLC*, No. 306CV00056PMPVPC, 2008 WL 11401771, at *4 (D. Nev. June 26, 2008). The issue is therefore (at best) an election of remedies and should be reserved for the stage of the litigation when damages award and relief is addressed. Therefore, summary judgment on Count 3 should be denied.

ImageKeeper's Count 7 is for unlawful acts regarding computers under NRS §§ 205.4765, 2058.477, and 205.511. *See* FAC at ¶ 133-139. NRS § 205.4765 addresses prohibited acts pertaining to the following types of items:

- data, a program or any supporting documents which exist inside or outside

---

[9] ImageKeeper incorporates the section in its Opposition to Wright Flood's MSJ addressing the misapplication of *Menalco v. Buchan* as Evoke has also misapplied the case in its MSJ. *See* IMKP's Opp. to Wright Flood's MSJ at section IV(D)(2); Motion at 15:9-15.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

a computer, system or network;

- equipment or supplies that are used or intended to be used in a computer, system or network;

- a computer, system or network; and

- a device used to access a computer, network or data.

NRS § 2058.477 addresses prohibited acts pertaining to the following types of items:

- a computer, system or network; and

- a computer, system, network, telecommunications device, telecommunications service or information service.

Under Count 7, ImageKeeper specifically pled that those items that Evoke accessed includes confidential information that may not constitute a trade secret. *See* FAC at ¶ 134-137. The issues of whether ImageKeeper has adequately defined its Trade Secrets and whether the Trade Secrets constitute trade secrets are still pending before the Court. *See* ECF Nos. 218, 227, 237, 241. Whether information is a trade secret is a question for the fact-finder. *V.C.X., Ltd. v. Burge*, No. 206-CV-00641-PMP-RJJ, 2006 WL 3511347, at *5 (D. Nev. Dec. 5, 2006). Granting summary judgment to the ImageKeeper's non-trade secret claims would prejudicially limit ImageKeeper's cause of action. If the factfinder determines that any one of the Trade Secrets do not constitute a trade secret under the law, Count 7 would not be preempted by NUTSA. Therefore, it premature to grant summary judgment on Count 7.

ImageKeeper's Count 9 is for unfair trade practices under NRS §§ 603.080 and 603.040. *See* FAC at ¶ 150-155. NRS § 603.040 addresses prohibited acts pertaining to a proprietary program or the data stored in a computer. Similar to Count 7, under Count 9, ImageKeeper specifically pled that those items that Evoke accessed includes confidential information that may not constitute a trade secret. *See* FAC at ¶ 154. Again, it would be prejudicial and premature to grant summary judgment on Count 9 given the trade secret disclosure issues pending before the Court. *See* ECF Nos. 218, 227, 237, 241. Should the Court rule that any one of the Trade Secrets is not a trade secret, ImageKeeper would still have a cause of action for those items. Therefore, summary judgment on Count 9 should be denied.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

**C.** **Summary Judgment is Not Warranted on ImageKeeper's Nevada State Law Trade Secret Infringement Claim (Count 3)**

NRS § 603.050 states that:

"It is an infringement of a trade secret for a person, without the consent of the owner, to obtain possession of or access to a proprietary program or a compilation of proprietary information that is stored as data in a computer and make or cause to be ***made a copy of that program or data***…."

(emphasis added). Evoke's argument here is purely targeting the "made a copy" language of the statute and asserting that "ImageKeeper has not come forward with evidence that Evoke "made a copy" of *its program*." Motion at 16:22-26 (emphasis added). However, Evoke ignores that the statute deems the act of copying ***data*** to be trade secret infringement. That data may be comprised of a proprietary program or a compilation of proprietary information. *See* NRS § 603.050. ImageKeeper alleged accordingly. *See* FAC at ¶ 92 ("Defendants, directly or through others, without the consent of ImageKeeper, obtained access to *proprietary information* stored in the ImageKeeper System and *made a copy of such information*." (emphasis added)). As discussed above, there are sufficient documents and deposition testimony to support ImageKeeper's allegation. *See supra* section IV(A)(3). The Court should deny summary judgment here.

**D.** **Summary Judgment is Not Warranted on ImageKeeper's Stored Communications Act Claim (Count 5)**

The Stored Communications Act ("SCA") provides a cause of action against anyone who "intentionally accesses without authorization a facility through which an electronic communication service is provided . . . and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage." 18 U.S.C. §§ 2701(a)(1), 2707(a)). ImageKeeper has appropriately alleged the relevant elements of its SCA claim and there are sufficient documents and deposition testimony to support ImageKeeper's claim. Summary judgment should not be granted as to Count 5.

