UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ImageKeeper LLC,<br><br>                              Plaintiff<br><br>     v.<br><br>Wright National Flood Insurance Services, et al.,<br><br>                              Defendants | Case No. 2:20-cv-01470-CDS-MDC<br><br>**Order Granting in Part and Denying in Part Defendant Wright's Motion for Summary Judgment, Granting the Parties' Motions to Seal, and Denying Defendants Motions for Summary Judgment Without Prejudice**<br><br>[ECF Nos. 218, 259, 264, 292, 293, 294] |

        This is a trade secret misappropriation case. Plaintiff ImageKeeper LLC brings twelve causes of action against defendants Wright National Flood Insurance Services and Evoke Technologies Private Limited: trade secret misappropriation under 18 U.S.C. § 1836 and Nevada Revised Statutes (NRS) 600A.010 (Counts I and II); infringement of trade secrets under NRS 603.080, 603.050 (Count III); breach of contract (Counts IV and XII); Stored Communications Act, 18 U.S.C. § 2701, § 2707 (Count V); Computer Fraud and Abuse Act – 18 U.S.C § 1030 (Count VI); Unlawful Acts Regarding Computers – NRS 205.4765, NRS 205.477, and NRS 205.511 (Count VII); Deceptive Trade Practices – NRS 41.600 (Count VIII); Unfair Trade Practices, NRS 603.080, 603.040 (Count IX); breach of the implied covenant of good faith and fair dealing (Count X); unfair competition/breach of duty of loyalty (Count XI). ECF No. 67. Wright moves for summary judgment for failure to adequately disclose the alleged trade secrets (ECF No. 218), which Evoke joins (ECF No. 227). For the following reasons, I grant in part and deny in part Wright's motion for summary judgment. I also grant the motions to seal docketed at ECF Nos. 292, 293, 294. Finally, I deny the remaining motions for summary judgment (ECF No. 259, 264) without prejudice, and direct the parties to settlement.

I.      Procedural background

In April 2021, the court ordered ImageKeeper to supplement the detail of its alleged trade secrets. ECF No. 157. At that time, the court warned ImageKeeper that it would be unable to later materially alter the details of its supplemental trade secrets disclosure. *Id*. ImageKeeper produced its Final ID on February 11, 2022. ECF No. 217-3. On February 17, 2022, Judge Navarro granted Wright leave to file an early motion for summary judgement on the sole issue of whether ImageKeeper had adequately identified its alleged trade secrets with sufficient particularity. ECF No. 195. Judge Navarro stated in her order that "[s]ummary judgment is thus proper as to whether Plaintiff sufficiently identifies, with particularity, a trade secret to form the basis for its misappropriation of trade secrets claim." *Id*. at 6.

On April 27, 2022, Wright moved for summary judgment on the issue of particularity. ECF No. 218. Evoke joined that motion. ECF No. 227. Both Wright and Evoke moved for post-discovery summary judgment in March 2023. ECF Nos. 259, 264. The parties filed various motions to seal in connection with the summary judgment briefing. Three outstanding motions to seal remain, which the court addresses herein. ECF Nos. 292, 293, 294. On March 13, 2024, the court held a hearing to consider arguments on the sole issue of particularity. ECF Nos. 297, 298. This order only resolves the issue of particularity. For the following reasons, the court finds that ImageKeeper described Alleged Trade Secrets 3 and 6 with sufficient particularity to resolve summary judgment but failed to do so for Alleged Trade Secrets 1, 2, 4, 5, and 7.

II.     Facts

ImageKeeper develops mobile applications and secure image capturing technology licenses. Am. Compl., ECF No. 67 at ¶ 3. As relevant to this case, it developed software to track, prepare, and process flood insurance claims, called the ImageKeeper's Flood Claim Service System (the "ImageKeeper System"). *Id*. The ImageKeeper System comprises a secure portal to the ImageKeeper Cloud and a mobile adjuster application ("Adjuster Application"). *Id*.