**1.** **Access to "Communications" is At-Issue Here and Has Previously Been Addressed**

In Wright Flood's prior motion to dismiss, Wright Flood argued that ImageKeeper failed to allege that Wright Flood accessed an "electronic communication." *See* ECF No. 59; ECF No. 170 at 9:3-11:11. The Court disposed of the issue as the Court found ImageKeeper to have

17

1  sufficiently alleged that Wright Flood had "provid[ed], transfer[ed], or shar[ed] its unique login

2  credentials to unauthorized individuals in India." ECF No. 170 at 11:1-11.

3    Evoke now contends that ImageKeeper has not "come forward with evidence that Evoke

4  has altered, obtained, or prevented access to communications from adjusters" pursuant to

5  ImageKeeper's definition of "communications" being "images, data, annotations, and comments

6  from the adjuster regarding floods, which are communicated to the ImageKeeper cloud for 'secure

7  storage.' " Motion at 18:10-19. Evoke is not disputing that ImageKeeper System does not provide

8  an "electronic communication service." *Id*. at 17:10-14. Evoke is not disputing ImageKeeper's

9  definition of communication. *Id*. at 18:10-14. Evoke only disputes whether there is evidence that

10  Evoke obtained, altered, or prevented authorized access to an electronic communication. However,

11  there is sufficient evidence that Evoke did so.

12    As discussed *supra* in section II(A), the ImageKeeper System communicates

13  simultaneously with multiple connected devices, including mobile devices, and involves Insurance

14  Providers, Carriers, Adjusting Firms, Adjusters, and individual Policyholders. ███████████

15  ████████████████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████  *See id*.

18  *supra* section II(A). Therefore, since the ImageKeeper System maintains and stores all these types

19  of communications, Evoke would have and did obtain access to all those types of communication

20  when it accessed the ImageKeeper System (*see supra* section II(C), IV(A)(3)(a)).

21    Furthermore, internal records of ImageKeeper's Secure Portal traffic and mobile

22  application showed Evoke (through using Wright Flood's credentials) (1) certifying photos of

23  activities undertaken by Evoke; (2) testing the generation of preliminary reports, Advanced

24  Payment Requests, and photo capture functionality; (3) documenting the development of the

25  Wright Flood system; and (4) uploading copies of that documentation into the ImageKeeper Cloud.

26  *See* FAC at ¶ 51; ECF No. 6 at ¶ 42-56. The certified photos and recorded activity by Evoke were

27  logged and tracked in the ImageKeeper Cloud. *Id*. In testing out all those functions in the

28  ImageKeeper System, Evoke was altering access to electronic communications as it was creating

new electronic communications. Therefore, the Court should deny Evoke's request for summary judgment on Count 5 on this basis.

### 2.   Evoke Had Reason to Know that "Authorization" from Wright Flood was Improper

The SCA provides an exception for that conduct authorized "by a user of that service with respect to a communication of or intended for that user." 18 U.S.C. § 2701(c)(1)-(2). However, "[p]ermission to access a stored communication does not constitute valid authorization if . . . a defendant who procures consent by exploiting a known mistake that relates to the essential nature of his access." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1073 (9th Cir. 2004). "[A]n overt manifestation of assent or willingness would not be effective . . . if the defendant knew, or probably if he ought to have known in the exercise of reasonable care, that the plaintiff was mistaken as to the nature and quality of the invasion intended." *Id.*

Here, even if Wright Flood was a user of the ImageKeeper System, Evoke exploited Wright Flood's credentials because Evoke wanted to hide its access from ImageKeeper. *See* Ex. 7 at p. 16; Ex. 11 at 71:10-15; Ex. 9 at 231:18-232:15, 233:7-237:4; *see also supra* II(D). Evoke deceived ImageKeeper by masking its access the ImageKeeper System. *See* FAC at ¶¶ 44, 49, 51, 53; ECF No. 6 at ¶ 42-56; *see also supra* II(D). Therefore, any authorization of access to the ImageKeeper from Wright Flood is vitiated and the Court should deny Evoke's request for summary judgement on Count 5 on this basis.[10]

### 3.   ImageKeeper's Cloud Storage Meets the Statutory Definition

"[E]lectronic storage" means either "temporary, intermediate storage . . . incidental to . . . electronic transmission," or "storage . . . for purposes of backup protection." 18 U.S.C. § 2510(17)). ImageKeeper has stated that the ImageKeeper System is "an electronic storage facility that provides, transmits, and stores electronic communication." FAC at ¶ 110; *see also* ECF No. 6

---

[10] In the Court's order on Wright Flood's prior motion to dismiss, the Court addressed the similar issue. *See* ECF No. 170 at 10:15-24. The Court found that ImageKeeper had plausibly alleged that authorization of access to the ImageKeeper System was vitiated because ImageKeeper was mistaken as to the nature and quality of Wright Flood's access to the ImageKeeper System. *Id.* (citing ImageKeeper's allegation that "Wright Flood deceived ImageKeeper as to Wright Flood's intentions in order to gain access to the ImageKeeper System, which but for Wright Flood's false promises and false pretenses ImageKeeper had intended to terminate.").