In 2013, ImageKeeper contracted with Wright to: (1) provide ImageKeeper's "proprietary technology and overall Client and Server system design and development leadership;" (2) "perform all necessary hardware, software module design, development, acquisition, integration, verification and test[ing];" and (3) to work on the "establishment of the specifications." *Id.* at ¶ 19 (citing ECF No. 30-1 (2013 Term Sheet)). In 2016, Wright began using the ImageKeeper System to process and handle Wright insurance claims. *Id.* at ¶ 24. In order to use the ImageKeeper System, Wright agreed to strict use-restrictions and confidentiality requirements imposed by ImageKeeper. *Id.* In 2019, ImageKeeper requested that Wright pay multiple outstanding invoices and rather than pay, Wright requested a negotiation of new prices and terms for a service agreement to resolve said invoices. *Id.* at ¶ 27. The parties subsequently renegotiated a new relationship, including a subsequent Software Agreement which included a two year non-compete and other competitive restrictions. *Id.* at ¶¶ 28–39.

ImageKeeper alleges that, on October 15, 2019, ten days before the parties executed the Software Agreement, Wright created unauthorized user accounts on the ImageKeeper System to provide access to Evoke—a global information technology services company that offers software development, IT outsourcing and IT consulting services—and subsequently hired Evoke on October 24, 2019 to help implement Wright's new mobile application. *Id.* at ¶¶ 43–44.

In 2020, ImageKeeper discovered Wright's application in the Apple Store which allegedly looked and functioned similarly to ImageKeeper's Adjuster Application. *Id.* at ¶ 47. Upon further investigation, ImageKeeper discovered the unauthorized accounts created on October 15 and uncovered that the unique administrator login credentials ImageKeeper had registered only to Tim Love, Wright's Chief Information Officer, had been provided to one or more software developers at Evoke. *Id.* at ¶¶ 48–49. Further data revealed that individuals from Wright and Evoke had reviewed proprietary ImageKeeper designs and data and tested multiple different proprietary functions in the ImageKeeper system, including from IP addresses originating in India, where Evoke has operations. *Id.* at ¶ 51. ImageKeeper alleges that Wright

never had any intention of honoring its contractual and confidentiality obligations with ImageKeeper and only signed the Software Agreement to ensure continued access to the system while hiring Evoke to "misappropriate, copy, reverse engineer the ImageKeeper System to create a competing clone product." *Id.* at ¶¶ 56–57.

## III.   Legal Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Id.* at 250–51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp.*, 477 U.S. at 323–24.

The moving party—the one seeking summary judgment—bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970). However, if the moving party satisfies Rule 56's requirements, then the burden shifts to the party resisting the

motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. At summary judgment, "a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial." *Assurance Co. of Am. v. Ironshore Specialty Ins. Co.*, 2015 WL 4579983, at *3 (D. Nev. July 29, 2015) (citing *Anderson*, 477 U.S. at 249). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

**IV.    Discussion**

    **A.    Wright's motion for summary judgment is granted in part denied in part.**

    Wright moves for summary judgment on particularity, arguing that ImageKeeper fails to describe all seven of its Alleged Trade Secrets with sufficient particularity to survive summary judgment. ECF No. 218.

    "A plaintiff seeking relief for misappropriation of trade secrets 'must identify the trade secrets and carry the burden of showing that they exist.'" *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998) (citing *MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522 (9th Cir. 1993)). To meet this burden and survive summary judgment, the plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade." *Id.* at 1164–65 (internal citations omitted) (emphasis in original).