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

at ¶ 4-8; *see also supra* section II(A), IV(D)(1). Indeed, the ImageKeeper System acts as an electronic storage because it maintains and stores various types of communications (*see supra* section IV(D)(1)) and Evoke obtained access to all those types of communication when it accessed the ImageKeeper System (*see supra* section II(C), IV(A)(3)(a)).  Therefore, summary judgment on Count 5 is not appropriate on this basis.

### 4. The Stored Communications Act Applies to the Access and Also the Misuse of Information Acquired

Evoke's argument here is moot as ImageKeeper has explained above that Evoke's access to the ImageKeeper System was indeed unauthorized and any consent by Wright Flood, as an "authorized user," was vitiated. *See supra* section IV(D)(2).  Furthermore, Evoke's reliance on *Cousineau v. Microsoft Corp.*, 6 F. Supp. 3d 1167 (W.D. Wash. 2014) is distinguishable.  In *Cousineau,* the Court found that there were no express or specific limits imposed on the authorization at-issue. *Cousineau v. Microsoft Corp.*, 6 F. Supp. 3d 1167, 1174 (W.D. Wash. 2014).  Such is not the case here.

ImageKeeper imposed strict limitations on Wright Flood's access to the ImageKeeper System as well as Wright Flood's pre-approved end-users. *See* FAC at ¶ 33. Section 6.1 of the Software Services Agreement ("SSA") between ImageKeeper and Wright Flood authorized Wright Flood's access to ImageKeeper's Flood Claims Service "████████████████████ ████████████████████████████████████████████████ ████████████████████"  *See* Ex. 2 to ECF No. 6 (SSA). Wright Flood, in facilitating access for authorized end users, agreed "that no username or password will be utilized at any time by any person other than the End User to whom such username or password was originally assigned." *Id*.

Therefore, Evoke's access to the ImageKeeper System (through Wright Flood's credentials) was not use by the end-user Wright Flood. Evoke also did not use the ImageKeeper System as specified in the SSA. Evoke used the ImageKeeper System to improperly reverse engineer the System to develop an application for Wright Flood, and this was strictly prohibited by section 6.4 of the SSA. *Id*. Evoke clearly exceeded those limits that ImageKeeper placed on Wright Flood's access.  The Court should deny Evoke's request for summary judgment on Count

5 on this basis.

**E.     Summary Judgment is Not Warranted on ImageKeeper's Computer Fraud and Abuse Act Claim (Count 6)**

ImageKeeper has alleged that Evoke violated two provisions of the Computer Fraud and Abuse Act ("CFAA"). The first CFAA provision states that it is a violation for anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains…information from any protected computer." 18 U.S.C. § 1030(a)(2)(C); *see also* FAC at ¶ 121. The second CFAA provision states that it is a violation for anyone who:

> "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period."

18 U.S.C. § 1030(a)(4); *see also* FAC at ¶ 122.  ImageKeeper has appropriately alleged the relevant elements of its CFAA claim and there is sufficient documents and deposition testimony to support ImageKeeper's claim. Summary judgment should not be granted on Count 6.

**1.     There is Sufficient Evidence to Demonstrate "Loss" and "Damage" as Defined Under the Computer Fraud and Abuse Act**

For both 18 U.S.C. § 1030(a)(2)(C) and § 1030(a)(4), a civil action is available if the violation involves at least one type of loss or damage listed under § 1030(c)(4)(A)(i). *See* 18 U.S.C. § 1030(g). The relevant loss and damages that ImageKeeper alleged include: (1) "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value" and (2) "damage affecting 10 or more protected computers during any 1-year period." FAC at ¶¶ 128, 132; *see also* 18 U.S.C. § 1030(c)(4)(A)(i)(I), (VI). There is proper evidence to demonstrate ImageKeeper's loss and damage pursuant to the CFAA definitions.