    A plaintiff must "clearly refer to tangible trade secret material" instead of referring to a "system which *potentially* qualifies for trade secret protection." *See id.* at 1167 (emphasis in original). A plaintiff may not simply rely upon "catchall" phrases or identify categories of trade secrets they intend to pursue at trial. *Id.*; *X6D Ltd. v. Li-Tek Corps. Co.*, 2012 WL 12952726, at *6 (C.D. Cal. Aug. 27, 2012). It is inadequate for a plaintiff to "cite and incorporate by reference hundreds of documents that purportedly reference or reflect the trade secret information." *Id.* at 6 (internal quotations omitted); *see also IDX Sys. Corp. v. Epic Sys. Corp.*, 165 F. Supp. 2d 812, 819

1 (W.D. Wis. 2001) ("Long lists of general areas of information containing unidentified trade

2 secrets are not substitutes for particularized and concrete trade secrets.")

3      Identifying trade secrets with sufficient particularity is important because defendants

4 need "concrete identification" to prepare a rebuttal. *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978

5 F.3d 653, 658 (9th Cir. 2020) (quoting *Imax Corp.*, 152 F.3d at 1167). Courts and juries also require

6 precision because the district court or trier of fact will not have the requisite expertise to define

7 what the plaintiff leaves abstract, especially where a trade secret claim "involves a sophisticated

8 and highly complex" system. *Id.*

9      ImageKeeper asserts seven Alleged Trade Secrets in its Final ID. ECF No. 217-3. For the

10 following reasons, the court finds that two of the Alleged Trade Secrets are described with

11 sufficient particularity to survive summary judgment; the rest are not.

12          *1.    Alleged Trade Secrets 1, 2, 4, 5, and 7 are not described with sufficient*

13                *particularity to survive summary judgment.*

14      The court partially grants Wright's motion for summary judgment because ImageKeeper

15 fails to concretely identify with particularity which aspect of its broad descriptions for Alleged

16 Trade Secrets 1, 2, 4, 5, and 7 is the protectable, unique feature compromising the "tangible trade

17 secret material." While ImageKeeper provides plenty of description for each "trade secret"—

18 including examples of how it functions or what it entails—it fails to point the court to precisely

19 *what* constitutes the *trade secret itself* and it is not the court's or defendants' job to parse through

20 the material to guess. *See InteliClear*, 978 F.3d at 658 (counseling that plaintiffs may not force the

21 court to "parse through" their vague and overinclusive description "to determine what seemed

22 valuable and generally unknown" instead of making that determination themselves).

23      For example, Alleged Trade Secret 2 is, in broad terms, "Programmatic claim assignment

24 to adjusters" and the description lists, for instance, a number of steps that occur once an "Assign

25 Claim API call" is received to achieve the feature. But it is wholly unclear whether it is the

26 combination of these steps that is the trade secret, or the idea itself for programmatic claim

assignments to adjusters, or the documents cited in support of this alleged trade secret, or something else. *See* ECF No. 217-3 at 21–22. This is inadequate; a plaintiff must clearly determine the contours of its alleged trade secrets. *See Bunnell v. Motion Picture Ass'n of Am.*, 567 F. Supp. 2d 1148, 1155 (C.D. Cal. 2007) (plaintiff cannot "expect the Court to determine" the contours of the alleged trade secrets).

Similarly, Alleged Trade Secret 7 is, in broad terms, "Proprietary real-time claim updates to cloud" and the description explains what items are included in these updates as well as who is able to make these updates. ECF No. 217-3 at 29–30. However, the Final ID is unclear as to *what* precisely constitutes the aspect or aspects of this feature that are the trade secret itself.  *See Princess Cruises, Inc. v. Amrigon Enterprises, Inc.*, 51 F. App'x 626, 628 (9th Cir. 2002) ("[Plaintiff's] generalizations concerning its database components are insufficient to establish the necessary distinctions between its work and general knowledge in the trade. [Plaintiff's] failure to properly specify its asserted trade secrets rendered summary judgment …. appropriate."); *Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, 2016 WL 5719819, at *10 (S.D. Cal. Sept. 30, 2016), *aff'd*, 729 F. App'x 590 (9th Cir. 2018) (granting summary judgment on trade secret claim where "Plaintiff's disclosure resembles an effort to categorize every piece of information or know-how that could potentially have value to the company" and "impermissibly . . . shifts its burden onto [Defendant] (and the Court) to sift through' voluminous documents in order 'to ascertain [its] trade secret.'").