**a.     Loss in a 1-Year Period Aggregating At Least $5,000**

The term "loss" means any reasonable cost "including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Indeed, ImageKeeper had to investigate and respond to Evoke's access and use of the ImageKeeper System. FAC at ¶ 51;

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

1  ECF No. 6 at 10:1-24:5. ImageKeeper had to review its audit trails for activities related to Wright

2  Flood and Evoke and determine what information was accessed and taken by Evoke and to what

3  extent Evoke had used the ImageKeeper System. *Id*. ImageKeeper had determined that between

4  December 2019 and May 2020, Wright Flood and Evoke had accessed the protected front and

5  backend of the Secure Portal of the ImageKeeper System and cloud system located in Las Vegas,

6  Nevada over 600 times. FAC at ¶ 55.

7          ImageKeeper had to expend time, effort, and costs to assess the extent of Wright Flood's

8  and Evoke's illicit access and use of the ImageKeeper System and restoring the data, programs,

9  and information in the ImageKeeper System to its condition prior to Evoke's offenses ("Response

10  Costs"). *See* Ex. 5 at 49:6-12, 50:3-11. ImageKeeper's Response Costs aggregate more than

11  $5,000. *See* May 15, 2023 Declaration of Jerry Speasl ("Speasl Decl.") at ¶ 4, attached herein as

12  **Exhibit 13**. Thus, there is sufficient evidence to support loss under the CFAA according to the

13  first section of the definition of "loss." *See Facebook, Inc. v. Power Ventures, Inc*., 844 F.3d 1058,

14  1066 (9th Cir. 2016) (Plaintiff had suffered a loss under the CFAA where employees spent many

15  hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to defendant's

16  actions.); *United Factory Furnishings Corp. v. Alterwitz*, No. 2:12-CV-00059, 2012 WL 2138115,

17  at *2 (D. Nev. June 13, 2012).

18          **b.      Damage Affecting 10 or More Protected Computers During Any 1-Year Period**

19  
20          The term "damage" means "any impairment to the integrity or availability of data, a

21  program, a system, or information." 18 U.S.C. § 1030(e)(8). In addition to ImageKeeper's

22  Response Costs, ImageKeeper also suffered damages as defined by the CFAA. FAC at ¶ 128.

23  Evoke's access, use, and testing of the ImageKeeper System affected multiple protected computer

24  devices, at least 10 in multiple states, including computers, mobile devices, and servers being used

25  by Evoke to connect, test, and clone the ImageKeeper System and servers. *Id*. The evidence to

26  support this includes the following:

27          • The ImageKeeper System supports and communicates simultaneously with
               thousands of connected devices, including mobile devices, and involves
28             Insurance Providers, Carriers, Adjusting Firms, Adjusters, and individual
               Policyholders. *See* Ex. 5 at 11:8-13.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

- ImageKeeper's secured and protected computers and servers and certain colocation, telecommunications, and cloud services equipment are located in Nevada. FAC at ¶ 8; ECF No. 6 at ¶ 3.

- Wright Flood admits that its principal office is located in Florida (ECF No. 180 at ¶ 2); therefore, Wright Flood's computers and devices were located in Florida (FAC at ¶ 124)[11].

- Evoke admits to being incorporated in India and operates offices located in India (ECF No. 120 at ¶ 3, *see also* FAC at ¶ 3); therefore, Evoke's computers and mobile devices are located in India (FAC at ¶ 124).

- Evoke admits to Wright Flood providing Evoke with a mobile phone that had ImageKeeper Adjuster Application loaded on it. Motion at 3:21-4:1, n. 12.

- Evoke admits to accessing the ImageKeeper System from India from their local laptops. Ex. 9 at 290:2-10.

- From December 2019 and May 2020, Wright Flood and Evoke, including those located in India, had accessed the protected front and backend of the Secure Portal of the ImageKeeper System and cloud system located in Las Vegas, Nevada over 600 times. FAC at ¶ 55.

In light of all of the above, the integrity and/or availability of data, programs, systems, and information on the mentioned-devices were affected during the accused time period. Thus, ImageKeeper has demonstrated damage as required under the CFAA.

### 2. Documents and Deposition Testimony are Sufficient to Show All Other Elements of ImageKeeper's Computer Fraud and Abuse Act Claim

#### a. Evoke Acted Without Authorization Under the Statute

In *Multiven, Inc. v. Cisco Sys., Inc.*, the Court had determined that based on the number of times the defendant had accessed the plaintiff's network secure areas, no reasonable juror could conclude that the defendant actually believed that he had plaintiff's authorization to do so. 725 F. Supp. 2d 887, 894 (N.D. Cal. 2010) (Having a login and password does not provide unlimited authorization to access a secure website under the CFAA.). Evoke, in conjunction with Wright Flood, accessed the ImageKeeper System over 600 times between December 2019 and May 2020 for the purpose of testing the ImageKeeper System and developing the Wright Flood system. *See* FAC at ¶ 55.