During the March 13 hearing, the court gave ImageKeeper the opportunity to describe its Alleged Trade Secrets with more particularity, and specifically, as they would be described for the jury. Tr., ECF No. 298 at 50–51. Counsel in essence pointed the court back to the text of the Final ID, stating that ImageKeeper's corporate witness, Patterson, would act as an expert and "in theory, [Patterson] could use the interrogatory response as a script" to describe to trade secrets to the jury. *Id.* In other words, the hearing did not provide the court with any further clarity that would permit the court to allow Alleged Trade Secrets 1, 2, 4, 5, or 7 to survive

summary judgment. Thus, because ImageKeeper failed to adequately define the trade secret contours for Alleged Trade Secrets 1, 2, 4, 5, and 7, the court finds summary judgment appropriate on those Alleged Trade Secrets for lack of particularity.

2.   *Alleged Trade Secrets 3 and 6 survive.*

The court denies Wright's motion in part because Alleged Trade Secrets 3 and 6 are described with sufficient particularity to survive summary judgment. Alleged Trade Secret 6 is identified as the "Proprietary Formula for Loss Reserve Estimator" and, after a brief description of its functionality, ImageKeeper produces the source code comprising the formula. ECF No. 217-3 at 28. This is a clear, concrete contour to describe the trade secret ImageKeeper alleges was stolen by defendants. *See SocialApps, LLC v. Zynga, Inc.*, 2012 U.S. Dist. LEXIS 82767, at*11–14 (N.D. Cal. June 14, 2012) ("[I]dentifying specific lines of code … [is] sufficiently detailed to identify what it is that [plaintiff] claims is secret."). While Wright argues that "[t]he Final ID, Plaintiff's corporate witness testimony, and the Opposition all conflict with each other regarding the scope of Alleged Trade Secret 6" (ECF No. 241 at 24), any such evidentiary conflict is properly the providence of the jury to resolve now. *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992) ("'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment.' Where material factual disputes exist, the court must allow a jury to resolve them.") Because ImageKeeper has provided sufficient particularity such that a reasonable jury is able to determine the contours of its Alleged Trade Secret 6, summary judgment on particularity is inappropriate.

Alleged Trade Secret 3 is described as "Proprietary, non-public APIs accessible only through the ImageKeeper Portal (e.g., insurance claim updates and associated claim update API)." ECF No. 217-3 at 22. In its summary judgment response, ImageKeeper specifically identifies that Alleged Trade Secret 3 is the "the API documentation itself" and lists the comprising documentation: defining the endpoints available to adjusting firm APIs, the

endpoints to request access tokens used to communicate with the ImageKeeper System, and APIs defining endpoints available for insurance carriers, among other exemplary and technical documentation. ECF No. 237 at 15–16. Wright argues that ImageKeeper's statement that Alleged Trade Secret 3 is the "the API documentation itself" is inconsistent with the Final ID as well as with ImageKeeper's corporate testimony. ECF No. 241 at 19. This is similarly an issue for the jury to resolve now: ImageKeeper has presented sufficient particularity for a jury to reasonably understand what the contours of Alleged Trade Secret 3 are and thus summary judgment here is inappropriate. For those reasons, I deny summary judgment on Alleged Trade Secrets 3 and 6.

### B.    The motions to seal are granted.

The following motions to seal are before the court: Evoke's motion to seal/redact portions of its motion for summary judgment, associated exhibits, and reply brief (ECF No. 292), ImageKeeper's motions to redact/seal portions of its opposition and associated exhibits to Wright's summary judgment motion (ECF No. 293), and to Evoke's motion for summary judgment (ECF No. 294). The motions seek to redact or seal information related to ImageKeeper's alleged trade secrets material as well as Wright's and Evoke's proprietary business information.