Evoke did not believe that it had authorized access to the ImageKeeper System from

---

[11] The Court has previously ruled that ImageKeeper alleged sufficient facts demonstrating that the devices are "protected computers." *See* ECF No. 170 at 12:9-16.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

ImageKeeper. Evoke knew that ImageKeeper was the owner of the ImageKeeper System. *See* Ex. 6 at p. 1 ("The current Adjustor App…system is owned by Image Keeper."). Evoke understood that the Quick Start Guide belonged to ImageKeeper. *See supra* at p. 11, n. 2. Thus, it is very clear that the Quick Start Guide and the ImageKeeper System are owned by ImageKeeper. Evoke was even aware that there were proprietary issues surrounding the ImageKeeper System and that it was using ***Wright Flood's*** credentials and needed to mask its access to the ImageKeeper System to avoid detection.[12] Therefore, Evoke did not act with authorization from ImageKeeper and summary judgment should be denied.

        **b.**      **Evoke Acted "Knowingly and With Intent to Defraud" ImageKeeper**

"Intent to defraud" means "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." *United States v. Saini*, 23 F.4th 1155, 1161 (9th Cir. 2022). "Intent to defraud" will be found where a party falsely represented itself. *NLRK, LLC v. Indoor Ag-Con, LLC*, No. 321CV00073LRHWGC, 2022 WL 293252, at *7 (D. Nev. Jan. 31, 2022) (citing *Oracle Am., Inc. v. Serv. Key, LLC*, No. C 12-00790 SBA, 2012 WL 6019580 (N.D. Cal. Dec. 3, 2012)).

Here, Evoke acted "knowingly and with intent to defraud" pursuant to 18 U.S.C. § 1030(a)(4). Evoke intended to deceive ImageKeeper in order to access to the ImageKeeper System and gain proprietary information. *See supra* section II(C). Evoke gained that information to replicate it in the Wright Flood system. *Id*. Evoke falsely represented itself by using Wright Flood's credentials. *See supra* section IV(A)(3)(a)(ii). Evoke knew that whenever it accessed the ImageKeeper System, it would appear in Wright Flood's name. *Id*. Evoke took extra precaution to misrepresent itself since it masked its IP address when accessing so that ImageKeeper would not detect access by someone located outside the United States. *Id*. Evoke did all this so that it could defraud ImageKeeper. Summary judgment should be denied on this basis.

---

[12] *See* Motion at 3:21-4:3; Ex. 6 at p. 1; Ex. 7 at pp. 14-17, 40, 44; Ex. 9 at 180:9-181:12, 191:17-193:21, 231:18-232:15, 233:7-237:4, 238:2-245:9; Ex. 11 at 71:10-15; Ex. 10 at 224:3-11.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

### c. ImageKeeper's Damages Under the Computer Fraud and Abuse Act are Not Limited to Economic Damages

Evoke argues that damages for a violation under 18 U.S.C. § 1030(c)(4)(A)(i)(I) are limited to economic damages and compensatory damages are not permitted. Motion at 24:11-22. However, "[w]hen an individual or firm's money or property are impaired in value, or money or property is lost, or money must be spent to restore or maintain some aspect of a business affected by a violation, those are 'economic damages.' " *Creative Computing v. Getloaded.com LLC*, 386 F.3d 930, 935 (9th Cir. 2004). Furthermore, "[i]f one who is harmed does seek compensatory damages based on such conduct [under 18 U.S.C. § 1030(c)(4)(A)(i)(I)] …then those damages will be so limited. That is, compensatory damages for such conduct will be awarded only for economic harm." *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC.*, 428 F.3d 504, 511 (3d Cir. 2005).

Here, the ImageKeeper System was impaired and ImageKeeper incurred Response Costs for the expenditure of time, effort, and costs to assess the extent of Evoke's illicit access and use of the ImageKeeper System and restoring the data, programs, and information in the ImageKeeper System to its condition prior to Evoke's offenses. *See* Ex. 5 at 49:6-12, 50:3-11. These are economic damages. To the extent ImageKeeper requests compensatory damages for conduct alleged under 18 U.S.C. § 1030(c)(4)(A)(i)(I), it would be limited to that related to economic harm. For compensatory damages for conduct alleged under 18 U.S.C. § 1030(a)(2)(C), compensatory damages would not be limited to only economic harm. Evoke's summary judgment should be denied.