In the Ninth Circuit there is "a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). To overcome this presumption, a party must articulate "compelling reasons" justifying nondisclosure, such as use of the record to gratify spite, permit public scandal, circulate libelous statements, or release trade secrets. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). The public interest in full disclosure of documents is grounded upon the "ensuring the 'public's understanding of the judicial process and of significant public events.'" *Id.* (citations omitted). The Ninth Circuit has made clear that the sealing of entire documents is improper when confidential information can be redacted to leave meaningful information available to the public. *Foltz*, 331 F.3d at 1137. To the extent that a sealing order is permitted, it must be narrowly

1  tailored. *See, e.g., Press-Enterprise Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 512 (1984)

2  (sealing orders should be "limited to information that [is] actually sensitive"). Thus, only the

3  portions of a filing that contain specific reference to confidential documents or information, and

4  exhibits that contain such confidential information, may be filed under seal. *See, e.g., In re Roman*

5  *Catholic Archbishop of Portland*, 661 F.3d 417, 425 (9th Cir. 2011).

6      Trade secrets and proprietary confidential business information are routinely considered

7  "compelling reasons" to seal. *See, e.g., In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008)

8  (finding sealable "business information that might harm a litigant's competitive standing"); *Jam*

9  *Cellars, Inc. v. Wine Grp. LLC*, 2020 WL 5576346, at *2 (N.D. Cal. Sept. 17, 2020) (finding

10  compelling reasons for "confidential business and proprietary information relating to the

11  operations of both Plaintiff and Defendant"); *Fed. Trade Comm'n v. Qualcomm Inc.*, 2019 WL 95922,

12  at *3 (N.D. Cal. Jan. 3, 2019) (finding compelling reasons for "information that, if published, may

13  harm [a party's] or third parties' competitive standing and divulges terms of confidential

14  contracts, contract negotiations, or trade secrets.")

15      Evoke's motion seeks to redact pieces from its briefing which refer to ImageKeeper's

16  alleged trade secrets and to seal specific exhibits which discuss said information. ECF No. 292 at

17  5–6. Evoke provides the court with a chart listing the specific items it seeks to seal or redact

18  with an explanation for each request: namely, that said portion refers to or discusses the alleged

19  trade secrets. *Id.* Because Evoke has presented compelling reasons to seal and because its motion

20  is narrowly tailed to only remove the confidential information from the public eye, the motion is

21  granted. Similarly, ImageKeeper's motions narrowly seek to seal or redact information relating

22  to its alleged trade secrets or Wright's and Evoke's proprietary business information and leave

23  the rest of the non-confidential material open to the public. ECF Nos. 293; 294. Because

24  ImageKeeper's motions are narrowly tailored to only protect the information which provides

25  compelling reasons to seal, I also grant ImageKeeper's motions.

26

V.      Conclusion

IT IS HEREBY ORDERED that Wright's motion for summary judgment **[ECF No. 218]** **is granted in part and denied in part**. Summary judgment is granted on Alleged Trade Secrets 1, 2, 4, 5, and 7 for failure to adequately disclose and Alleged Trade Secrets 3 and 6 survive.

IT IS FURTHER ORDERED that the remaining motions for summary judgment **[ECF No. 259, 264] are denied without prejudice**.

IT IS FURTHER ORDERED that Evoke's motion to seal **[ECF No. 292]** and ImageKeeper's motions to seal **[ECF No. 293, 294] are granted.** The clerk of court is kindly directed to maintain the seal on ECF Nos. 271, 269, and 280.

This matter is referred to the magistrate judge for a settlement conference. LR 16-5. If a settlement is not reached, the parties must submit a proposed summary judgment briefing schedule within 14 days of the conclusion of the settlement conference. Any new summary judgment motions must reflect in the briefing this opinion's decision.

Dated: March 27, 2024

_____
Cristina D. Silva
United States District Judge