### F. Summary Judgment is Not Warranted on ImageKeeper's Claim Regarding State Law Unlawful Acts Regarding Computers (Count 7)

Evoke again raises the issue of "without authorization." Motion at 24:26-25:8, 25:13-15. ImageKeeper has demonstrated above that Evoke clearly accessed the ImageKeeper without authorization. *See supra* section IV(D)(2), (4).

Evoke further argues that it has an affirmative defense because it "reasonably believed" it was authorized to use or access the ImageKeeper System. Motion at 25:16-25. Indeed, NRS § 205.477(4) provides that it is an affirmative defense if the defendant reasonably believed that:

"(a) The defendant was authorized to use or access the computer, system, network, telecommunications device, telecommunications service or information service and such use or access by the defendant was within the scope of that authorization; or

(b) The owner or other person authorized to give consent would authorize the defendant to use or access the computer, system, network, telecommunications device, telecommunications service or information service."

Evoke has neither here.

First, Evoke itself did not believe that it had authorized access to the ImageKeeper System and that such access and use was within scope of that authorization. Evoke was aware that there were proprietary issues surrounding the ImageKeeper System and that it was using ***Wright Flood's*** credentials.[13] Wright Flood was the authorized end user, not Evoke. Evoke claims it followed common practice (Motion at 25:17-25[14]) but even it understood that information belonging to third-parties may be involved at times. *See* Ex. D to Motion at section 7 (EVOKE000469) ("█████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████"). Thus, Evoke could not have reasonably believed that it had authorized access to the ImageKeeper System using credentials belonging to Wright Flood.

Second, Evoke could not have reasonably believed that ImageKeeper, as the owner of the ImageKeeper System, would authorize Evoke to access and use the ImageKeeper System. Evoke knew that the ImageKeeper System was ***not*** Wright Flood's. *See* Ex. 6 at p. 1 ("█████████ ████████████████████████████████████."). Evoke understood that the Quick Start Guide belonged to ImageKeeper. *See supra* at p. 11, n. 2. Evoke used Wright Flood's credentials because it did not believe that ImageKeeper would grant it access to the ImageKeeper System.

Evoke has no affirmative defense to ImageKeeper's claim for unlawful acts regarding computers. Therefore, the Court should deny Evoke's request for summary judgment on Count 7 for this basis.

---

[13] *See* Motion at 3:21-4:3; Ex. 6 at p. 1; Ex. 7 at p. 14-17, 40, 42; Ex. 9 at 180:9-181:12, 191:17-193:21, 238:2-245:9; Ex. 10 at 224:3-11.

[14] Evoke further argues that it was contractually required by the agreements between Evoke and Wright Flood regarding maintaining confidentiality of customer activities and information. Motion at 25:22-25. However, contractual obligations and/or agreements is not a defense for committing violations of statutes in the United States.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

1

2

**G.      Summary Judgment is Not Warranted on the ImageKeeper's Claim Regarding Unfair Trade Practices (Count 9)**

3

Evoke is mistaken in asserting that it is ImageKeeper's allegation that "Evoke stopped

4

ImageKeeper from accessing the ImageKeeper System." Motion at 26:1-20. ImageKeeper never

5

alleged that Evoke had attempted to or did stop ImageKeeper from accessing the ImageKeeper

6

System. *See generally* FAC. This fact notwithstanding, a party may still be liable for unfair trade

7

practice if they obtained possession of or access to a proprietary program or the data stored in a

8

computer and convert that program or data to their own use or the use of another (or had the intent

9

to). *See* NRS § 603.040. In its FAC, ImageKeeper alleged that "Defendants, either directly or

10

through others, gained access to data stored in a computer, the ImageKeeper System, with the

11

intent to *convert the data to their own use*, which is an unfair trade practice pursuant to NRS

12

603.040." *See* FAC at ¶ 154 (emphasis added). As discussed above, there are sufficient documents

13

and deposition testimony to support ImageKeeper's allegation that (1) Evoke gained access to

14

proprietary information and documents from the ImageKeeper System, and (2) used that

15

proprietary information and documents to develop the Wright Flood system for Wright Flood. *See*

16

*supra* section IV(A)(3)(a). Therefore, the Court should deny Evoke's request for summary

17

judgment here.

18

**H.      Summary Judgment is Not Warranted on the ImageKeeper's Breach of Contract Claim (Count 12)**

19

Nevada law requires plaintiffs in breach of contract actions to demonstrate "(1) the

20

existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the

21

breach." *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D.

22

Nev. 2011) (internal citations omitted). ImageKeeper has properly alleged all elements for this

23

claim in its FAC. *See* FAC at ¶ 168-174. As discussed in *supra* section IV(A)(3)(a)(iii), whenever

24

Evoke accessed the ImageKeeper System, Evoke "███████████████████████████████

25

████████████████████████████████████████████████████████████████

26

████████████████████████" as admitted by Timothy Love. ECF No. 30 at

27

6:3-5; FAC at ¶ 170. The EULA exists between Evoke and ImageKeeper because Evoke logged

28

into the ImageKeeper System and clicked through the EULA.

27

1   Evoke argues that ImageKeeper was required to initiate arbitration pursuant to the EULA

2   and, since ImageKeeper did not, summary judgment must be granted.[15] Motion at 27:10-21. Evoke

3   cites to *MB Am., Inc. v. Alaska Pac. Leasing Co.* (2016) to support its argument. *See id*. However,

4   in that case, the defendant had disputed the plaintiff's complaint soon after it was filed on the basis

5   of an existing contractual arbitration clause between the parties. *See MB America, Inc. v. Alaska*

6   *Pacific Leasing Co.*, No. CV14-01229, 2014 WL 11191241, at *1 (Nev.Dist.Ct. Oct. 22, 2014). In

7   the current litigation, Evoke never raised such an issue nor did it file a motion on that basis or a

8   motion to compel arbitration. Federal Rule of Civil Procedure 12(b)(1) permits defendants to seek

9   dismissal of a claim or action for lack of subject matter jurisdiction. "A federal court is presumed

10  to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Forbush v. City*

11  *of Sparks*, No. 321CV00163MMDWGC, 2021 WL 6551282, at *3 (D. Nev. Dec. 21, 2021)

12  (internal citations omitted). Furthermore, "[a] party waives the right to demand arbitration when it

13  (1) knows of its right to arbitration, (2) acts inconsistently with an intent to arbitrate, and (3)

14  prejudices the opposing party by actively litigating the dispute in another forum." *Mirage Casino-*

15  *Hotel v. Beale St. Blues Co. Las Vegas, LLC*, 132 Nev. 1008 (2016). Evoke has appeared

16  affirmatively in this case and knew of ImageKeeper's allegations under the EULA (and the

17  arbitration clause contained therein) since at least ImageKeeper's filing of the FAC on October 21,

18  2020. Evoke has been actively litigating this case for almost three years. It would be prejudicial to

19  ImageKeeper should arbitration be required at this stage of litigation. Thus, the Court should find

20  that Evoke has waived its right to demand arbitration.

21      "[F]ailure to perform one's obligations within the express terms of an agreement

22  constitutes a literal breach of contract." *Med. Providers*, 818 F. Supp. 2d at 1274 (internal citations

23  omitted). Under the EULA, Evoke agreed not to reproduce and create derivative works of the

24  ImageKeeper System and Evoke acknowledged that the ImageKeeper System is protected by

25  intellectual property and proprietary rights. *See supra* section IV(A)(3)(a)(iii). Evoke breached

26  ───────────────────────

27  [15] It is contradictory that, on the one hand, Evoke argues that a contract (*i.e.*, the EULA) between Evoke and ImageKeeper does not exist or is invalid. Motion at 13:21-14:12. But, on the other hand, Evoke seeks relief under a right that is provided by the EULA. *Id*. at 26:21-27:21. Evoke

28  should not be allowed to cherry-pick the circumstances for when the EULA is valid or is invalid between it and ImageKeeper.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

these express terms of the EULA as Evoke reproduced and created a derivative work of the ImageKeeper System – the Wright Flood system. *Id*. Therefore, the Court should deny Evoke's request for summary judgment as to Count 12.

I.   **Summary Judgment is Not Warranted as to the Availability of Punitive Damages and Attorneys' Fees as Evoke Did Act with the Requisite State of Mind**

For those causes of action against Evoke, ImageKeeper seeks punitive damages and/or attorneys' fees for Count 1 (DTSA Trade Secret Misappropriation), Count 2 (NUTSA Trade Secret Misappropriation), Count 3 (Infringement of Trade Secrets), Count 5 (Stored Communications Act), Count 7 (Unlawful Acts Regarding Computers).[16] *See* FAC at ¶¶ 74, 88, 96, 116, 118, 139. The statutes that have a heightened state of mind element (*e.g.*, "willful," "malicious," "wanton," "reckless") relate to Counts 1, 2, 3, and 5. *See* 18 U.S.C. § 1836(b)(3)(C)-(D); NRS § 600A.050(2); NRS § 600A.060(3); 18 U.S.C. § 2707(c). The statute related to Count 7 does not contain a heightened state of mind element. *See* NRS § 205.511. Therefore, Evoke's argument does not apply to Count 7.

"Willful" is defined as "voluntary and intentional." *Burrage-Simon v. State Farm Mut. Auto. Ins. Co*., No. 2:14-CV-00429-GMN, 2015 WL 5224885, at *3 (D. Nev. Sept. 8, 2015). "Recklessness" is defined as "generally understood…as conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that is should be known.'" *Johnson v. Wells Fargo Home Mortg., Inc*., 558 F. Supp. 2d 1114, 1138 (D. Nev. 2008) (internal citations omitted). Here, documents and deposition testimony has shown that Evoke intentionally accessed the ImageKeeper System and downloaded and used ImageKeeper documents. *See supra* section IV(A)(3)(a). Evoke claims it acted under the instruction of Wright Flood (*see e.g.*, Motion at 6:10-15, 25:16-25, 29:4-7); however, Evoke understood that there would be proprietary issues in accessing the ImageKeeper System and downloading and using ImageKeeper documents. Wright Flood's instructions notwithstanding, Evoke should have understood the risks when it clicked through the EULA when it logged into the ImageKeeper

---

[16] It is unclear whether Evoke limits its arguments to only Counts 1 and 2. *See* Motion at 28:18-29:7, n. 54. For the sake of clarity, ImageKeeper will address each of the listed causes of action that may be relevant to Evoke's argument.

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

1   System. *See supra* section IV(A)(3)(a)(iii). Evoke definitely understood the risks in its work that

2   it may be required to divulge information to third-parties as confidential information from those

3   third-parties are involved. *Id.*

4        Evoke understood those risks that it may violate certain standards but acted as it did

5   anyway. *Id.* Therefore, Evoke's conduct meets the heightened state of mind requirement under

6   Counts 1, 2, 3, and 5 and the Court should deny Evoke's request for summary judgment regarding

7   punitive damages and attorneys' fees.

8   **V.   CONCLUSION**

9        For the foregoing reasons, ImageKeeper respectfully requests that the Court deny Evoke's

10  Motion for Summary Judgment.

11

12  Dated:  May 15, 2022                              Respectfully submitted,

13                                                    POLSINELLI LLP

14                                                    */s/ Melenie Van*

15  Michael P. Dulin                            By:   Colby B. Springer (admitted *pro hac vice*)
16  (admitted *pro hac vice*)                         Miya Yusa (admitted *pro hac vice*)
    POLSINELLI PC                                     POLSINELLI LLP
17  1401 Lawrence Street, Suite 2300                  Three Embarcadero Center, Suite 2400
    Denver, CO 80202                                  San Francisco, CA 94111
18  T:  303.572.9300                                  T:  415.248.2100
    Email:  mdulin@polsinelli.com                     cspringer@polsinelli.com
19                                                    myusa@polsinelli.com
    Melenie Van
20  *(*admitted *pro hac vice)*                       H. Stan Johnson (SBN 0265)
    POLSINELLI LLP                                    Steven B. Cohen (SBN 2327)
21  2049 Century Park East, Suite 2900               COHEN-JOHNSON LLC
    Los Angeles, CA 90067                             375 E. Warm Springs Road, Suite 104
22  T:  310.229.1355                                  Las Vegas, NV 89119
    Email: mvan@polsinelli.com                        T:  702.823.3500
23                                                    sjohnson@cohenjohnson.com
    Emily C. McNally                                  scohen@cohenjohnson.com
24  (admitted *pro hac vice*)
    POLSINELLI PC
25  1000 Second Avenue, Suite 3500
    Seattle, WA 98104
26  T:  206.393.5413
    Email: emcnally@polsinelli.com

27                                                    Attorneys for Plaintiff
28                                                    IMAGEKEEPER, LLC

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT

1

2

**CERTIFICATE OF SERVICE**

3

     I served a true copy electronically on designated recipients via electronic transmission of

4

5

PLAINTIFF    IMAGEKEEPER,    LLC'S    OPPOSITION    TO    DEFENDANT    EVOKE

6

TECHNOLOGIES PRIVATE LIMITED'S MOTION FOR SUMMARY JUDGMENT [ECF NO.

7

259] as provided under the Federal Rules of Civil Procedure and CM/ECF.

8

Dated:  May 15, 2023

9

10

                                   By:  */s/ Sarah Gondek*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT EVOKE'S MOTION FOR SUMMARY JUDGMENT